Gregory Langadinos J.D. M.P.A.
P.O. BOX 883 Redondo Beach, CA 90277
(949) 844-0250 glangadinos@yahoo.com

2026 FEB 25 PM 1:47

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

rsm

**GREGORY LANGADINOS,**
**PLAINTIFF,**
**v.**

**1. LAW OFFICES OF JAMES E. NEYMAN P.C., et al., and 2. JAMES EDWARD NEYMAN, and 3. LAW OFFICES OF RICHARD GROSSACK et al, and 4. RICHARD GROSSACK; and 5. OLD REPUBLIC INTERNATIONAL CORP.,--and- 6.----PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY ("PMA"); 7. and CHOICE HOTELS INTERNATIONAL INC.; and 8 FOOTHILL EXTENDED-STAY-MANAGEMENT LLC (D/B/A/ EVERHOME CORONA); and 9. HOTEL-MANAGEMENT-AND-CONSULTING (HMC)**
**DEFENDANTS,**
**I.**

S

**CASE No: 5:25-CV-01064-ODW(SHKx)**

**Judge: Owens D. Wright IInd**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Plaintiff invokes/requests application of California Conflicts of Law principles under Governmental interest and/or Renvoi Application <u>Peter Hildebrandt v. Unum Life Insurance Company of America</u>, No. 23-2297 (C.D. Cal. Feb. 13, 2026)**

## <u>SECOND AMENDED COMPLAINT AND JURY DEMAND</u>

### I. <u>Introduction and identity of multiple enforceable contracts employment contract; third-party administrator-and third -party claimant contract, eight (8) different attorney client relationship contracts, landlord tenant relationship contract all of which relate to violations of 42 U.S.C. § 1981; on the basis of plaintiff's Race or National Origin, and Ethnicity</u>

1. Plaintiff Gregory Langadinos ("Langadinos" or "plaintiff") who was employed for Neyman and Associates P.C. beginning June 1, 2024, in Los Angeles, California and was fired on Friday November 14, 2025, and only paid for three weeks brings this action against his former employer (1). Law Offices of James E. Neyman P.C. and its owner' (2). James E. Neyman; collectively, "Neyman Law" or Neyman"), and (3). Law Offices of Richard Grossack and (4). Individual Richard Grossack (hereinafter "Grossack Law," and "Grossack"), and defendant (5) Old Republic International Corporation ("hereinafter Old Republic" or "ORI"), and (6). and defendant Pennsylvania Manufacturer's Association Insurance company; (PMA) and (7). Choice Hotels International Inc., and (8). Foothill Extended Stay Management LLC; and D/B/A/ Everhome Corona; and (9). Hotel Management and Consulting.

2. The Counts pursued by plaintiff against defendants Old Republic International Corporation ("hereinafter Old Republic" or "ORI"), and (defendant Pennsylvania Manufacturer's Association Insurance company; are based on telephone conversations with counsel employed for the SECURITIES AND EXCHANGE

COMMISSION (SEC) which confirmed the following facts; (1). Old Republic International Corporation (ORI) acquired 100% of the outstanding common stock of PMA Capital Corporation (now known as PMA Companies) in 2010 (2). The merger made PMA a wholly owned subsidiary, integrating it into Old Republic's general insurance business. (3). PMA, now operates as a part of the Old Republic Insurance Group. (4). **Acquisition Completion:** The deal closed in the third quarter of 2010. (5). **Structure:** PMA Capital was acquired, and its stock was converted to become part of Old Republic International's portfolio of businesses.

3. In addition, federal civil rights statutes against employer Neyman Law, and Grossack law for violations of Title VII, for discrimination based on Race, National Origin, Religion, and Disability, for discrimination based on Greek ethnicity and heritage for impairment of employment contract, under 42 U.S.C. § 1981, applies to publicly traded defendants Old Republic International Corporation ("hereinafter Old Republic" or "ORI"), and (defendant Pennsylvania Manufacturer's Association Insurance company.

*4.* Most importantly, based on plaintiff's own investigation of defendants Old Republic International Corporation ("hereinafter Old Republic" or "ORI"), and (defendant Pennsylvania Manufacturer's Association Insurance company; as well as plaintiff's telephone call he received from Chicago based attorney Winston Collier from the headquarters in Chicago, Illinois the relationship between parent owning company Old Colony ***is*** **<u>not</u> merely a passive owner, but actively involved in the alleged wrongful conduct under RICO.**

5. Liability arises and exists against defendants Old Republic International Corporation as the parent company's ownership of subsidiary PMA is a controlling interest because ORI the parent exercises complete dominion and control or directly intervened in the management of the subsidiary.

6. Defendant Old Republic International Corporation, the parent company acquired 100% ownership of the outstanding common stock in the third quarter of year 2010 of defendant PMA Capital Corporation, now known as PMA Companies. The merger made PMA a "wholly owned subsidiary, thereby fully integrating PMA into Old Republic's general insurance business, and defendant PMA operates as part of Old Republic Insurance Group.

7. As a direct and proximate result of Defendant Old Republic International Corporation, the parent company acquiring 100% ownership of the outstanding common stock in the third quarter of year 2010 of defendant PMA Capital Corporation, becoming PMA Companies in which this merger made PMA a "wholly-owned subsidiary, defendant Old Colony is wholly responsible for the egregious discrimination on the basis of defendant's Ethnicity and Race, and retaliation by Frank English, who fraudulently promised plaintiff that

he will perform an honest conflicts check before hiring counsel to represent its insured named in the legal malpractice policy known as defendant Neyman.

8. The plaintiff also brings claims directly against defendants ; and civil RICO claims for joint actions and inactions against both employer Neyman and Grossack; and for racketeering and wire fraud violations of RICO occurring in the context of Attorney-client relationship involving eight (8) separate cases, which defendant Neyman willfully sabotaged every single case, causing serious damages including forcing plaintiff to be wrongfully locked out and evicted from two different rental units, to be wrongfully labeled to be a vexatious litigant for which plaintiff borrowed over $ 12,000 in litigation loans that were guaranteed by defendant Neyman in his capacity as plaintiff's **attorney, (which Neyman kept all the proceeds in violation of his ethical duties and sworn Massachusetts attorney's oath**) of which he plaintiff paid $ 7,000 of the $12,000 plaintiff borrowed to Neyman in October 2014 for which Neyman never undertook or ever performed the work.

9. Plaintiff furthermore brings this lawsuit against defendants Neyman Law, Grossack Law, individuals Neyman and Grossack, as well as Old Republic and (PMA), for a multi-year pattern of racketeering activity in which Defendant schemed and conspired solicit plaintiff Langadinos to borrow litigation loans in years 2013, and 2014, exceeding over $ 15,000 knowing that plaintiff was moving out of State to California and needed to file two appeals of two Vexatious Orders of both the Massachusetts Superior Court and U.S. District Court and Neyman defrauded the plaintiff, never prepared or file any appeals, and kept plaintiff's money;

## II. THE PARTIES

10. The plaintiff, **GREGORY LANGADINOS,** currently resides in the City of Los Angels, California.
11. The first Defendant **JAMES NEYMAN AND ASSOCIATES P.C.** is the plaintiff's employer and is located at 76 Canal Street, 3rd Floor Boston, Massachusetts 02114.
12. The second Defendant individual **JAMES EDWARD NEYMAN** is the owner of the law firm located at 76 Canal Street, 3rd Floor Boston, Massachusetts 02114, and the CEO and Owner of the defendant employer JAMES NEYMAN AND ASSOCIATES P.C.
13. Defendant **LAW OFFICES OF RICHARD GROSSACK** is physically located within the same office, as Defendant James Neyman and Associates P.C. and is located at 76 Canal Street, 3rd Floor Boston, Massachusetts 02114.
14. Defendant individual **RICHARD GROSSACK** is physically located within the same office, as Defendant James Neyman and Associates P.C. and is located at 76 Canal Street, 3rd Floor Boston, Massachusetts 02114.
15. Defendant **OLD REPUBLIC INTERNATIONAL CORPORATION's** corporate headquarters is located at 307 N. Michigan Ave., Chicago, IL 60601. Established in 1923, the company is Publicly traded corporation on the New York Stock Exchange, **Company Type:** Public (NYSE: ORI), and a major insurance holding company specializing in property, casualty, and title insurance. Publicly traded insurance companies engaging in bad faith can be pursued under federal law primarily through the Dodd-Frank Wall Street Reform and Consumer Protection Act (UDAAP), which prohibits unfair, deceptive, or abusive acts. Additionally,

they may face federal action under the Federal Trade Commission Act (Section 5) for deceptive practices, and OFAC regulations for sanctions.

16. Defendant **PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY (PMA Companies)** is physically located at **380 Sentry Parkway P.O. Box 3031 Blue Bell, PA 19422-0754.**
17. Defendant **CHOICE HOTELS INTERNATIONAL INC.**, is incorporated in the State of Maryland, and the current physical address of 1 Choice Hotels Circle Suite 400 Rockville, MD 20850.
18. Defendant FOOTHILL **EXTENDED STAY MANAGEMENT LLC,** incorporated ., d/b/a/ Everhome Corona in the State of Delaware, and is a limited liability company whose business address is 1267 Willis Street Suite 200 Redding CA 96001, with a business address for Everhome Corona of 1961 W FOOTHILL PKWY, CORONA, CA 92881-4103.
19. **DEFENDANT HOTEL MANAGEMENT AND CONSULTING HMC** is a hotel management company incorporated in the State of Kansas with address of David Martin – Chief Executive Officer 7200 W. 132nd St. Suite 220, Overland Park, KS 66213; and the Resident Agent is is Mr. David Martin's Wife Mrs. CHERIE D MARTIN MRS Registered Office: 15212 Perry Street, OVERLAND PARK, KS 66221.

20. Critically, Frank English defendant PMA's Vice President for Lawyer's Claims assured plaintiff, that defense lawyers would have no conflict of interest with the plaintiff, and promised the plaintiff, that he will make sure that there will not be any conflicts between plaintiff and James Neyman.

21. In clear violation of the oral agreement that plaintiff and Frank English entered into in that is enforced under the CODE OF CONDUCT, English breached the promise, and ora contract to not treat the plaintiff unfairly as the third-party claimant that he will be afforded fair and honest treatment in the selection of a law firm, PMA's Vice President for Lawyer's Claims. English hired the same Morrison Mahoney law firm that defendant and insured Neyman previously moved the disqualify for misconduct, in the lawsuit Gregory Langadinos v. Arcadia Insurance et.

22. Defendant Neyman should be reported to the Bar and Disciplined for his dishonest actions outlined throughout this Second Amended Complaint.

23. a. As such English as a member of the Pennsylvania Bar violated Rules of Professional Responsibility.

**24.** Defendant Old Republic negligently screened, managed, and trained Mr. Frank English PMA's Vice President for Lawyer's Claims who then in turn negligently hired the Boston Law firm Morrison, Mahoney which has severely harassed the plaintiff with deceitful and inaccurate emails and letter though the U.S. Mail, in which attorney Scott Burke committed the **following bad fraudulent acts which are quasi-criminal;**

**25. Filed false and perjurious Motions, Affidavits which included false language which stated to the Boston Housing Court that plaintiff cannot file Motions for sanctions, or counterclaims because Order labeling plaintiff as Vexatious which is false and wholly untrue;**

26. Attorney Scott Burke the Partner employed for Boston Law Firm Morrison Mahoney Coached and encouraged witness and former owner of employer James Neyman to engage in a pattern of fraud and

deception, which Neyman abruptly withdraw as plaintiff's counsel in the attorney-client relationship and contract in which defendant Neyman accepted three checks for $ 2,500, $ 405, and 405, mailed from Redondo Beach to downtown Boston, Massachusetts' law firm of defendant James E. Neyman forming contact under California law. Neyman employed plaintiff for 15 months, and only paid him $ 1,500 of the $ 159,600 owed to plaintiff;

27. Attorney Scott Burke, the Partner employed for Boston Law Firm Morrison Mahoney was negligently screened, and hired by defendant PMA, to become defendant Neyman law's and Neyman's counsel for the malpractice claim filed against himself by Neyman voluntarily and is being paid by PMA, was also. Defendant Old Colony as the parent company of PMA Management Corp.

28 (a third-party administrator or TPA), is liable to plaintiff for the tortious interference with the employment relationship between third-party claimant Langadinos, his employer, Neyman Law because defendant parent OSI; exercised direct control over the specific wrongful actions.

29. and OCI exercised complete dominion and control, in the management of the subsidiary by negligently hiring Frank English as Vice President of Lawyers claims, who negligently hired the Morrison Mahoney law firm to handle defense of claims reported by defendant Neyman when PMA and English knew or should have known that defendant Neyman previously moved to disqualify this law firm and all of its attorneys in year 2014 through 2016, because of misconduct. Neither defendant Old Colony, or PMA, or Neyman, can take opposite positions in 2026, **Tortious Interference:** Defendant third party administrator PMA is liable for intentionally interfering with contractual or business relationships, between plaintiff, and defendant Neyman by acting wrongfully by negligently screening and hiring Scott Burke who filed fraudulent and wholly untrue motions before the Boston Housing Court to evict the plaintiff by misrepresenting to the court that he is precluded from filing counterclaim, which resulted in plaintiff also being fired from working for Neyman Law.

## A. HISTORICAL CONTEXT: JUDICIALLY RECOGNIZED FRAUD IN FEDERAL COURT LITIGATION

30 Federal courts have long recognized that certain law firms have engaged in systematic fraud that extends "well past the kind of routine litigation activities" in ordinary cases. *Garlock Sealing Techs., LLC v. Shein*, No. 3:14-cv-116, 2015 WL 5155362, at *3 (W.D.N.C. Sept. 2, 2015). The scheme alleged herein follows a similar pattern identified in these prior cases but is independently supported by direct testimony from a former Gori attorney who witnessed and participated in the scheme from roughly 2018 to 2024.

31 Plaintiff also sues Neyman Law, and Neyman and Grossack Law, and Grossack, for intentional discrimination in employment and wrongful termination, in violation Title VII, and discrimination based on Race, National Origin, Religion, and Disability, and impairment of employment contract, under 42 U.S.C. § 1981.

32 The plaintiff also brings this lawsuit under CIVIL RICO against his employer's owner defendant Neyman a Massachusetts attorney who represented plaintiff in eight different (8) claims/lawsuits in the last 6 years, which amounted to a complex fraud scheme that went beyond routine litigation activity, because Neyman has suffered severe depression long term which he willfully concealed from plaintiff, and in year 2014, Neyman was paid $ 7,000 to appeal Orders of Massachusetts Superior Court, in which Neyman accepted this sum from loan plaintiff borrowed from limitation company, and Neyman falsely told plaintiff that the appeals were rejected and Neyman used up $ 250.00 an hour of time off the $ 7,000 See case filed by CSX Transportation, Inc. against asbestos plaintiff attorneys in West Virginia. *CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2012 WL 1598081 (N.D. W. Va. May 3, 2012). There, the district court concluded that the alleged.

33 In violation of National Labor Relations Act, (Wagner act §, and against employer law firm in the capacity as client with defendant Neyman Law, for claims involving thirteen multi-decade pattern of racketeering activity in which defendant Neyman Law, and Neyman schemed and conspired to solicit plaintiff to borrow litigations loan numerous litigation loan from Necessity Funding Lender to fund plaintiff's lawsuits, in which plaintiff paid defendant Neyman Law $7,000, and $ 800 for an Affidavit, Neyman charged plaintiff to file after the fact in pursuit of appeal of Orders finding plaintiff to be a vexatious litigant in years 2012, 2013, and one amended Order dated September 5, 2014.

34 This federal civil rights action, is brought pursuant six federally protected categories enforced by Title VII, 42 U.S.C. § 2000e, all of which have been exhausted with both the EEOC, as well as California Civil Rights Division FEHA, on the basis of **(1). Religion; (2). National Origin; Greek Ethnicity);(3). Race (5). Disability; (6). Retaliation and (7). Failure to engage in the ADA's required interactive process."** See Exhibits "A" and "B" **attached with complaint. In addition, this lawsuit is brought pursuant to discrimination on the basis of race in violation of** 42 U.S.C. § 1981) **"because the** contract for employment was impaired by racist behaviors, as described in the fact sections of Counts one and two.

**35** Jurisdiction over plaintiff's claims is conferred based on diversity jurisdiction, and the amount on controversy exceeds $ 75,000. Jurisdiction is furthermore conferred based on California and Massachusetts Conflicts of Law, principles, involve Five (5) separate stages of facts, beginning with which involves federal civil rights claims related to the employment relationship and intentional discrimination and wrongful termination of employment pursuant to defendant James E. Neyman and

Associates, P.C. (collectively "Neyman Law"), and Attorney James Neyman and (collectively "Attorney Neyman"), on the basis of intentional discrimination on the basis of **(1). Religion, (2). National Origin; (3). Greek Ethnicity by racist Jewish attorneys, such as** defendant Grossack.

**36** Defendant Grossack falsely and fraudulently represents in written text messages and orally to this plaintiff, and separately advertises to the public at large, that he specializes in appearing before the Massachusetts State Bar's Board of Bar Overseers, (Mass. BBO), to represent attorneys facing discipline.

**37** In contravention to false representations by Grossack that he specializes in representing troubled attorneys facing discipline, suspension, or disbarment, and in violation of more than five Massachusetts Rules of Professional Responsibility, Grossack represented in writing that "I suffer from a severe case of Parkinsons" "I do not drive."

**38** Defendant Grossack's false, and fraudulent self-praising Narcissistic statements about himself are not acts of misconduct in violation of Attorney Rules of Professional Conduct, they are genuine, demonstrations and further predicate acts of misconduct and constitute violations of federal fraudulent violations of Civil RICO and RICO Consumer actions rights violations. **See controlling California case <u>Cohen v. Trump</u>[1], 2016 U.S. Dist. Lexis at * 16-17; 101247 (S.D.Aug. 2. 2016).**

39 6. All of the federal statutory categories have been properly exhausted with the EEOC, in full compliance with Title VII, 42 U.S.C. § 2000e. The first impaired contract in effect, in violations of 42 U.S.C. § 1981 involves the employment relationship and theft of wages. The second impaired contract, and facts related to the impairment of a current ongoing contract involves discrimination based on the attorney-client relationship, (ii). (42 U.S.C. § 1981); and Fair Housing Act against all Massachusetts defendant law firms and lawyers, and separate Count against all hotel defendants, (FHA); <u>42 U.S.C. § 3601 et seq.</u>

40 7. Claims premised under Title VII, 42 U.S.C. 2000e, have been exhausted by the EEOC, and California FEHA; with right to sue letters issued, based on and six to seven different protected classes; of EEOC

---

[1] In **<u>Cohen v. Trump</u>[1], 3:10-CV-0940-GPC-WVG; 2016 U.S. Dist. Lexis at * 16-17; 101247 (S.D.Aug. 2. 2016),** Honorable District Court Judge udge Gonzalo P. Curiel quoted and followed the abundant high court precedent, including the U.S. Supreme Court holding that **<u>RICO is not</u>** restricted to organized crime and applies literally to a broad swath of fraudulent conduct stating "it is not for this Court to effectuate Defendant's policy of preferences in contravention of the settled approach of the higher courts." Judge Curiel continued, by stating the Court declines to undertake a form of statutory amendment of the RICO statute by imposing an amorphous requirement that civil RICO not be extended to the specific category of consumer class actions." Here is the plaintiff points out that although his claims are not part of a Class action of victims of the dynamic dual tag team of Defendant Massachusetts attorneys and defendant law firms, (they don't need to be) There is no requirement under only class actions under Fed.R.Civ. P. Rule 23 are required to permit claims under Civil RICO. **See also <u>Low v. Trump University, LLC</u> was a 2010-2018 California-based class action lawsuit alleging fraud, false advertising, and unfair business practices against Trump University and Donald J. Trump. Plaintiffs claimed the "university" was a scam that promised real estate secrets but offered expensive, worthless seminars. The case resulted in a $25 million settlement in 2017.**

federal civil rights protected categories, including theft of wages, discrimination based on contract, (42 U.S.C. § 1981); violation of Fair Housing Act against all Massachusetts defendant law firms and lawyers, and separate Count against all hotel defendants, (FHA); 42 U.S.C. § 3601 et seq.

41 8. Plaintiff succumbed to the pitch and offer of employment at the agreed price of $ 100.00 an hour, and trusted defendant Neyman and Grossack who plaintiff has known for twenty-five years (25) since year 2001 and plaintiff was aggressively pressed to into the Neyman firm as an employee in May of year 2024, and invest further wholly false advertisements and promises that defendant Neyman will act as plaintiff's "mentor," and even seek admission into the Bar of certain States to permit plaintiff to be licensed and launch successful career investing in defendant Neyman and Associates P.C.

**B. (STAGE TWO) ; DISCRIMINATION BASED ON CONTRACT RELATED TO ATTORNEY-CLIENT RELATIONSHIP; DATING BACK TO YEAR 2014**

42 Involve the activities of Defendants, Neyman and Associates, James Edward Neyman, Law Offices of Richard Grossack, and Richard Grossack's formation and execution of the scheme to defraud, both the plaintiff out of legal fees paid to Neyman and Associates in the amount of $ 7,000 in September 2014, as well as the Necessity Funding litigation funding company.

43 10. This contract for legal services is the second impaired contract under 42 U.S.C. § 1981, which had a had a pervasive, debilitating, and ultimately fatal impact on the plaintiff legal career, employability, mental well-being, and plaintiff's ability and efforts to function as a citizen and also resulted in numerous ongoing malfeasance of duty by defendant James Neyman, and defendant which constitute predicate acts which constitute Civil Rico in violations of 18 U.S.C. § 1962 (c)); and 18 U.S.C. § 1962 (d)) and predicate acts involving Racketeering activity and conspiracy, were committed by all Massachusetts defendants Neyman and Grossack.

**III. THE NECCESITY FUNDING LITIGATION LOAN MONEY SCHEME; AND PLAINTIFF'S OWN ATTORNEY'S USE OF VEXATIOUS ORDERS TO SILENCE AND DEFRAUD PLAINTIFF OUT OF $ 7,000 IN LEGAL FEES, SINCE YEAR 2014 WHEN APPELLATE FEES WERE PAID AND PREDICATE ACT OF DEFRAUDING NECCESITY LEGAL FUNDING OUT OF $ 40,000 LOAN REPAYMETN WITH INTEREST**

**44 By not returning $ 7,000 to plaintiff since October of year 2014 and fraudulently concealing from plaintiff in violation of M.G.L. Chapter 260, § 12, that the courts never prevented Neyman from appealing the wrongfully issued orders finding plaintiff to be vexatious, when plaintiff was represented by two attorneys, who were suspended and disbarred,**

**(Paul Pezza) and (Fabian Powell), rather Neyman kept plaintiff's $ 7,000[2], by arguing that plaintiff need not pay back borrowed litigation funding loan, because Neyman kept the proceeds, and in violation of 42 U.S.C. § 1981, defendant Grossack told plaintiff, "you are not a Jew' "you are not one of the chosen people, and are not equal to jews, and therefore, you are not owed wages, or legal fees."**

**C. STAGE THREE); DISCRIMINATION BASED ON 42 U.S.C. § 1981, AND LEGAL MALPRACTICE, BREACH OF FIDUCIARY DUTY; NEGLIGENCE MALFEASANCE OF DUTY**

45 **12. Breach of Fiduciary duty and Legal Malpractice, involving seven (8); different and separate attorney-client relationships, beginning January 2023, in which defendant James Edward Neyman sabotaged all the cases he was overseeing for plaintiff.** The plaintiff, Gregory Langadinos moved into a Choice Brand Hotel known as Everhome Corona in Corona, California on Friday January 15, 2023, and lived consecutively in the same Rented Unit until May 3, 2023 (110 consecutive days). After 30 days of residing in a long-term extended stay Hotel, the plaintiff Hotel guests automatically obtaining status as lawful tenants, and defendant Choice and City of Corona, were required to exempt hotel taxes, which plaintiff was wrongfully expelled for acting a Whistleblower after he was taxed more than 30 days after becoming a lawful tenant.

46 Neyman's justification (back in 2014 and 2015); to plaintiff to not pay back Necessity funding company was that plaintiff need not pay back Necessity from two settlements from two different cases; because the money plaintiff paid to Neyman, came from Necessity Funding anyway. So Neyman will just keep plaintiff's legal fees he paid, because Neyman will not pay back litigation lending company, "so it's a wash."

**<u>D. (STAGE FOUR)</u>**
**PLAINTIFF SUES CHOICE HOTELS DEFENDANTS FOR ILLEGAL SELF HELP EVICTION OCCURING ON MAY 1, 2023, WHICH WAS CAUSED BY DEFENDANT NEYMAN'S EGREGIOUS FAILURE AND THEFT OF $ 7,000 IN LEGAL FEES PAID BY PLAINTIFF ON**

[2] **The Clients' Security Board exists to preserve the public's trust in the legal profession by reimbursing clients whose <u>lawyers have stolen from them.</u> Reimbursements use funds provided solely by the lawyers and are made at no cost to the claimants or the taxpayers. <u>See https://www.masscsb.org</u>**. But the stolen wages, the wrongful expulsion and eviction from two (2) different apartments, failure to file suit on Conversion of four (4) vintage comic books that were worth $ 900,000 are not covered. .was caused by the gross negligence and dereliction of duty of Attorney James Neyman warrants this Court to award damages to this plaintiff ; in the seven-figure range.

**WEDNESDAY MAY 14, 2014, TO APPEAL WRONGFULLY ISSUED VEXATIOUS ORDERS AGAINT PLAINTIFF WHEN HE WAS REPRESENTED BY COUNSEL AND NOT PRO SE**

47 Plaintiff Gregory Langadinos also brings this suit against three defendant hotel franchisors, **Choice Hotels International franchisors Choice Hotels International, Inc**. and management companies, as well as directly against FOOTHILL HOTEL MANAGEMENT CO. INC., as well as defendant Hotel Management and Consulting (HMC, the hotels management company (collectively, the franchisee **hotels**).

48 The defendants are sued for willful violations of **California Civil Codes §§ 712.010; 715.010 et seq., .**

49 **Civil Code §§ 1159; 789.3 (Penal Code 418).,** and civil conspiracy. for negligence, premises liability Illegal lockout,

**(E. STAGE FIVE)**

**IN VIOLATION OF THE EXPRESS LANGUAGE OF ITS OWN Code of Business Conduct and Ethics ("Code") SPECIFICALLY [Fair Dealing Each associate, officer and director should endeavor to deal fairly with the Corporation's customers, competitors, officers, and associates. None should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair dealing practice. DEFENDANT OLD COLONY INTERNATIONAL CORPORATION AND PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY ("PMA"); AND DEFENDANT NEYMAN AND NEYMAN LAW FIRM NEGLIGENTLY VIOLATED RICO LAW. See Exhibit "J' (page 3)**

## IV. JURISDICTION
## FEDERAL QUESTION, DIVERSITY; AND CONFLICTS OF LAW; VENUE

**50.** This Court has subject matter jurisdiction over all Massachusetts Law firms and attorneys under Federal Question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345 and Title VII of 1964 civil rights act, 42 U.S.C. § 2000e; 2000e-3. 1981 § 1985(3); Fair Housing Act; 42 U.S.C. § 3604(b), and numerous other Federal causes of action provide subject matter jurisdiction pursuant to the FLSA, Wagner Act, the Americans with Disabilities Act of 1990, and the amendments of 1998.

**51. There is complete diversity over the out of State defendants (1). Neyman Law firm, and (2). Law Offices of Richard Grossack Neyman and Grossack as individuals, and amount in controversy must exceed $75,000, exclusively of interest and costs.**

52. Venue is proper under 28 U.S.C. § 1391(b) because conduct giving rise to the United States' allegations occurred in the Central District of California, and Defendants are located in the Central District of California. The facts of this lawsuit, and damages suffered by plaintiff, exceed the $ 75,000 Diversity Jurisdiction perimeter subject matter jurisdiction threshold.

53. This Court has long arm personal jurisdiction over the two out of state defendants Choice Hotels International (d/b/a/ Everhome Corona), (Maryland Corporation); as well as defendant Hotel Management and Consulting Inc. (HMC) incorporated in the State of Kansas, because both defendants do business in California and have "minimum contacts" within the State of California. General jurisdiction and Venue is present here in this United States District Court in Los Angeles, because the defendant's activities in **California** are "substantial, continuous and systematic." (*Perkins v. Benguet Consolidated Mining Co.* (1952) 342 U.S. 437, 446-447; *Sonora Diamond Corp. v. Sup. Ct.* (2000) 83 Cal.App.4th 523, 536.)

**54. CONFLICTS OF LAW; A significant recent case where a federal court in California applied California conflict-of-law principles to invoke Massachusetts law (via a contractual choice-of-law clause, which can be interpreted through a renvoi-like analysis of which state's law governs validity) is Peter Hildebrandt v. Unum Life Insurance Company of America, No. 23-2297 (C.D. Cal. Feb. 13, 2026). Case Citation: *Peter Hildebrandt v. Unum Life Insurance Company of America*, No. 23-2297, 2026 WL (C.D. Cal. Feb. 13, 2026). Key Principles: The court held that because the insurance policy had 61. Massachusetts choice-of-law clause, Massachusetts law governed, rejecting the application of California Insurance Code Section 10110.6(a) (which invalidates discretionary clauses). Renvoi Application: While California courts generally follow the "governmental interest" approach rather than strict *renvoi* (where the forum court looks to the whole law of the other state, including its conflicts rules), in contractual matters, applying the chosen state's law to determine the validity of that choice can function as a form of *renvoi*.**

**55. Contractual Enforcement: In 2024, the First Circuit also highlighted that Massachusetts law might govern over California law even when a California resident is involved, if the contract was not primarily centered in California, reinforcing the strength of Massachusetts law in these conflicts.**

## COUNT ONE
## TITLE VII RESPONDENT JAMES E. NEYMAN AND ASSOCIATES P.C. 42 U.S.C.§ 2000e; et seq. (unlawful employment practices); discriminatory practices; and discrimination on the basis of Greek Race, Greek Orthodox Religion, (non-Jewish faith discrimination); race, ethnicity, retaliation; Disability, and 42 U.S.C.§ 2000e-3 (Prohibiting Retaliation against employees)

**56. The plaintiff repeats and relegates all above paragraphs with the same force and affect.**

**57.** On Wednesday January 18, 2026, the Equal Employment Opportunity Commission accepted and filed Plaintiff's Charge of Discrimination after finding cause and assigned EEOC Charge Number 550-2026-00981; and furthermore issued plaintiff a RIGHT TO SUE LETTER, against Respondent James E. Neyman and Associates, P.C. permitting the plaintiff to exhaust administrative remedies, for numerous Federal causes of action against this Respondent based upon seven separate protected classes and separate types of discrimination. See **Exhibit "A" herein.**

58. Specifically, the EEOC, accepted and filed on behalf of plaintiff, and administratively exhausted remedies based upon supporting facts and evidence that plaintiff, Gregory Langadinos submitted to the EEOC, and plaintiff now has claims to pursue before this Honorable U.S. District Court based on all of the following; Federal civil rights; **(1). religion, (2) sex, (3) national origin, (Greek; non-Jewish); (4). Age, (5). disability, or (6). Retaliation, and (7). denial of accommodation** against the first Respondent **JAMES E. NEYMAN AND ASSOCIATES, P.C.; and against the second employer Law Offices of Richard Grossack, who are both located at 76 Canal Street, 3rd Floor Boston, MA 02114.**

59. The plaintiff has exhausted administrative remedies and established to the EEOC that he suffered intentional discrimination on the basis of 1). religion, (2) sex, (3) national origin, (Greek; non-Jewish); (4). Age, (5). disability, or (6). Retaliation, and (7). denial of accommodation. See Exhibit "A" Right to Sue letters from the EEOC.

A. Religion & 3. National Origin (Greek, non-Jewish): plaintiff pleads with particularity that defendants Grossack and Neyman as employers were aware of plaintiff's national origin/religion and took adverse action (e.g., harassment as evidenced from text messages sent by defendant Grossack were clearly motivated by bias from derogatory comments, such as "you're not a fuckin Jew' 'Are you Jewish one of je chosen people."

**different work requirements, or more favorable treatment of employees outside your class.**

**B. Sex: Plaintiff suffered adverse action (e.g., failure to promote, termination) because of male gender and being opinionated was considered threatening to law firm that refuses to pay its male employees**

**C. Age (ADEA, 40+): Plaintiff was over 40, when employed, qualified, and replaced by a significantly younger employee, or that younger employees were treated better in similar circumstances.**

**D. Disability (ADA, not Title VII): Plaintiff was willfully denied and deprived of engaging in the interactive process and employer well knows that plaintiff is qualified individual with a disability, the employer knew of the disability, and suffered adverse action because of it, including the loss of his rent controlled apartment by actions of Neyman refusing to appear for hearing in when plaintiff was under medical care and out of State. <u>See Exhibits "L' attached to 2nd Amended Complaint.</u>**

**E. Retaliation: Plaintiff engaged in a protected activity (e.g., complaining to owner of Accountant's harassing text messages and criminal harassment and filing an EEOC charge), an adverse action followed (like termination), and a causal link exists and can be shown by close timing.**

**G. Denial of Accommodation (Religion/Disability): Plaintiff wrote letter dated April 1, 2025, and attached herein with <u>Exhibit "A"</u> letter formally requesting reasonable accommodation based on disability, and I requested reasonable accommodation, by asking for all of my wages owed; to alleviate stress I requested employer to pay me my wages owed it, leading to adverse impact.**

**H. Under *McDonnell Douglas* framework: plaintiff was and is in a (1) Protected Class, (2) Qualified, (3) suffered Adverse Action, (4) Circumstances inferring discrimination based on Grossack's despicable and racist text messages.**

60. Identify of Decision-Maker: Defendant James Neyman is the individual who acted against me and their stated reason is to talk to Attorney Grossack about wages owed, and time sheets were lost, and seven (7) missing client files because Neyman revealed he was undergoing psychiatric care and was an inpatient.

61. Plaintiff hereby sets forth that he was wrongfully fired) on Friday November 14, and" it was illegal decision (e.g., because I am Greek, and not Jewish, and plaintiff reasonably believes he was discriminated against by defendant Grossack who told plaintiff "you are not the chosen people" and plaintiff said "no I am not Jewish I am Greek Orthodox, and I don't attack persons for no being Greek.

62. Former employee Langadinos has suffered constructive discharge after he engaged in the protected activity of demanding his unpaid wages, return of $ 7,000 payment for legal fees for appeals that were never taken, and plaintiff reported that the firms' own Office Manager for over thirty years, Emma Barboza called plaintiff to complain that defendant Neyman has not paid her wages either!

**63. Plaintiff reported to Manager/Supervisor, (Daniel); and defendant Neyman about the vicious harassment Agent/Accountant that former Corporate Officer Leo Leydon, texted plaintiff to tell him to "Fuck off" "Fuck you" and then called plaintiff on a blocked number and again screamed a third time to plaintiff to "Fuck off" because plaintiff contacted Accountant Leydon, pursuant to the orders of his employer James Neyman who was deprived of proper representation by his Leydon who refused to file Neyman's hardship paperwork denied payment of wages.**

64. To establish a prima facie case of retaliation under Title VII, the plaintiff must prove three separate elements: (1) that he engaged in a protected activity; (2) that her employer took adverse employment action against him and (3) that there was a causal link between the two events. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e–3(a). Taylor v. Republic Services. Inc., 968 F. Supp. 2d 768 (E.D. Va. 2013). Former employee's allegation, in her pro se Title VII action, that she suffered constructive discharge after she engaged in the protected activity of complaining to supervisors about alleged sexual harassment by coworkers was sufficient to demonstrate that she suffered an adverse employment action, as required to state Title VII claim for retaliation. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e et seq. Arnold v. Huntington Ingalls Incorporated, 750 F. Supp. 3d 564 (E.D. Va. 2024). "But-for" causation connection. University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503, 293 Ed. Law Rep. 644, 118 Fair Empl. Prac. Cas. (BNA) 1504, 97, 97 Empl. Prac. Dec. (CCH) P 44851 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). See also Saketkoo v. Administrators of Tulane Educational Fund, 31 F.4th 990 (CA 5 2022) (finding that associate professor's comments to dean about male supervisor's discrimination were not but-for cause of alleged adverse employment action).

**WHEREFORE, plaintiff prays for monetary and other damages, attorneys' fees and costs as this court deems just.**

**COUNT TWO**
**VIOLATION OF 42 U.S.C. SECTION § 1981 CLAIMS FOR EMPLOYMENT AND NON-EMPLOYMENT CONTEXT AGAINST NEYMAN LAW, NEYMAN, GROSSACK , GROSSACK LAW, OLD COLONY, AND PMA, BASED ON DISCRIMINATION IN THE MAKING AND ENFORCING CONTRACTS BASED ON ACE ETHNICITY**

**65. The plaintiff repeats and releases all above paragraphs with the same force and affect.**

66. The statute of limitations for **§ 1981** claims is four years See 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381-83 (2004). The nature of the claim determines what triggers the running of the four-year limitations period. No exhaustion is required.

67. The U.S. Supreme Court has held that 42 U.S.C. § 1981, which prohibits racial discrimination in contracting, including employment contracts, and wages, protects individuals against discrimination based on ancestry or ethnic characteristics, rather than solely on place of nation or origin. In *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), the Court established that § 1981 covers identifiable classes of persons subjected to intentional discrimination, **which includes, but is not limited to, groups like Greeks, persons of Greek decent or heritage even if they are considered Caucasian.**

68. The plaintiff as a first Generation Greek American whose parents immigrated from Greece, has standing to invoke discrimination claims premised under 42 U.S.C. § 1981, against defendant Neyman and Associates P.C., because when plaintiff demanded his wages to be paid in full defendant Of counsel, Richard Grossack, Grossack unleashed a disturbing vicious attack upon plaintiff, based on Greek characteristics, and class, in which Grossack expressly told plaintiff, on the telephone **"you're not a Fuckin Jew" you're not one of the chosen people." Defendant Grossack, then texted plaintiff and repeated the written phrase; "you're not a Jew, one of the chosen people." See Exhibit 'B(1)" (Text messages from defendant Richard Grossack)."You must have heard of the Holocaust."**

69. In addition, defendant Neyman who was hospitalized for months without taking responsibility to pay the plaintiff wages he is owed, invited plaintiff to call him while he was in the hospital, then complained to his partner defendant Grosssck, that plaintiff called to demand unpaid wages, and return of theft of legal fees totaling $ 7,000 from year 2014 paid to firm to take several appeals, which were never performed.

70. The plaintiff expressed to defendant Neyman and Grossack that the Office Manager employed Neyman and Associates, whose first initial starts with E. called the plaintiff numerous times over last

year, to voice her own grievances against defendant Neyman, for not paying her wages or providing her with her cell phones as promised either.

71. Both defendant's Neyman and Grossack, deny that the Office Manager called plaintiff, even though her telephone is registered in plaintiff's phone as an incoming call; as a further demonstration of arrogance, and above the law narcissistic thinking whereby three Neyman defendants believe they are immune from accountability because they identify as members of what they call "the chosen people" which plaintiff must be a member to be paid wages, or have appeals filed after plaintiff paid these egregious defendants$ 7,000 in cash, to perform legal services, which were never performed.

72. First, 42 U.S.C. § 1981, sets out, and impliedly "affords a federal remedy against discrimination in private employment." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460 (1975). "[A]n individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." Id.

73. The employment contract plaintiff made with defendant Neyman, constitutes the impaired 'contractual relationship' in which he worked at the rate of $ 100.00 per hour under which the plaintiff has rights," under section 1981 which "protects the would-be contractor along with those who already have made contracts." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).

**Section 1981 EMPLOYMENT CONTEXT**

74. Here is the instant case, section 1981 imposes liability because all the Massachusetts defendant attorneys and law firms, have discriminated against plaintiff in a way that "prevented individual plaintiff who entered into contractual relationships' from being discriminated against based on religion, race, age, ethnicity, national origin, disability, etc. Id. (quoting Runyon v. McCrary, 427 U.S. 160, 172 (1976)) (emphasis omitted).

**Section 1981 NON-EMPLOYMENT CONTEXT**

75. Defendant Old Republic International Corporation, (ORI) and defendant PMA, violated its CODE OF BUSINESS CONDUCT AND ETHICS and discriminated against the plaintiff on the basis of disability, and ethnicity and race, and actions that constitute retaliation against the plaintiff for filing a claim as a third-party claim and engaging in bad faith by hiring the Morrison Mahoney Law firm to harass the plaintiff on the and forcing him to be evicted by lying to the Court through motions and making wholly false statements that plaintiff cannot file counterclaims because of September 9, 2014 Amended Order and Injunction against plaintiff, which is not true and fraudulent.

76 Defendant Old Republic International Corporation, (ORI) engaged in bad faith insurance practices and fraud by NEGLIGENTLY SELECTING the Morrison Mahoney Law Firm, to represent defendant Neyman because Neyman took a position in litigation with Arcadia, and Morrison, Mahoney Attorney Alyward, that "Morrison Mahoney is unethical in open Court, and now that Neyman defrauded his client out wages, legal fees, and caused two evictions, Neyman is loyal to Morrison Mahoney!

77. Defendant Old Colony and PMA failed to undergo and engage in a conflicts check and Defendant Old Colony and PMA, are paying legal fees to Attorney Scott Burke, so he can file fraudulent documents and as Attorney Burke filed an argued that plaintiff who is defendant in Boston Housing Eviction case, cannot file counterclaims within eviction case, which I wholly false and amounts to committing perjury.

78. Defendant PMA failed to require and expect all associates, officers, and directors, as well as vendors, representatives, and other business partners with whom the Corporation does business, like Massachusetts Attorney Scott Burke "to conduct themselves according to the basic principles in this Code." The defendant Corporation breached its written promises to require all new and existing associates to participate in ethics training focused on these principles and overall legal expectations.

79. The defendants Old Republic International Corporation, (ORI), and Violations of the standards in this Code will be subject to appropriate disciplinary action, up to and including termination.

**WHEREFORE, plaintiff prays for monetary and other damages, attorneys' fees and costs as this court deems just.**

**Count THREE**
**VIOLATION OF AGE FAIR HOUSING ACT OF 1968; (FHA) 28 U.S.C. §**
**Fair Housing Act (42 U.S.C. § 3601 et seq.)3604; AGAINST ALL MASSACHUSETTS DEFENDANT LAW FIRMS AND ATTORNEYS**

80. **Pl**aintiffs release and incorporate herein by reference all paragraphs above with the 8same force and affect.

81. Section 3617 of the **FHA** makes it "unlawful to coerce, intimidate, threaten, or interfere with any person... on account of his having aided or encouraged any other person in the exercise or enjoyment or [] any right granted or protected by" the **Fair Housing Act**." (See Walker v. City of Lakewood, 272 F.3d 1114, 1123 (9th Cir. Cal., 2001). See 42 **U.S.C. § 3604**(a)-(c).

82. By the **actions** described above, defendants have made housing unavailable to the plaintiff because of according to defendant Grossack, **you are not a Fuckin Jew" you are not one of the chosen people." Defendant Grossack, then texted plaintiff and repeated the written phrase; "The Jew, are the chosen people." See Exhibit "B(1)" ." (Text messages from defendant Richard Grossack)."You must have heard of the Holocaust." These actions constitute violation of FHA, because defendants Grossack and Neyman, do not lift a finger to genuinely fulfill their obligations under the attorney privilege they enter into with non-Jewish persons, unless they identify as the same** race and/or color as defendants Neyman and Grossack.

83. In violation of 42 U.S.C. § 3604(a), and have discriminated in the provision of services in connection with the rental and management of leases dwellings because of race and/or color motivated defendant attorneys to not provide zealous representation to plaintiff Langadinos in violation of 42 U.S.C. § 3604(b).

84. By the **actions** described above, defendants have discriminated against plaintiffs because of race and/or color in the making of real estate-related transactions through defendant Neyman Law, and Neyman's gross negligence in failing to properly raise Counterclaims and properly raise defenses to secure plaintiff's rented housing unit.

85. **Fair Housing Act (FHA):** The FHA prohibits discrimination in housing based on race, color, religion, and national origin as well as **Retaliation:** It is illegal for any person or entity to retaliate against you for asserting your rights under the Fair Housing Act.

86. Defendant Grossack blatantly discriminated against plaintiff by expressly stating that he is immune from liability for potential legal actions and remedies; as a person of Jewish faith and dared the plaintiff to file a complaint against him, and stated, "I like complaints against me."

87. In addition to the Neyman and Grossack defendants admitting to committing legal malpractice, by voluntarily filing malpractice claim against themselves, for knowingly failing to protect a client from discrimination or failed to file necessary, colorable claims due to prejudice, all of the Massachusetts defendants have violated ethical rules (e.g., ABA Model Rules of Professional Conduct regarding competence, diligence, and conflicts of interest).

88. Neyman and Grossack both committed **legal malpractice by their** attorney's failure to file a federal lawsuit or properly plead HUD claims (Fair Housing Act) which caused plaintiff to lose the case or

significant money, exceeding over ten million dollars and plaintiff also has multiple legal malpractice claims. Plaintiff will file a housing discrimination complaint directly with the U.S. Department of Housing and Urban Development (HUD) within one year of the alleged discriminatory act and pursue this private lawsuit in federal court.

**WHEREFORE, plaintiff prays for monetary and other damages, attorneys' fees and costs as this court deems just.**

**COUNT FOUR**

**VIOLATION OF CIVIL RICO 18 U.S.C. § 1962 (c)); AGAINST NEYMAN LAW AND NEYMAN, AND GROSSACK LAW; AND GROSSACK AND DEFENDANTS OLD REPUBLIC (ORI) AND PMA**

**89.** Plaintiffs release and incorporate herein by reference all paragraphs above with the same force and affect.

**90. To successfully plead this claim, the complaint must allege the following four core elements:**

1. **Conduct of an Enterprise (§ 1962(c)): The insurance company must have participated in the operation or management of an "enterprise". An enterprise can be a legal entity (the insurance company itself) or an "association-in-fact," such as a network of corrupt adjusters, lawyers, and investigators working together.**
2. **Pattern of Racketeering Activity: The complaint must allege at least two (b) related acts of racketeering (predicate acts) within a 10-year period.**
3. **Predicate Acts: For an insurance and Law Firm company, this usually involves mail fraud (sending fraudulent documents) or wire fraud (fraudulent emails, phone calls, or bank transfers) used to deny or undervalue claims.**
4. **False Pleadings in Court: Submitting false pleadings or knowingly presenting false evidence to a court can constitute mail/wire fraud if it is part of a pattern to defraud.**
5. **Connection to Interstate Commerce: The enterprise's activities must affect interstate commerce.**

**91.** In the specific facts of the instant case, the defendant Neyman and Associates, Neyman, Law Offices of Ricard Grossack as well as the defendants **OLD REPUBLIC INTERNATIONAL CORPORATION's** (NYSE: ORI)[ and Defendant **PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY (PMA Companies)** negligently selected and hired Morrison Mahoney deems acted in concert and conspired to hire and negligently select, the scandalous Boston law firm known as Morrison Mahoney and Miller, fraudulently argued and filed false and scandalous pleading that represented falsely that this plaintiff cannot file counterclaims within eviction lawsuit, because of vexatious, Order which is perjurious and false and violates RICO and constitutes predicate acts.

92. Defendant Neyman previously sought to disqualify the scandalous Boston law firm known as Morrison Mahoney and Miller, which employed the same corrupt State Court Judge Elizabeth Fahey while representing the plaintiff.

**A. RICO PREDICATE ACT ONE AGAINST NEYMAN AN NEUMAN LAW, GROSSACK AND GROSSACK LAW PRESSURING PLAINTIFF TO VIOLATE RULES OF PROFESSIONAL CONDUCT BY SPLIT LEGAL FEES IN LIEU OF BEING PAID WAGES OWED**

93. However, now that defendants Neyman suffers from severe case of major depression according to Accountant Leo Leydon, defendant Neyman is too mentally impaired to understand, that neither he or his insurance company which insures him for malpractice acts and criminal acts in violation of RICO are allowed to take an opposite position 12 years later in a civil case or claim for malpractice, which is detrimental to the former and current client and former worker.

94. In violation of Massachusetts Rule of Professional Responsibility 5.4(a) (Professional independence of a Lawyer) and RICO 18 U.S.C. § 1962 et. Seq., Defendant Neyman pressured plaintiff to split legal fees when he settles lawsuits in lieu of paying him wages owed. In April of year 2025, after plaintiff served demand letters upon defendant Neyman law firm by U.S. Mail served with Service of Process, suddenly Neyman began reiterating to plaintiff, '***if you scratch my back, "I'll scratch yours'*** which Neyman told plaintiff that he meant if he kept working he will eventually be paid.

95. As such plaintiff after plaintiff refused to be paid split legal fees to settle wages plaintiff in owed, plaintiff was abruptly terminated on November 14, 2025, based in part on Age discrimination, and violation of Federal Equal pay act, as well discrimination based on plaintiff not being one of the Jewish chosen people, who according to defendant Grossack's text messages, plaintiff does not deserves wages or past legal fees he was extorted totaling $ 7,000 to prepare appellate briefs 'and appeal Federal and State Orders from year 2014, because he is not one of the chosen people." **See Exhibit '1.**

96. The plaintiff who is a Californian domiciled citizen, since September of year 2014; furthermore brings Federal and State of California causes of action under statutes including Declaratory Judgment Act, 28 U.S.C. § 2201, Federal Rules of Civil Procedure, 64; (Lien and attachment upon defendant James Neyman's Cape Cod home to secure unpaid wages totaling $ $ 159, 600, and against his Massachusetts employer, Law Offices of James E. Neyman P.C., for an employment relationship which plaintiff worked as a Senior Litigation Paralegal which began on June 1, 2024

- **RICO PREDICATE ACT TWO—(3) RACIST REFUSAL TO APPEAR AT HEARING IN BOSTON HOUSING EVICTION CASE, IN BREACH OF CALIFORNIA ATTORNEY CLIENT RELATIONSHIP CONTRACT TO REPRESENT PLAINTIFF ENTERED UNDER CALIFORNIA OR MASSACHUSETTS LAW**

- **Defendant Law Offices of Richard Grossack, and defendant Grossack defrauded and discriminated against plaintiff on basis of Ethnicity, Race, and defrauded plaintiff out of contract to represent him before Boston Housing Court, and causing plaintiff who was**

**tenant to default and lose his Rent Controlled apartment he had for 15 years; by negligently believing he did not owe plaintiff a duty to appear on plaintiff's behalf—when he did—when Partner defendant Neyman became incapacitated and under the care of mental health professionals; psychiatric medical care.**

**A. RICO PREDICATE ACT THREE (3); CRIMINAL VIOLATION OF CALIFORNIA UNAUTHORIZED PRACTICE OF LAW STATUTE IN UNDERTAKING RITE AID CASE**

- **Neyman and Neyman and Associates; defrauded and discriminated against plaintiff on basis of Ethnicity, Race and defrauded plaintiff out of settlement with RITE AID, by surpassing statute of limitations because Neyman engaged in Unauthorized practice of law, by writing letters to California attorney, when Neyman wasn't licensed in California and statute of limitations was surpassed so plaintiff lost out of damage valued at $ 50,000;**

- **Defrauded and discriminated against plaintiff on basis of Ethnicity, Race, and defrauded plaintiff out of compensation for claims against Suffolk University Data breach case where defendant Neyman only wrote demand but never followed up and surpassing 6-month statute of limitations to go to the U.S. Department of Educations' Title IX office;**

RICO PREDICATE ACT FOUR (4)

*ON JANUARY 19,2024 DEFENDANT NEYMAN DEFRAUDED THE PLAINTIFF OUT OF THREE BANK MONEY CHECKS MAILED TO DEFENDANT NEYMAN TO FILE FEDERAL LAWSUIT PESERVE DISABLED PLAINTIFF'S RENT CONTROLLED APARTMENT THEN RETURNING CHECKS AND CAUSING PLAINTIFF TO BE FORCIBLY EXPELLED EVICTED ON FRIDAY JANUARY 6, 2025; WHEN PLAINTIFF NEEDED APPEARANCE OF NEYMAM FOR CRITICAL HEARINGS WHILE PLAINTIFF LIVED OUT OF STATE. NEYMAN LIED TO PLAINTIFF AND FALSELY REPRESENTED TO HIM THAT "MY LIFE IS MUCH BETTER NOW IN JANUARY 2024, WHEN NEYMAM WAS REALLY UNDER THE CARE OF PSYCHIATRIST, AND OWED BACK TAXES", AND WAS BEING SUED BY HIS LANDLORD FOR UNPAID RENT*

- **Neyman and Grossack defrauded and discriminated against plaintiff on basis of Ethnicity, Race, and disability and other categories and defrauded plaintiff out of fair representation and negligently mishandled Federal lawsuit that defendant Neyman returned plaintiff is $ 2,905, and never performed necessary work, Neyman was paid to perform; because plaintiff according to defendant Neyman's partner Grossack needs to be "Jewish, and one of the chosen people." See text messages from defendant Grossack attached herein as Exhibit "B(1)"**

- **Defrauded and discriminated against plaintiff on basis of Ethnicity, and race, by not ever brining plaintiff's own claims against the University of** California **Verdugo Hospital for terminating plaintiff's care in retaliation for plaintiff associating with disabled Nurse who filed EEOC, and other written grievances;**

- **WHEREFORE, PLAINTIFF SEEKS Two Million Dollars for this Count alone, for all the egregious acts of discrimination based on race, Greek Ethnicity, Heritage, for all the misdeeds by the defendant Neyman and Associates P.C., defendant Neyman, and Grossack.**

**COUNT FIVE**

**VIOLATION OF RICO; 18 U.S.C. § 1962 (d)) BY PREDICATE ACTS; RACKETEERING ACTIVITY CONSPIRACY; M.G.L. Chapter 260, § 12; (Fraudulent Concealment, under Massachusetts law) AGAINST DEFENDANT JAMES NEYMAN & ASSOCIATES, JAMES EDWARD NEYMAN, LAW OFFICES OF JAMES NEYMAN, RICHARD "ROCKY" GROSSACK AND DEFENDANTS OLD REPUBLIC AND PENNSYLVANIA MANUFACTURERS' ("PMA") CONSPIRACY TO VIOLATE 18 U.S.C. § 1962 (c));**

97. Plaintiffs release and incorporate herein by reference all paragraphs above with the same force and affect.

98. Plaintiffs release and incorporate herein by reference all paragraphs above with the same force and affect.

**A. To successfully plead this claim, the complaint must allege the following four core elements:**

**Conduct of an Enterprise (§ 1962(c)):** The insurance company must have participated in the operation or management of an "enterprise". An enterprise can be a legal entity (the insurance company itself) or an "association-in-fact," **such as a network of corrupt adjusters, lawyers, and investigators working together**.

**Pattern of Racketeering Activity:** The complaint must allege at least two (2) related acts of racketeering (predicate acts) within a 10-year period.

**Predicate Acts:** For an insurance and Law Firm company, this usually involves **mail fraud** (sending fraudulent documents) or **wire fraud** (fraudulent emails, phone calls, or bank transfers) used to deny or undervalue claims.

**False Pleadings in Court:** Submitting false pleadings or knowingly presenting false evidence to a court can constitute mail/wire fraud if it is part of a pattern to defraud.\

THE RICO ENTERPRISES

A. The Legal Entity Enterprise

99. The defendants Neyman Law, and Grossack Law, are ongoing legal entities that constitutes an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4) (the "Neyman Firm Enterprise"). The Law Offices of James E. Neyman Firm is a Massachusetts professional corporation engaged in the practice of law, and undertakes cases, then abruptly withdraws without considering or evaluating how that damages one's life or pursuit of justice or compensation.

100. At all relevant times, the defendant PMA Enterprise was foreseeably engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(a) through the use of mail and interstate wires insuring, and providing coverage to the defendant Neyman law, without vetting or considering whether the attorneys actually employ Agents, or Associates that are truly

practitioners that follow the Massachusetts Rules of Professional Conduct.

101. The firm has employees in different states, including California and New York according to defendant Neyman, and sues defendants engaged in interstate commerce, and files cases via various state courts' electronic filing systems.

102. Individual Defendants Gori-Gregory and Salger are "persons" as defined in

U.S.C. § 1961(3), legally distinct from the Gori Firm Enterprise. Gori-Gregory is the Principal Partner and Owner; Salger is the Managing Partner.

103. Defendant Grossack operated, managed, and directed the affairs of the Neyman Firm Enterprise in furtherance of the scheme through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), namely mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), by arranging for litigation loans to be loaned to clients by the lender known as Necessity Funding.

104. Defendant Neyman and Grossack devise and implement the enterprise's strategy in including supervising attorneys, and employees. They hire and fire attorneys, they set firm policy on case handling; direct firm spending on advertising; negotiate and consult with referral firms; make decisions about which cases to file, including the filing of objectively baseless lawsuits; and determine settlement or dismissal strategy across multiple cases.

**105. Defendant Old Colony's racketeering was undertaken to benefit the Neyman LawFirm Enterprise:**

a. **The proceeds of the racketeering (contingency fees)free work from plaintiff flowed to the firm and were reinvested in advertising, hiring, and expansion activities and payment of liability premium for insurance policy issued to Neyman # 6925001645381;**

b. **The Individual Defendants, as equity partners, benefited from the firm's increased profitability, their primary objective was building the firm's enterprise as well as their personal enrichment at the Neyman Law firm's expense.**

106. **This structure satisfies the distinctiveness requirement under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), which held that the RICO statute "requires no more than the formal legal** distinction between 'person' and 'enterprise' (namely, incorporation) that is present here." *Id.* at 165.

107. Gori-Gregory and Salger have shared longstanding relationships and have held leadership or managerial roles at the Gori Firm for several years. The Gori Firm Enterprise was of sufficient longevity, has been in continuous operation for over five years, at least as early as 2018, and threatens to continue into the future.

108. In the alternative, and pursuant to Fed. R. Civ. P. 8(d)(2)-(3), plaintiff alleges that the RICO enterprise is an association-in-fact consisting of: (a) Individual Defendants Neyman and Grossack(b) and the defendant PMA, and negligently selected Boston Law Firm Morrison Mahoney ,which in turn filed false documents in the Boston Housing Court frame the plaintiff who was a defendant tenant in that case, who then lost his apartment as well as lock out from Queen Suite defendant Corona Hotel.

The defendant Neyman and Grossack law firm have an ongoing secretive internal policy which was effectively and purely for profit-sharing participants in the fraudulent scheme, of undertaking cases after meeting clients, then farming the case off to some other Attorneys who know nothing about the laws, or the Rules of Court as they never lift a finger to ever learn.

Their financial interests were aligned with the success of the fraud, not with the legitimate interests of the firm or its clients. The purpose of the association-in-fact was to maximize recoveries achieved from quick fix cases from the batch of potential settlements of cases.

## A <u>MORE PREDICATE ACTS</u>

109. The Individual Defendants Neyman, and Grossack, as well as Defendant Old Colony, and defendant PMA ENGAGED in multiple acts of racketeering activity, including violations of the federal mail fraud statute (18 U.S.C. § 1341) and the federal wire fraud statute (18 U.S.C. § 1343), by emailing work assignments to the plaintiff, and forcing him to Efile pleadings on multiple occasions and for multiple clients without pay, while insured with defendant Old Colony and PMA, in the event they commit malpractice, when the owners and partners of the defendant Neyman and defendant Grossack law firm are both incapacitated as they have admitted in writing to the plaintiff.

110. In furtherance of the scheme, each Individual Defendant personally and repeatedly transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds; and also placed, or caused to be placed, matters and things in any post office or authorized depository, or deposited or caused to be deposited, matters or things to be sent or delivered by a private or commercial interstate carrier, on numerous occasions by agreeing to perform work as attorneys for plaintiff without any intention to reasonably and competently represent plaintiff as a client.

111. To name just a few examples, these interstate mail and wire communications included, but were not limited to the following in furtherance of the scheme: interstate emails with referral sources concerning client leads and intake information; interstate telephone calls. The details of the foregoing predicate acts are predominantly within the exclusive knowledge and control of Defendants and will be revealed through discovery.

*a. __Predicate Acts Defendant Neyman Law__*

112. As Principal Partner and Owner, Neyman Law, approved and authorized the selection of Morrison Mahoney to implement a system to block this plaintiff from being able to bring claims against Neyman by acting in concert with Frank English and conspiring to hire and negligently select, the scandalous Boston law firm known as Morrison Mahoney and Miller, to defraud the client out fair compensation by using Vexatious litigant Orders that were never appealed by Neyman against the plaintiff.

113. Defendant (Attorney) solicited plaintiff; James Neyman who conspired with defendant Richard Grossack and each other, to solicit plaintiff to borrow several loans from Necessity Funding from New York, which were guaranteed by Neyman, which plaintiff paid $ 7,000 of borrowed loan to pay Neyman to undertake two appeals in September of year 2014. 98. Neyman met with plaintiff at the beginning of September 2014 days before plaintiff drove cross country to California and was paid $ 7,000 to appeal the State and federal Orders, which Neyman never filed or performed legal work. Instead, he kept plaintiff's money in the various activities set forth herein and aided and abetted one another in these activities, all as proscribed and prohibited by 18 U.S.C. §§ 2, and 1962(c) and (d) and C.R.S. § 18-17-104(3) and (4); Plaintiff borrowed loans that plaintiff used to hire defendant law firms to perform and undertake appeals, in September of year 2014, which defendant never undertook and absconded with plaintiff's money. See **Exhibit "Q."**

- (i). **The Silencing of Plaintiff Langadinos by all Massachusetts defendants' Neyman and Grossack using Vexatious litigant Orders to defraud plaintiff of $ 7,000 in legal fees paid knowing cannot sue defendant attorneys without complications and the run around;**
- **(ii). In October 2014 when the Litigation Funding loans matured, instead of paying the notes, defendant Neyman kept the $ 7,000 payment. In order to silence these allegations, of fraud by defendant Neyman, Neyman and Grossack have been falsely spreading false advertisements, both orally and in writing, claiming that Of-Counsel defendant Grossack represents attorneys facing discipline before the Massachusetts State Bar's investigative arm of the Board of Bar Overseers.**

114. During one of the hearings in year 2014, when defendant Neyman represented plaintiff before the Massachusetts Superior Court, plaintiff asked Neyman to prepare an Affidavit on plaintiff's behalf to confirm to the Court that an affidavit was not part of the file. After Neyman presented the Affidavit to the Superior Court as plaintiff's attorney to confirm statements of fact, Neyman then forcibly withdrew $ 800 from plaintiff's litigation loans—without plaintiff's knowledge, and withdrawal of money was unauthorized, and constitutes not only conduct that violates Rule of Professional Responsibility, and breach of ethical duties of honesty, but these actions constitute predicate acts in violation of Civil RICO laws

115. During the relevant times, between January 2014, and May 2014, defendant Neyman in furtherance of and for the purpose of executing the scheme and artifice to defraud, plaintiff, defendants attorneys and participants on numerous occasions used and caused to be used mail depositories of the United States Postal Service and electronic mail, including emails, by both placing and causing to be placed mailable matter in said depositories and by removing and causing to be removed mailable matter from said depositories, each such use of the mails in connection correspondence with Necessity Funding and the scheme and artifice to defraud and to obtain money by means of false pretenses, constituting the offense of mail fraud as proscribed and prohibited by 18 U.S.C. § 1341.

- **<u>RICO PREDICATE ACT TWO—</u>RACIST REFUSAL OF DEFENDANT GROSSACK TO APPEAR AT HEARING IN BOSTON HOUSING EVICTION CASE, BASED ON CALIFORNIA CONTRACT TO REPRESENT PLAINTIFF ENTERED UNDER CALIFORNIA LAW WHILE NEYMAN WAS INCAPITATED**

- **B. Defendant Law Offices of Richard Grossack, and defendant Grossack defrauded and discriminated against plaintiff on basis of Ethnicity, Race, and defrauded plaintiff out of contract to represent him before Boston Housing Court, and causing plaintiff who was tenant to default and lose his Rent Controlled apartment he had for 15 years; by negligently believing he did not owe plaintiff a duty to appear on plaintiff's behalf—when he did—when Partner defendant Neyman became incapacitated and under the care of mental health professionals; psychiatric medical care**

- **<u>RICO PREDICATE ACT THREE (3); CRIMINAL VIOLATION OF CALIFORNIA UNAUTHORIZED PRACTICE OF LAW STATUTE IN UNDERTAKING RITE AID CASE</u>**

- **Neyman and Neyman and Associates; defrauded and discriminated against plaintiff on basis of Ethnicity, Race and defrauded plaintiff out of settlement with RITE AID, by surpassing statute of limitations because Neyman engaged in Unauthorized practice of law, by writing letters to California attorney, when Neyman wasn't licensed in California and statute of limitations was surpassed so plaintiff lost out of damage valued at $ 50,000;**

- **Defrauded and discriminated against plaintiff on basis of Ethnicity, Race, and defrauded plaintiff out of compensation for claims against Suffolk University Data breach case where defendant Neyman only wrote demand but never followed up and surpassing 6-month statute of limitations to go to the U.S. Department of Educations' Title IX office;**

*RICO PREDICATE ACT FOUR (4)*
*DEFRAUDING PLAINTIFF OUT OF BANK MONEY MAILED TO DEFENDANT NEYMAN TO PESERVE DISABLED PLAINTIFF'S RENT CONTROLLED APARTMENTM THEN RETURNING CHECKS AND CAUSING PLAINTIFF TO BE FORCIBLY EXPELLED EVICTED ON FRIDAY JANUARY 6, 2025*

- **Defrauded and discriminated against plaintiff on basis of Ethnicity, Race, and defrauded plaintiff out of and negligently mishandled Federal lawsuit that defendant Neyman returned plaintiff is $ 2,905, and never performed any of the work, Neyman was paid to perform; because plaintiff according to defendant Neyman's partner Grossack needs to be "Jewish, and one of the chosen people." See text messages from defendant Grossack attached herein as Exhibit "C"**

***THE HEIST OF NECCECITY FUNDING SCHEME THAT PLAINTIFF BORROWED TO APPEAL WRONGFUL ORDERS ISSUED BY FEDERAL COURT AND STATE**

- **WHEREFORE, PLAINTIFF SEEKS Two Million Dollars for this Count alone, for all the egregious acts of discrimination based on race, Greek Ethnicity, Heritage, for all the misdeeds by the defendant Neyman and Associates P.C., defendant Neyman, and Grossack.**

## COUNT SIX

**REQUEST FOR WRIT OF ATTACHMENT LIEN UNDER FED.R.CIV.P. 64 AND RELIANCE ON THE CALIFORNIA ATTACHMENT LAW AND CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 482.010 through 493.060; FOR LIEN ON JAMES NEYMAN'S CAPE COD HOME LOCATED AT 146 Springer Lane West Yarmouth, MA 02673; Estimated Value: $1,032,373 - $1,122,000 AND SECTIONS CCP § 483.010 (cases where attachment is allowed) and CCP § 484.090 (issuance of the order)**

116. The plaintiff repeats and restates all of the above paragraphs with the same force and effect.

117. Plaintiff asserts that the Court has personal jurisdiction over three Massachusetts Defendants, (Neyman and Associates P.C., James Edward Neyman, and Richard Grossack, who operate a law firm that hired plaintiff as a Senior Litigation Paralegal, and have deprived him of income from working over last year and half totaling $159,600.

118 Plaintiff was employed in Los Angeles within this district, and venue of this Honorable U.S. District Court and subject-matter jurisdiction based upon diversity of citizenship exists between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332.

119. The plaintiff before this Honorable Federal court asserts entitlement to a writ of attachment under Fed. R. Civ. P. 64, and CALIFORNIA ATTACHMENT LAW AND CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 482.010 through 493.060; FOR LIEN ON JAMES NEYMAN'S CAPE COD HOME **LOCATED AT 146 Springer Lane West Yarmouth, MA 02673;** Estimated Value: $1,032,373 - $1,122,000 AND SECTIONS CCP § 483.010 (cases where attachment is allowed) and CCP § 484.090 (issuance of the order); by relying on the California Attachment Law, specifically California Code of Civil Procedure sections 482.010 through 493.060. Key sections often cited include CCP § 483.010 (cases where attachment is allowed) and CCP § 484.090 (issuance of the order).

**120. Purpose: The writ allows a creditor to create a judicial line on a debtor's property at the start of litigation to secure a potential judgment.**

- **Requirements: Under Cal. Civ. Proc. Code, § 484.090, the plaintiff must show the claim is for money, is based on a contract, is of a "fixed and readily ascertainable" amount, and has "probable validity".**
- **Applicable Law: While Fed. R. Civ. P. 64 authorizes the remedy, it explicitly incorporates state law, which in this case is the California Code of Civil Procedure.**
- Statutory Basis: The entire process is governed by the statutory scheme of the California Code of Civil Procedure.

121. Plaintiffs assert his entitlement to a writ of attachment pursuant to Fed. R. Civ. P. 64 and California Code Ann. §§ 29-6-101, et seq., where this Court sits in Los Angeles, not the law of Massachusetts where the property plaintiff seeks to attach is located in West Yarmouth, Massachusetts

122. The procedural authority Plaintiff, Langadinos cites for seeking attachment of assets in the possession (or soon-to-be possession) of Defendant's Cape Cod home is Federal Rule of Civil Procedure 64, which provides: (a) Remedies Under State Law--In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. Fed. R. Civ. P. 64(a).

123. The specific remedies available under Rule 64 include attachment. Fed. R. Civ. P. 64(b).

The specific remedies available under Rule 64 include attachment. Fed. R. Civ. P. 64(b). Thus, the very statute upon which Plaintiffs rely defines attachment as a remedy, not a cause of action.

124. Likewise, injunctive relief (which Plaintiffs also seek in this action) is a remedy, not a separate cause of action.3 Rule 64 permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. Tauwab v. Barry, No. 5:13cv2036, 2014 WL 4245967, at *10 (N.D. Ohio Aug. 25, 2014). It is clear from the language of the rule that its purpose is to ensure that a fund will be available with which to satisfy a money judgment. Id. But the state prejudgment remedies available under Rule 64 are just that—remedies—and not separate causes of action.

125. "Attachment is an ancillary remedy by which a plaintiff acquires a lien upon the property of a defendant in order to obtain satisfaction of a judgment that the plaintiff may ultimately obtain at the conclusion of the litigation." Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1521 (11th Cir. 1994), cited in Jireh, Inc. v. Champa, No. 1:18-cv-3076-AT, 2020 WL 5106862, at *3 (N.D. Ga. Aug. 30, 2020). To commence federal action, seizure of property, garnishment of claims, or other in-rem procedures are not enough. Tanko v. Saperstein, 149 F. Supp. 317, 322 (N.D. Ill. 1957).

126. **Attachment is only an incident of the suit, and not a means of obtaining jurisdiction. The promulgation of Rule 64 of the Federal Rules of Civil Procedure did.**

**not affect this principle. Id. at 323; see also Grapette Co., Inc. v. Grapette Bottling Co., 102 F. Supp. 517, 519 (D. P.R. 1952) (in federal court, attachment is but an incident to a lawsuit; jurisdiction cannot be**

**acquired by means of attachment); Davis v. Ensign-Bickford Co., 139 F.2d 624, 626 (8th Cir. 1944) (same). Rule 64 makes available to the Court all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action and provides that – unless prohibited by the Constitution or an applicable federal statute – such remedies are available under the circumstances and in the manner provided by the law of the state in which the district court is held. Jireh, 2020 WL 5106862, at** *3.

Rule 64 specifically lists attachment as one such available remedy. Id. Therefore, in all cases in federal, "state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." Id. (citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 437 n.10 (1974)).

Therefore, the Court's jurisdiction existed, and the remedy for attachment was sought in a pre-existing case. The case of New York Cas. Co. v. Lawson, 24 S.W. 2d 881 (Tenn. 1930), also cited by Plaintiffs, was a state court action, not involving the jurisdiction of a federal court at all (or, for that matter, Fed. R. Civ. P. 64).

**WHEREFORE, for these reasons, Plaintiffs' Motion for Lien and/or Temporary Restraining Order and Preliminary Injunction should be allowed to secure wages owed to plaintiff in the amount of 159,600.**

## COUNT SEVEN
## VIOLATIONS OF FAIR LABOR STANDARDS ACT (FLSA) 29 U.S.C. § 203 AND FEDERAL WAGNER NATIONAL LABOR RELATIONS ACT; 29 U.S.C. §§ 151-169; JOINT LIABILITY AGAINST NEYMAN AND ASSOCIATES P.C. AND LAW OFFICE OF RICHARD GROSSACK

127. The plaintiff repeats and restates all of the above paragraphs with the same force and effect.

128. The Plaintiff was hired on Tuesday May 29, 2024, as a Litigation Paralegal, at the agreed upon rate of $ 100.00 an hour, to begin work on Monday June 3, 2024.

129. The plaintiff performed hundreds of hours of Westlaw research for the months of June, July, and August 2024, and drafted motions, Administrative complains, civil complaints, and despite working more than 40 hours in a second and third week of the month of August 2024, plaintiff wasn't even compensated for regular hours never mind the overtime hours worked during that workweek.

Further details that plaintiff describes Neyman ordered plaintiff to provide counseling to defendant Neyman's clients and was not paid overtime or minimum wages for this specific workweek or paid any hours at the rate of $ 100.00 an hour.

130. In the middle of August 2024, and all of September 2024, October 2024, and November 2024 plaintiff worked approximately 38 hours for all these months a week on the Client Nurse's case by

researching numerous hours on Westlaw, and Lexis Nexis, working on other client's case beginning with last name beginning with letter D.

131 The plaintiff further alleges misconduct in violation FLSA, by the defendant Neyman and Associates P.C. employer, based on the fact that other than plaintiff receiving three checks from this firm totaling $ 500 each, in compliance with controlling case form the Second Circuit known as Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F3d 106 (2d Cir. 2013), the plaintiff sufficiently alleges both that he worked 40 hour weeks without ever being paid other than for three week and that plaintiff was paid partial payments of the total hours which remain unpaid.

132. Plaintiff prays for finding and judgement including a claim under the Fair Labor Standards Act (FLSA) which is highly beneficial, as it allows for the recovery of unpaid minimum wages, overtime, and an equal amount in "liquidated damages" (doubling the owed amount) . The Wagner Act (National Labor Relations Act) is generally relevant because he engaged in concerted activity to advocate for Office Manager's unpaid wages and benefits in addition to plaintiffs.

**Key Benefits of Using the FLSA in a Federal Lawsuit:**

- **Liquidated Damages:** Plaintiff demands to recover the unpaid wages plus an additional equal number of damages, double or treble damages;
- **Attorney's Fees:** FLSA requires employers to pay attorney fees making it easier to secure legal representation;
- **Broad Coverage:** The FLSA enforces federal minimum wage and overtime, covering workers;
- **Statute of Limitations:** You can generally recover wages going back two years, or three years if the violation was "willful."

**133. Role of the Wagner Act (NLRA)** The Wagner Act protects workers' rights to organize, join unions, or engage in "concerted activity" (e.g., discussing wages together). The defendant employer Neyman and Associates P.C. retaliated against plaintiff for engaging in union-related or group-based activity regarding wages together with the Office Manager who also was defrauded of wages.

**WHEREFORE, plaintiff demands judgment against the defendant Law Offices of James Neyman P.C., for unpaid wages in the amount of $ 159,600 owed to plaintiff for sixteen months of unpaid wages, for the months of June, July, (2 weeks in August 2024 September, October November December of year 2024, and in year 2025, plaintiff has not been paid for the months of January, February, March, April, May, June, July, August, September.**

**COUNT EIGHT**

**CAUSE OF ACTION FOR VIOLATION OF GOV. CODE §§ 12900 et seq. DISCRIMINATION BASED ON VIOLATION OF FAIR EMPLOYMENT AND PRACTICES ACT; AND VIOLATION OF CALIFORNIA FAIR HOUSING AND EMPLOYMENT ACT GOVERNMENT CODE SECTION 12960; AGAINST**

**DEFENDANTS JAMES NEYMANS AND ASSOCIATES, LAW OFFICES OF RICHARD GROSSACKL JAMES EDWARD NEYMAN, AND RICHARD GROSSACK; JOINT LIABILITY**

134. The plaintiff repeats and restates all of the above paragraphs with the same force and effect.

135. Plaintiff's membership in a protected class, includes on the basis of **(1). Religion, (2). National Origin; (3). Greek Ethnicity by racist Jewish attorneys, such as defendant Grossack who told the plaintiff over the phone and partly in text messages, "*you cannot be paid wages or legal fees he is owed unless he is Jewish and one of chosen people.*" (4); Age, (5). Disability; (6). Retaliation and (7). Failure to engage in the ADA's required interactive process."**

136. This cause of action is brought pursuant to the California Fair Employment and Practices Act, Gov. Code § 12940, subd. (a) prohibiting termination of an employee from employment on the basis of [specify, for example: sex of any person], and the corresponding regulations of the California Department of Fair Employment and Housing.

137. At all times mentioned in this complaint, defendant [name of employer] regularly employed five (5) or more persons, bringing defendant within the provisions of Gov. Code §§ 12900 et seq. prohibiting employers or their agents from discriminating against employees on the basis of [specify protected class, for example: sex].

138. On 2/18/2026 the EEOC dually filed the plaintiff's charge of discrimination with the California Department of Fair Employment and Housing (DFEH), as well as the EEOC. A true and correct copy of the charge is attached to this complaint as Exhibit"B" and is incorporated by reference. Plaintiff has received a Notice of Right to Sue from the DFEH. At all times mentioned in this complaint plaintiff was fully qualified for the position of Senior Litigation Paralegal. Plaintiff received nothing but positive evaluations.

139. Defendant employer terminated plaintiff because of plaintiff's acts of reporting the Accountant Leo Leydon to the Massachusetts Department of Revenue as well as the horrific text messages defendant Law Offices of Richrd Grossack the dual employer sent to plaintiff viciously attacking plaintiff for not being Jewish and plaintiff hereby directs this Honorable Court to the facts describing discriminatory practices including statements exhibiting discriminatory intent, , evidence of hostility by employer or agents.

140. **Specifically, Grossack called plaintiff and verbally attacked him for 15 minutes, then sent text messages which stated;**

**"Way smarter, nicer, courteous, respected friendly." Jews have been referred to as the Chosen people and the common response is Why cannot God choose someone Else! See Exhibit "B(1)":**

**"You might have heard about the Holocaust; there's no seriousness in that." See Exhibit "B(1)": "I went out of my way to help you find successor counsel; you obviously have no appreciation."'**

**"Being Of Counsel to Jim gives you no privity with me." Of counsel is a broad term with no legal See Exhibit "B(1)":**

141. Plaintiff believes and alleges that plaintiff's [specify protected characteristic, such Greek Non-Jewish religion, Male gender, National Origin: was a substantial and determining factor in defendant employer's decision to terminate plaintiff's employment.

142. Defendants' termination of plaintiff as alleged in this complaint constitutes an unlawful employment practice in violation of Gov. Code § 12940, subd. (a).

**143. As a direct, foreseeable, and proximate result of defendants' discriminatory acts, plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to plaintiff's damage in an amount in excess of $, the precise amount of which will be proven at trial.**

**144. Defendants committed the acts described in this complaint oppressively, fraudulently, and maliciously entitled plaintiffs to an award of punitive damages against defendants in an amount appropriate to punish and made an example of defendants.** See [Gov. Code, § 12965, subd. (b); Rojo v. Kliger, 52 Cal. 3d 65, 276 Cal. Rptr. 130, 801 P.2d 373, 54 Fair Emil. Prac. Cas. (BNA) 1146, 6 I.E.R. Cas. (BNA) 530, 55 Empl. Prac. Dec. (CCH) ¶ 40480 (1990); for complete discussion of discriminatory practices and general theories of liability, see California Civil Practice: Employment Litigation §§ 2:1 to 2:107].

145. Statute of limitations: The bad acts involved in this termination action occurred since September 2024, and this action was brought within 1 year from the date of the right-to-sue notice, issued February 18, 2026. [Gov. Code, § 12965, subd. (b)]

**WHEREFORE, plaintiff demands judgment against the defendant Law Offices of James Neyman P.C., for unpaid wages in the amount of $ 158,600 owed to plaintiff for sixteen months of unpaid wages, for the months of June, July, (2 weeks in August 2024 September, October November December of year 2024, and in year 2025, plaintiff has not been paid for the months of January, February, March, April, May, June, July, August, September.**

## COUNT NINE
## CALIFORNIA PENAL CODE 487m PC WAGE THEFT (GRAND THEFT STATUTE); AND COMBINED COUNTS BASED ON VIOLATIONS OF CAL. LAB. CODE § 204, § 1194 §; OVERTIME CAL/ LAB. CODE § 1194, AND 1198; FAILURE TO TIMEY PAY FINAL WAGES AT TERMINATION; CAL. LAB. CODE § 201-203; FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS; CAL. LAB. CODE § 226; CAL. LAB. CODE 970, 971, AND 972

146. The plaintiff repeats and releases all above paragraphs with the same force and affect.

147. In California, the State where the plaintiff worked for a Massachusetts law firm, the willful failure to pay employees their rightful wages is more than just a violation of employment law—it is a crime. Wage theft is criminalized under Penal Code 487m PC. 118. This California state law protects employees from unscrupulous employers who fail to pay lawful wages.

148. Recent legislation now enables the state government to prosecute instances of wage theft as grand theft if the underpaid wages exceed $950. Penal Code 487m PC makes it a crime for an employer to intentionally fail to pay wages.

149. California has long considered intentional employer failure to pay wages and tips a misdemeanor, with civil penalties and remedies for recovery. As of January 2022, prosecutors could file felony charges under PC 487m for violations under certain conditions.

150. PC 487m says, "(a) Notwithstanding Sections 215 and 216 of the Labor Code, the intentional theft of wages in an amount greater than $950 from any one employee, or $2,350 in the aggregate from two or more employees, by an employer in any consecutive 12-month period may be punished as grand theft.

**151. PC 487m says, (b) For purposes of this section, "theft of wages" is the intentional deprivation of wages, as defined in Section 200 of the Labor Code, gratuities, as defined in Section 350 of the Labor Code, benefits, or other compensation, by unlawful means, with the knowledge that the wages, gratuities, benefits, or further compensation is due to the employee under the law.**

**152. In the instant case, the defendant James Neyman and Associates, James Edward Neyman, as well as the second employer; named Law Offices of Richard Grossack, and Richard Grossack, located at 76 Canal Street, 3rd Floor Boston, Massachusetts 02114, jointly shared the same address as Neyman and Associates and both employers benefited from plaintiff's work he performed.**

**153. Despite the plaintiff working 1566 hours, in seventeen months, and receiving only three pay checks both the named Massachusetts defendant law firms and attorneys** intentionally failed to pay wages to the plaintiff including overtime and committed numerous misdemeanors, and/or felonies, and are liable to the plaintiff for civil penalties and remedies as described throughout this complaint. As of January 2022, prosecutors could file felony charges under PC 487m for violations under certain conditions.

154. Defendant James Edward Neyman admitted in writings to the Massachusetts Department of Revenue in the months of May, through September 2025 and even provided plaintiff his medical records, which evidence that Neyman suffers from severe mental health problems, including major depression, memory problems[3], and other psychiatric injuries, as a means of pressuring the plaintiff to forgive and waive the thousands of hours he was duped in tricked into working, to provide free legal work which constitute numerous felony charges under PC 487m. See **Exhibit K.**

155. Defendant Grossack also texted plaintiff on October 25, 2025, to viciously harass the plaintiff to withdraw his time sheets seeking unpaid wages, and in the body of one text message, defendant Richard Grossack like Neyman also admitted that "**I suffer from a serious case of Parkinson's disease." See Exhibit "B(1)."**

156. As current licensed members of the Massachusetts State Bar, who owe the plaintiff wages for work he performed on numerous client cases defendant's Neyman and Grossack have engaged in numerous acts of misconduct, and discrimination on the basis of plaintiff non-Jewish religion, ethnicity or race as evidenced from defendant Grossack's revelation to plaintiff on October 25, 2025, that unless plaintiff is a "Jewish person, who God chose as the chosen people, plaintiff' isn't worthy of the wages he worked, or the past legal fees that were extorted by defendant Neyman.

157. Defendant Neyman solicited plaintiff to borrow over $ 12,000 to pay Neyman himself for appeals that Neyman and his Associates never filed, in year 2014, which plaintiff first discovered and learned in September 2025. Neyman kept plaintiff's $ 7,000, by arguing that plaintiff need not pay back Necessity Legal funding company, when the real reason Neyman didn't pay Necessity Funding was because Neyman never filed appeals, and Neyman misrepresented to plaintiff, that Regional Administrative Judge denied the appeals Neyman was hired to research, research and prepare docket and file. This was never done.

## COUNT TEN

## CALIFORNIA CONSUMER PROTECTION ACT, CALIFORNIA §§ 1750-1785, CIVIL CODE (CLRA) AND CALIFORNIA CIVIL CODE § 1770 (a) (theft of legal fees paid in year 2014 through litigation loans; false advertising of legal services; 30-DAY NOTICE OF CORRECTION FILED APRIL 1, 2025, AND VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A, § 2; § 9(3)

[3] The reckless and grossly negligent acts of all defendants caused plaintiff the loss of two different rental apartments, almost a million dollars lost in vintage comic books, and mental suffering and other /damages described herein his second amended complaint.

158. Plaintiff repeats, releases, and incorporates by reference the allegations of all above paragraphs, inclusive, of this Complaint as though set forth at length.

159. Defendants engage in the trade and profession of practicing law in Suffolk County, Boston, Massachusetts but entered into an employment contract with plaintiff who is a California resident who resides in Los Angeles County *in the State of California.*

160. Defendants engaged in unfair or deceptive **acts** or practices in the entrepreneurial aspect of the practice of law in their business dealings with plaintiffs.

161. Specifically, but not expressly limited to the following, defendants committed the **acts** as described in attached April 1, 2025, letter to the EEOC, demanding that defendant Neyman, and Neyman and Associates as well as defendant Law Offices of Richard Grossack and Richard Grossack the individual. **See Exhibit "A."**

162. Plaintiff alleges that these, and other **acts** of the defendant, were part of a deceptive and unfair business practice engaged by defendants in their trade and profession.to defraud the plaintiff out of legal fees and deceive plaintiff to work with no pay.

163. **Plaintiff further alleges that these acts were in violation of *both* CALIFORNIA CONSUMER PROTECTION ACT, CALIFORNIA §§ 1750-1785, CIVIL CODE (CLRA) AND CALIFORNIA CIVIL CODE § 1770 (a) (theft of legal fees paid in year 2014 through litigation loans; false advertising of legal services; 30-DAY NOTICE OF CORRECTION FILED APRIL 1, 2025 AND VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A, § 2; § 9(3).**

164. Because the Massachusetts Consumer Protection Act law was invoked as defendants are Massachusetts license attorneys, the plaintiff formally requests that this Court apply consider and apply **a significant recent case where a federal court in California applied California conflict-of-law principles to invoke Massachusetts law (via a contractual choice-of-law clause, which can be interpreted through a renvoi-like analysis of which state's law governs validity) is Peter Hildebrandt v. Unum Life Insurance Company of America, No. 23-2297 (C.D. Cal. Feb. 13, 2026). Case Citation: *Peter Hildebrandt v. Unum Life Insurance Company of America*, No. 23-2297, 2026 WL (C.D. Cal. Feb. 13, 2026).**

**165. Plaintiff further alleges that as a result of defendants' unfair and deceptive trade practices, plaintiff is entitled to an award of treble damages in an amount up to the amount this Cout deems just and equitable under the facts of this case.1361. Plaintiff further prays for injunctive relief to prohibit defendants, and each of them, from using similar fee agreements with other clients.**

166. By virtue of the attorney/client relationship between defendants, on the one hand, and plaintiff, on the other hand, defendants owed to plaintiff all duties and obligations including, but not limited to, the following:

A. The duty to represent plaintiff and plaintiff's interests faithfully;

B. The duty to, at all times, deal with plaintiffs honestly and with the utmost good faith;

C. The duty to represent plaintiffs in accordance with the Rules of Professional Conduct of the State Bar, State of *[name of state]* and the standard of care for lawyers in the State of *[name of state]*;

D. The duty to represent plaintiff with undivided loyalty;

E. The duty to disclose significant information to plaintiff; and

F. Despite these fundamental duties, defendants failed to comply with the minimum standard of care, and breached their duties to plaintiffs by committing, among other things, the errors and omissions set forth in paragraphs 1 through 136 above, and further:

G. failed to comply with the required standard of conduct as set forth in *[list of ethical rules of professional conduct]*, among others;

H. exerted undue pressure on plaintiff to accept a settlement against *[his/her]* wishes; and

I. failed to permit plaintiff to have complete control and authority over the settlement of the case, and retention of counsel.

167. Defendant's conduct, as set forth above, was neglectful, dilatory, negligent, and fell below the recognized standard of care owed by attorneys to their clients in the State of *Massachusetts and California*

168. Had defendant Neyman and Associates fulfilled *[his]* duties to plaintiff, and acted reasonably and within the standard of care, plaintiff would have been provided competent counsel to effectively manage the eight cases, defendant attorneys and law firm undertook.

**169. As a direct and proximate result of defendant's negligence, plaintiff has been damaged in a sum within the jurisdiction of this court and in an amount according to proof. Plaintiff will seek leave of court to amend this Complaint to allege the exact number of damages when such sum is fully ascertained.**

**COUNT ELEVEN: BREACH OF FIDUCIARY DUTY**
**COUNT TWELVE: LEGAL MALPRACTICE**
**COUNT THIRTEEN: NEGLIGENCE**

**170. The plaintiff repeats and restates all of the above paragraphs with the same force and effect with regard to three counts pleaded herein, all of which have the identical fact pattern and incorporate by reference the allegations of all above paragraphs inclusive of this Complaint as though set forth at length.**

**171. By virtue of the attorney/client relationship between defendants, on the one hand, and plaintiff, on the other hand, there existed a fiduciary relationship between plaintiff and defendants, and the defendant Massachusetts attorneys and the defendant law firm owed the plaintiff (1); a Duty, (2). That was breached, (3). Those defendants caused plaintiff losses of monetary damages exceeding several millions of dollars, and loss of two rental units including the Corona Hotel Queen Suite of May 1, 2023, and the Brookline Massachusetts rent controlled apartment on Friday January 6, 2026.**

**172. By virtue of the attorney/client relationship between plaintiff and defendants, and by virtue of the fiduciary relationship between plaintiff and defendants, defendants owed to plaintiff all duties and obligations of a trustee and fiduciary to a beneficiary including, but not limited to, the following:**

**A. The duty to represent plaintiff and plaintiff's interests faithfully;**

**B. The duty to, at all times, deal with plaintiffs honestly and with the utmost good faith;**

**C. The duty to represent plaintiff in accordance with the Rules of Professional Conduct of the State Bar, State of Massachusetts, and California;**

**D. The duty to charge a reasonable fee;**

**E. The duty to represent plaintiff with undivided loyalty;**

**F. The duty to disclose significant information to plaintiff;**

**G. The duty to not obtain any advantage over plaintiff by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind; and**

**H. Not increasing the hourly rate without notice and agreement by plaintiff, contrary to the fee agreement drafted by defendants.**

**I. Defendants breached these fiduciary duties owed to plaintiff committing, among other things, those acts set forth in paragraphs above all of the following reckless and grossly negligent actions described herein;**

**173. Case # 1` Federal ADA, Civil rights lawsuit**-Prostate Cancer acquired from mold violation of Warranty of Habitability;--never filed, abandonment; surpassed statute of limitations. Defendant Neyman negligently allowed the applicable. statutes of limitations to lapse on the civil rights lawsuit against Landlord 61 Park LLC, where plaintiff resided in a rent controlled apartment for two hundred by not raising counterclaim in the case 61 Park, LLC v. Gregory Langadinos, docket no. 22H84SP004606, and failing to file an State law count in the Federal lawsuit for suffering cancer from residing in rental unit prior to renovations. **Plaintiff was seeking from landlord seven $ 7 Million dollars which Neyman expressly hand wrote on the Civil Cover Sheet when removed the federal lawsuit requested from federal court papers.**

**174. Case # 2; Theft of comics/Conversion of Comics matter** which are worth approximately $900,000 (hereinafter "comics matter". Neyman never filed suit within 3-year statute of limitations, client abandonment; surpassed statute of limitations. Defendant Neyman negligently allowed the applicable. statutes of limitations to lapse on the Theft of Comic books matter against Landlord 61 Park LLC Attorney Neyman committed malpractice by not filing a civil action within the applicable statutes -of -limitations against parties responsible for the alleged theft of comics which you claim are worth approximately $900,000 (hereinafter "comics matter. **Plaintiff seeks $ 900,000 for the value of the books. Neyman failed to ever file in breach of contract for legal services, and breach of fiduciary duties on Vintage comic books worth over $ 900,000.**

**175. Case # 3 Langadinos v. 61 Park LLC,** Brookline Housing Authority et. Defendants Neyman and Neyman Law failed to professionally manage the lawsuit and failed to re-file documents with the Boston Housing Court after the case was re-remanded. **Plaintiff was wrongfully evicted from rent controlled apartment and seeks $ 650,000 in damages for this individual harm and damages alone—the wrongful eviction.** Defendant Neyman negligently allowed the applicable. statutes of limitations to lapse preserving a Jury trial and counterclaims against Landlord 61 Park LLC Attorney Neyman committed malpractice by not filing a civil action within the applicable statutes -of -limitations against parties.

**176. Case # 4; Langadinos v. Suffolk U. Data Breach; ;**--abandonment; surpassed statute of limitations. Defendant Neyman wrote a demand under Massachusetts Law but never filed the follow-up Federal Administrative complaint with US Department of Education, Office for Civil Rights. USDOE OCR. **Plaintiff seeks $ 200,00 from all Neyman and Grossack defendants, and their insurance companies' ad subsidiaries.**

**177. Case # 5 Langadinos v. USC Patient; abandonment, Retaliation**. After the plaintiff appeared before the University of Southern California's TITLE IX Office and testified as a Representative as allowed under Federal C.F.R.'s he was abruptly canceled as a patient of the medical center. **Attorney James, who takes any and every case, and encourages as many cases as possible to bring to him, undertook the cases surpassed statute of**

**limitations, and sabotaged this case as well, for which plaintiff seeks $ 250,000 from Neyman's insurance carrier, defendants.** Defendant Neyman negligently allowed the applicable. statutes of limitations to lapse on the Theft of Comic books matter against Landlord 61 Park LLC Attorney Neyman committed malpractice by not filing a civil action within the applicable statutes -of -limitations against parties.

**178. Case # 6 Langadinos v. Southern New England School of Law**, Suffolk Superior Court Civil Action No. 2008-2064; plaintiff paid Neyman $ 7,000 from loans that Neyman arranged to be loaned to plaintiff. 2014 was spent with plaintiff's money in September of 2014 when plaintiff moved to Los Angeles, California. **Plaintiff demands return of $ 7,000, and Plaintiff was wrongfully placed on vexatious litigant list for 12 years and seeks Two Million dollars in damages; $ 2,000,000 for the neglect and failure to take this appeal upon.**

**179. Case # 7; Langadinos v. Board of Trustees of the University of Massachusetts, Civil Action No. 12-11159-GAO; Judge 'O'Toole's Order of September 30, 2013,** ;plaintiff paid Neyman $ 7,000 from loans that Neyman arranged to be loaned to plaintiff. Neyman absconded with plaintiff's money in September of year 2014 when plaintiff moved to Los Angeles, California. In accordance with the Massachusetts Rules of professional conduct] of the California Rules of Professional conduct, among others, Defendants breached their fiduciary duties and the ethical responsibilities to plaintiff, by among other things: B. Failing to advise client of the status of the case and o comply promptly with reasonable requests for information in violation of Mass. R.Civ.P. Rule 1.4., which states; Acting deceptively by charging an unreasonable fee in violation of [citation of rule];C. By exerting undue pressure and threats upon plaintiff to settle a case so that defendants could receive a higher fee;

**180. Case # 8: Langadinos v. RITE AID,** Defendant Neyman sent a signed on his letter head to corporate counsel for RITE AID, because plaintiff's identity was stolen by employees in Long beach, and plaintiff suffered from wrongful withdrawal of credit card theft of checking amount from actual employees. Offer was made for settlement and when Neyman went to mediate and settle, RITE refused to pay because Neyman practiced law in California without a license in violation of CA UPL Penal Code. See

**D. By failing to provide plaintiff with full and complete records of time contemporaneously with the month that the time was allegedly devoted and only providing the alleged time keeping on the eve of settlement and thereafter;**

E. By changing their hourly rates without informing plaintiff, and contrary to their written fee agreement;

F. By falsely adverrtising on the web site of the firm, web site that Attorney Neyman specializes in **'Sales' as well as law**, and advising plaintiff that defendant Neyman has exceptional experience in personal injury torts, and Neyman represented that his Cousin Eric Neyman is a current Massachusetts Appeals Court Judge, when the truth and reality of the matter is , defendant James Neyman is not competent enough to insert page numbers within a WORD document, and when plaintiff askedd Neyman on several occasions why he neglects to place page number of documents he files with the courts, his reponse is; ***'I don't know how to do that."***

181. As a direct and proximate result of defendants' breach of fiduciary duties, plaintiff has been damaged in a sum within the jurisdiction of this court and in an amount according to proof. Plaintiff will seek leave of court to amend this Complaint to allege the exact number of damages when such sum is fully ascertained.

182. Plaintiff seeks the return of all fees, incurred by defendants as a result of their improper conduct of defendant James Neyman, and all wages owed, and all other damages this court deems just

**COUNT FOURTEEN**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; AGAINST ALL MASSACHSUETTS DEFENDANT LAW FIRMS AND INDIVIDUALLY NAMED DEFENDANTS, NEYMAN AND GROSSACK; [AND CRIMINAL HARASSMENT WITH TEXTS, MESSAGES, PHONE CALLS BY NEYMAN'S ACCOUNTANT LEO LEYDON]; AGAINST ALL MASSACHSETTS AND HOTEL DEFENDANTS AND DEFEDANT OLD COLONY AND DEFENDANT PMA**

183. The plaintiff restates and realleges all the above paragraphs with the same force and effect as described in all above paragraphs was intentional or reckless, performed with outrageous or extreme disregard for the probability of causing emotional distress.

184. The acts of all Neyman defendants were conducted with the intention of causing, or with reckless disregard for the probability of causing emotional distress to Plaintiff, or a desire to harm Plaintiff emotionally. See **Exhibits "A" through "X."**

185. The acts of Accountant and Agent Leo Leydon is violating the criminal harassment statute and threatening plaintiff and texting plaintiff to "Fuck Off" "Fuck off "I am not a financial advisor" were carried out with the intention of causing, or with reckless disregard for the probability of causing emotional distress to Plaintiff, or a desire to harm Plaintiff emotionally.

186. As a result of Defendant's Neyman's sinister and/or criminal connotation when observed in the context of the whole plot and undertaking eight cases and sabotaging all eight cases with the use of his reckless acts, Plaintiff suffered severe emotional distress, including but not limited to [symptoms such as anxiety, sleep disturbance, mental anguish humiliation, loss of enjoyment of life, physical symptoms, etc.], and has incurred medical expenses and other damages. The conduct of Defendant was a substantial factor in causing Plaintiff's emotional distress.

187. The conduct of Defendant Neyman's Of Counsel; defendant Richard Grossack who claims to be an attorney in letters and in screaming and texting plaintiff that "**you're not a fuckin Jew' "you are not the chosen people** is extreme and outrageous, behavior, beyond the bounds of decency, and not ordinarily tolerated in a civilized society. The criminal predicate acts under RICO.

188. The conduct of Defendant Neyman's of Counsel; defendant Richard Grossack who claims to be an attorney in letters and in screaming and texting plaintiff is belligerent, unhinged and well below the standard of care of reasonably prudent attorney.

**WHEREFORE, plaintiff seeks compensatory damages for mental anguish caused by Neyman Law, Neyman, Grossack Law, Grossack, for proximately causing two different negligent actions in mishandling eight different cases, evictions. Plaintiff seeks compensation from all Hotel defendants as well. Balmoral Hotel Tenants Association v. Lee, 226 Cal App. 3d. 686, 276 Cal. Rptr., 640 (1990) ($ 1.48 Million awarded for Self Help acts of Landlord**

**COUNT FIFTEEN**
**VIOLATION OF FAIR HOUSING ACT; 42 U.S.C. 3604(a); WRONGFUL EVICTION EXPULSION, LOCKUT WITHOUT LEGAL PROCESS AGAINST ALL CHOICE HOTEL AND HOTEL MANAGEMENT DEFENDANTS**

**189.** The plaintiff restates and releases all above paragraphs with the same force and affect.

**190.** Plaintiffs release and incorporate herein by reference all paragraphs above with the same force and affect.

**191.** Section 3617 of the **FHA** makes it "unlawful to coerce, intimidate, threaten, or interfere with any person... on account of his having aided or encouraged any other person in the exercise or enjoyment or [] any right granted or protected by" the **Fair Housing Act**." (See Walker v. City of Lakewood, 272 F.3d 1114, 1123 (9th Cir. Cal., 2001). See 42 U.S.C. § 3604(a)-(c).

192. By the **actions** described above, defendants have made housing unavailable to the plaintiff because of according to defendant Grossack, **you are not a Fuckin Jew" you are not one of the chosen people." Defendant Grossack, then texted plaintiff and repeated the written phrase; "you're not a Jew, one of the chosen people." See Exhibit " B(1)." (Text messages from -defendant Richard Grossack)."You must have heard of the Holocaust." These actions constitute violation of FHA, because defendants Grossack and Neyman, do not lift a finger to genuinely fulfill their obligations under the attorney privilege they enter into with non-Jewish persons, unless they identify as the same** race and/or color as defendants Neyman and Grossack.

193. In violation of 42 U.S.C. § 3604(a), and have discriminated in the provision of services in connection with the rental and management of leases dwellings because of race and/or color motivated defendant attorneys to not provide zealous representation to plaintiff Langadinos in violation of 42 U.S.C. § 3604(b).

194. By the **actions** described above, defendants have discriminated against plaintiffs because of race and/or color in the making of real estate-related transactions through defendant Neyman Law, and Neyman's gross negligence in failing to properly raise Counterclaims and properly raise defenses to secure plaintiff's rented housing unit

**WEREFORE, plaintiff prays for monetary and other damages, attorneys' fees and costs as this court deems just and all other relief for which entitled.**

**COUNT SIXTEEN**
**UNLAWFUL LOCKOUT IN VIOLATION OF California Civil Codes §§ 712.010; 715.010 et seq., and Civil Code §§ 1159; 789.3 (Penal Code 418); AGAINST ALL HOTEL DEFENDANTS**

**195.** The plaintiff restates and releases all the above paragraphs with the same force and affect.

**196.** The three hotel defendants conspired with the Corona Police to wrongfully lock out and expel the plaintiff Gregory Langadinos without the use of the civil process or

**197** The defendant Corona Police Officer's Grier and others falsely imprisoned the plaintiff within his rented apartment and used unreasonable threats of arrest and conducted a search of plaintiff's rented apartment for which plaintiff was in lawful possession of by using forcible entry and detaining plaintiff in violation of (Cal. Civ. Code §§ 1159, 1160),

**198.** The defendant Choice/Everhome Corona, HMC, and Foothill Management owner of hotel company conspired with the Corona Police to wrongfully evict, and engage in retaliatory eviction acts in violation of (Cal. Civ. Code § 1942.5(h)),.

**199.** All the named defendants engaged in illegal trespass, conversion, and violations and invasions of plaintiff's privacy, as well as an **illegal lockout** and interruption of utility services on April 27. 2023, in violation of (Cal. Civ. Code § 789.3), and breached the covenant of quiet enjoyment, breach of covenant of habitability against plaintiff.. All the named defendants were required to following the defendant Choice Franchisor's procedures protecting hotel guests that become tenants after 30 days, and to prevent willful violations of **California Civil Codes §§ 712.010; 715.010 et seq., and Civil Code §§ 1159; 789.3 (Penal Code 418).**, and civil conspiracy, and willful violations of the CA Consumer Legal Remedies Act.

**200.** A California Appeals Court has held that a franchisor may be liable for punitive damages for the intentional tort of its franchisee. See Kuchta v Allied Builders Corp. 4th Dist 21 Cal App 3d 541, 98 Cal Rptr 588 (1971). The outrageous facts of this lawsuit warrant the imposition of punitive damages and treble damages against all four Massachusetts attorneys, three named Defendants Hotel.

**COUNT SEVENTEEN**
**BREACH OF CONTRACT ALL DEFENDANTS)**

201 .The plaintiff restates and releases all the above paragraphs with the same force and affect.

202. The plaintiff entered into a contract with the defendant Franchisor Choice Hotels and paid for his reservations for two weeks, and then three more weeks exceeding the 30-day time threshold and becoming a lawful tenant.

**203. In further breach of the written contract to rent the plaintiff an apartment within the defendant Franchisor Choice while managed by defendant Hotel Management and Consulting and owned and operated by Defendant Foothill Extended Stay, defendant Philip A. Powers, and defendant The Powers Family Trusts, for** two years and a half from January 13, 2023, through August 1, 2025. All of the Hotel defendants conspired together to unlawfully evict plaintiff and lock him out of his rented apartment in violation of numerous criminal and civil statutes; **California Civil Codes §§ 712.010; 715.010 et seq., and Civil Code §§ 1159; 789.3 (Penal Code 418).**

**204. Plaintiff seeks compensatory, double, and treble damages as well as Punitive damages in the amount of $ 2,000,000 for this Count alone.**

**205. The plaintiff entered into contract with Frank English who promised that he would engage in Fair Dealing in compliance with Defendant Old Republic's CODE OF CONDUCT.**

**COUNT EIGHTEEN**
**Conspiracy to Violate RICO (18 U.S.C. §§ 1962(a), (d)) (Against All four Massachuysetts Massachusetts Attorney's, Neyman Law, Neyman, Gossack Law, and Grossack, Defendant's Old Colony, and defendant PMA**

206. Plaintiff Langadinos incorporates herein by reference each and every allegation in the foregoing paragraphs.

207. Beginning no later than 2013, and continuing through the present, the Neyman Law firm and Individual Defendants unlawfully, knowingly and intentionally conspired and agreed to violate the provisions of 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) from soliciting plaintiff and others to borrow Necessity funding loans, which plaintiff borrowed for expenses but instead was commandeered by defendant Neyman to pay for appeals of vexatious Orders, which defendant Neyman never took appeal of year 2013, and 2014 vexatious orders.

208. The conspirators agreed that the Neyman Law Firm would receive income derived from the pattern of racketeering activity (contingency fees from fraudulently represented legal fees which were never

performed) and would use and invest that income in the continued operation of the Neyman Law Firm Enterprise. Each conspirator knew that racketeering proceeds would be reinvested in advertising, hiring, and expansion, and agreed to this reinvestment as part of the overall scheme.

209. Under *Salinas v. United States*, 522 U.S. 52, 63-64 (1997), a defendant may be liable for RICO conspiracy if they agreed to facilitate the scheme, even if they did not personally commit two predicate acts. Each Defendant agreed to facilitate the conspiracy. At all relevant times, each Defendant knew about and agreed to facilitate the overall purpose of the scheme.

210. In furtherance of their conspiracy to violate the provisions of 18 U.S.C. § 1962(a), the Neyman Law Firm and its attorneys committed overt acts by, inter alia, using or investing funds from PMA and/or defendant Old Colony to pay legal fees to Massachusetts Attorney Scott Burke to pay him income derived from the pattern of racketeering of Neyman's payment for filing fraudulent and false and perjurious motions, papers before the Boston Housing Court eviction case against plaintiff. Defendant Neyman and defendant Grossack law Firm used fraudulent means to neglect repenting capture more plaintiffs on whose behalf the firm can file more cases and then farm them out to Attorneys who are not competent to manage such cases which will eventually become salaries for Neyman attorneys and others.

211. By reason of the Neyman Law Firms; and defendant Old Colony, and PMA, for violation of 18 U.S.C. § 1962(d), plaintiff has been injured in its business working for Neyman law and/or property and is entitled to equitable relief under 18 U.S.C. § 1964(a), as well as treble damages, attorneys' fees, costs, and interest on all of the foregoing under 18 U.S.C. § 1964(c).

**COUNT NINETEEN**
**Common Law Fraud (Against All Defendants)**

212. Plaintiff Langadinos incorporates herein by reference each and every allegation in the foregoing paragraphs.

213. In furtherance of their scheme, and during the course of their racketeering activity, Defendants Neyman made and/or elicited repeated and knowing false statements of fact, including assertions that plaintiff was a vexatious litigant to defendant PMA, and Frank English and that Judge Fahey presiding over previous cases entered Orders against plaintiff so Morrison Mahoney is a great choice for a defense firm, even though Neyman is precluded from suing Neyman law.

214. Based on information and belief, the Defendant Old Colony's sham corporate operations structure is were predicated and managed by negligently trained staff that were never taught or know from common sense that PMA cannot use the same Morrison Mahiney Law firm to represent Neyman when Neyman moved to disqualify Morrison Mahoney in year 2015 or 2016 didn't teach staff to uphold the Rules

of Professional Responsibility to fabricate reasons to expose stories and to falsely testify through the use of Morrison Mahoney attorneys that plaintiff Langadinos cannot file counterclaims within an eviction case, based on Vexatious Orders from 12 or more years ago, that never prohibited plaintiff from filing counterclaims, if and when he is a defendant.

215. Defendants made or caused to be made material, important, and knowing misrepresentations and/or omissions of fact in those cases, with the intent Judges rely and act upon them.

**216.** As a proximate result of Defendants' fraudulent misrepresentations and nondisclosures, plaintiff suffered compensatory damages in an as yet undetermined amount to be proven at trial, which exceeds $750,000, exclusive of interests and costs.

**217. PRAYER FOR RELIEF Plaintiff Langadinos requests that the Court enters judgment in its favor and against Defendants, to include:**

a. **Compensatory damages in an amount to be determined at trial.**

b. **Trebled damages attributable to the RICO claims, as permitted by 18 U.S.C. § 1964.**

c. **Punitive damages on the damages attributable to the common law fraud and common law conspiracy claims.**

d. **Disgorgement to the received by Defendants unjustly.**

e. **Attorney fees, costs, and pre- and post-judgment interest.**

f. **An injunction prohibiting Defendants from continuing to perpetrate their fraudulent scheme against plaintiff, Gregory Langadinos' Such other relief as justice may require. That the Court enter an ORDER that: 1. Declares that Defendants' conduct violated numerous federal civil rights laws, the Fair Housing Act; 2. Enjoins Defendants, their agents, employees, assigns, successors, and all other persons and entities in active concert or participation with them from: continuing to falsely accuse and harass plaintiff by wrongfully harassing plaintiff from accessing the Courts, through conjured up lies about plaintiff's past litigation and to order defendant Choice to retract its false representation that plaintiff is vexatious when defendant Choice are racist and discriminate based on race disability and many other protected classes;**

g. **Award the plaintiff damages for denied housing, or otherwise making housing unavailable because of race, in violation of 42 U.S.C. § 3604(a); b. Discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race in violation 42 U.S.C. § 3604(b); or c. Coercing, intimidating, threatening, or interfering with a person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, rights under the Fair Housing Act;**

h. **Lien pursuant to Fed.R.Civ.P.Rule 64; to be placed upon the Cape Cod residence of defendant James Neyman;**

i. **All other relief this Honorable Court deems just and equitable.**

j. Respectfully submitted, Gregory Langadinos

Dated: Feburary 25, 2026 Respectfully Submitted,

**/S/ Gregory Langadinos**

Gregory Langadinos
Case # 5:25-cv-01064

# EXHIBIT "A"

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

San Francisco District Office
450 Golden Gate Avenue 5 West, PO Box 36025
San Francisco, CA 94102
(650) 684-0910
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/18/2026

**To:** Gregory Langadinos
524 North La Brea Avenue Unit 16
Inglewood, CA 90302
Charge No: 550-2026-00981

EEOC Representative and email: WARREN CHEN
CRTIU SUPERVISOR
WARREN.CHEN@EEOC.GOV

---

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge. The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of the EEOC's official notice of dismissal. Otherwise, your right to sue based on the above-numbered charge will be lost.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 550-2026-00981.

On behalf of the Commission,

Digitally signed by WARREN CHEN
Date: 2026.02.18 16:31:49 -08'00'

*for* Christopher Green
District Director

**Cc:**
524 North Labrea Ave., Unit 16
Inglewood, CA 90302

Christine Rosskopf
501 W Broadway, A380
San Diego, CA 92101

Please retain this Notice for your records.

# Confirmation of Charge Receipt / Confirmación del Recibo de una Queja/Querella

From: EEOC (no-reply@service.eeoc.gov)

To: glangadinos@yahoo.com

Date: Wednesday, February 18, 2026 at 04:28 PM PST

## U.S. Equal Employment Opportunity Commission

Re: EEOC Charge Number: 550-2026-00981
Charging Party: Gregory Langadinos
Respondent: James E. Newman and Associates, P.C.

This notice is being sent to you because you recently filed a charge 550-2026-00981 with the U.S. Equal Employment Opportunity Commission (EEOC). EEOC is pleased to inform you that you can now access information about your charge through a secure website, the **EEOC Public Portal.**

EEOC's Public Portal allows you to:

- Update your contact info
- Upload a letter of representation from your attorney if you have one
- Upload documents supporting your charge
- Request the respondent's Position Statement if it submits one, and upload your response
- Check the status of your charge

To access your charge information online:

1. Go to EEOC Public Portal
2. Click **Register** in the upper-right corner of the screen.
   > Enter your contact information and create a password.
   > When you create your account, you'll automatically log into the Portal.
3. Once you're logged-in, you'll be taken directly to your charge.

**IMPORTANT!** When entering your contact information, enter the Email Address that this notice was sent to.

**What You Should Do Next:**

There are a few important things to keep in mind after filing a charge with EEOC, particularly:

- ☐ You must keep your documents – both paper and electronic
- ☐ Look for a job and keep records of your job search if you are unemployed

Given the high demand for EEOC's services and the agency's limited resources, we ask you to be patient. EEOC's investigation will vary based on many factors, including the agency's responsibility to focus on matters that serve the broader public interest in equal opportunity. EEOC is committed to strong enforcement of the law and excellent service to the public. Your cooperation is essential to EEOC's investigation of your charge.

EEOC typically receives about 90,000 charges of discrimination from workers out of more than 700,000 contacts

**February 18, 2026**

**VIA EMAIL with attachments**

**Gregory Langadinos**
**524 North La Brea Avenue Unit 16**
**Inglewood, CA 90302**
glangadinos@yahoo.com
**(949) 844-0250**

**Warren Chen**
**Intake Supervisor**
**U.S. Equal Employment Opportunity Commission**
**San Francisco District Office**
**The Phillip Burton Federal Building**
**450 Golden Gate Ave., 5th Floor West**
**P.O. Box 36025**
**San Francisco, CA 94102**
**Telephone: (650) 684-0946**

**Mr. Chen,**

**THIS DOCUMENT SERVES AS THE ADENDUM TO THE FOURTH QUESTION ON THE CHARGE OF DISCRIMINATION <u>TO SERVE FOR BOTH CHARGE OF DISCRIMINATION ONE AND TWO.</u>**

I enclose for your review and consideration two different Charge of Discrimination forms, for my two employers, **JAMES E. NEYMAN AND ASSOCIATES, P.C, and Law Offices of Richard Grossack that are both located at 76 Canal Street, 3rd Floor Boston, MA 02114.**

**See two separate Charge of Discrimination forms attached as pdf files herein this email.**

I, Gregory Langadinos as the Respondent, hereby submit this Addendum to the fourth question on the EEOC Charge of Discrimination to serve as my formal complaint alleging unlawful employment actions based on

(1) religion, (2) sex, (3) national origin, (Greek; non-Jewish); (4). Age, (5). disability, or (6). Retaliation, and (7). denial of accommodation against the first Respondent **JAMES E. NEYMAN AND ASSOCIATES, P.C.; and against the second employer Rocky Grossack Personal Injury Attorney, who are both located at 76 Canal Street, 3rd Floor Boston, MA 02114.**

**<u>2 separate named Employer Entities with the same address Named Respondents</u>**

- **Charging Party: Gregory Langadinos**
- **THERE ARE 2 SEPARATE NAMED Respondents (Named**

1. **Primary Employer Corp. JAMES E. NEYMAN AND ASSOCIATES, P.C**
2. **Second primary employer RICHARD GROSSACK The Particulars (Detailed Allegations)**

3. **Background:** On June 2, 2024, I began employment with the first Respondent **JAMES E. NEYMAN AND ASSOCIATES, P.C, located at 76 Canal Street, 3rd Floor Boston, MA 02114 which also the address for the second Respondent entity, operating within this same address Richard Grossack 76 Canal Street, 3rd Floor Boston, MA 02114.**

4. **I was hired in late May 2024, to begin work on June 2, 2024, and my Job Title was Litigation Paralegal, and I worked until October 25, 2025, when I was abruptly and wrongfully terminated for engaging in protective activity and demanding my unpaid wages, which exceed over $ 155,000.**

5. **Discriminatory Acts:** On April 1, 2025, (within 300 days) and continuing on forward until this day, Wednesday February 18, 2026, I was subjected to [harassment/denied promotion/terminated] based on my [protected class, e.g., race, sex], as a disabled worker, that has been diagnosed with prostate cancer, when I demanded wages for work I performed for Respondents.

6. **As an individual who is a Male, above 40 years of age, Greek American, who suffers prostate cancer, I have been viciously discriminated against, for engaging in concerted and protective activity demanding to be paid my wages, and I requested reasonable accommodations directly upon Respondent ONE JAMES E. NEYMAN AND ASSOCIATES, P.C., and I was denied my requests without anyone engaging in the required interactive process. See Demand for wages and reasonable accommodations attached as <u>Exhibit "1"</u> within Charge of Discrimination ONE.**

7. **See vicious attacks by text message dated October 25, 2025, and attached within Charge of Discrimination TWO.**

8. **On** Sat Jan 4, 2025, at 5:26 PM I sent an email to James E. Neyman the owner of **JAMES E. NEYMAN AND ASSOCIATES, P.C, located at 76 Canal Street, 3rd Floor Boston, MA 02114** I wrote an email demanding my unpaid wages, on January 4, 2025 an cited numerous laws in the heading;

9. Subject: (1). Demand for payment of 9 months of Time Sheets of billable Hours record and (2) Formal request for reasonable accommodations under Title III of Americans with Disabilities Act of 1990, and amendments of 1998: and (3) Formal demand under Federal Wagner Act (National Labor Relations Act of 1935) is 49 Stat. 449 (Public Law 74-198), currently codified at 29 U.S.C. §§ 151–169 (4). Massachusetts General Law Chapter 93A, section 2, and 9(3): (5). California Cancer Patients' Bill of Rights, demanding that you file federal lawsuit, and pay me my wages exceeding over $ 120,000, and Clarification on Purchasing an NCLC subscription. **See Demand for wages and reasonable accommodations attached as <u>Exhibit "1"</u> within Charge of Discrimination ONE.**

10. **I reported to the owner of this law firm, James Edward Neyman who is a licensed Massachusetts attorney the following;**

    - **"This document serves as a Formal Request for Reasonable Accommodations under Title III of the Americans with Disabilities Act of 1990, and amendments of 1998, as well as under Massachusetts General Law Chapter 93A, section 2, and 9(3): demanding that you waive your law firms unlawful rules in which you seek to force me to await until you settle lawsuits to split legal fees to pay me my wages you owe me.**

- You have thirty days (30), to respond to the demand under Massachusetts General Law Chapter 93A, section 2, and 9(3): and you are required to immediately engage in the ADA's interactive process with me to accommodate my ADA's requests related to your interference with my medical treatment and wellbeing by due to your deprivation of my wages, and failure to perform legal work, which you were hired to perform.

- Attached below, I enclose my Billable Hours record, for eight months of year 2024, June, July, August, September, October, November, and December 2024, and so far in January 2025.

- I also worked overtime in the month of July 2024, which you never compensated me for in violation of the NLRA, and constitutes Unfair Labor Practices (ULPs): The NLRA prohibits employers from interfering with, restraining, or coercing employees, dominating, or interfering with unions, or discriminating against employees.
- The federal citation for the Wagner Act (National Labor Relations Act of 1935) is 49 Stat. 449 (Public Law 74-198). It is currently codified at 29 U.S.C. §§ 151–169. The Act was signed into law on July 5, 1935.

  Despite working while I am an individual that is under treatment for Prostate Cancer and other medical ailments, none of my formal request pursuant to Title III of the Americans with Disabilities Act of 1990, and amendments of 1998, as well as the California Cancer Bill of Rights were even considered or granted in which I demanded that both Respondents waive their illegal internal operating Rules in which you seek to pressure me to.be paid by splitting legal fees and pay me my wages which exceed $ 120,000.

- I reject the offer to work at $100 while you promised to pay me with settlement proceeds from these cases after you settle them. You should know from employing Attorney Grossack who you claim represents attorneys who face law license suspension and disbarment, before the Massachusetts Board of Bar Overseers that splitting legal fees with non-licensed attorney is unethical.

- Formal demand pursuant to California Cancer Patients' Bill of Rights. On August 19, 2021, the California State Assembly unanimously passed Senate Concurrent Resolution No. 11, the Cancer Patients' Bill of Rights. The resolution is a first-of-its-kind measure that lays out six key rights that every patient with cancer in California should have including a right to medical treatments for pain management and other services that support their overall health.

- **As a cancer patient, which is well aware of from reviewing medical and discussing my medical records with me, when you deprive me of my wages, you cause the disruption of my right to medical treatments for pain management and other services.**

- **See Demand for wages and reasonable accommodations attached as <u>Exhibit "1"</u> within Charge of Discrimination ONE.**
-
- **Despite reporting this to owner, James E. Neyman, no action was ever taken. See <u>Exhibit "1"</u>**
- **On October 31, 2025, I was [wrongfully terminated) by Respondents one and two pursuant to a letter from Respondent's Attorney Scott Burke attached as <u>Exhibit "4" within Charge of Discrimination ONE.</u>**
- **Not only was I wrongfully terminated, but my employer's owner James Neyman withdrew off my cases, for theft of comic books that were worth $ 900,000, when he surpassed the statute of limitations, and worse, my Respondent also withdrew off the housing court case in retaliation for me demanding wages, and refusing to accept legal fees from lawsuits in lieu of my unpaid wages.**
- **After I filed an Insurance company claim for unpaid wages, and negligent mishandling of legal cases, on October 29, 2025, see <u>Exhibit "3" within Charge of Discrimination ONE,</u> Respondent Neyman retaliated two days later and abandoned me as a client.**

**Conclusion:** Based on the totality of all facts and circumstances, I truly and reasonably believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964 and other applicable federal laws on the basis of religion, (2) sex, (3) national origin, (Greek; non-Jewish); (4). Age, (5). disability, or (6). Retaliation, and (7). denial of accommodation against the first Respondent **JAMES E. NEYMAN AND ASSOCIATES, P.C.; and against the second employer Rocky Grossack Personal Injury Attorney, who are both located at 76 Canal Street, 3rd Floor Boston, MA 02114.**

**When I contacted second respondent Law Offices of Richard Grossack to demand my wages, he viciously attacked me, and said, I am not one of the Jewish chosen people, so I am not worthy of my wages owed, and I am not one of the "Chosen people." Which is evidence of discrimination based on (1). Religion, (2) Ethnicity (3). National Origin (4) Retaliation and based on (5) disability as this Respondent is aware of my disabilities. See <u>Charge of Discrimination TWO.</u>**

- I formally request to receive two (2) separate RIGHT TO SUE LETTERS, (RTS) so I can properly amend my federal lawsuit and seek redress for all the aforementioned wrongful and illegal discriminatory conduct I have experienced.

- **Sincerely,**

Gregory Langadinos
**524 North La Brea Avenue Unit 16**
**Inglewood, CA 90302**
**<u>glangadinos@yahoo.com</u> (949) 844-0250**

2/18/2026

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## CHARGE OF DISCRIMINATION

ONE

For Official Use Only – Charge Number:

EEOC Form 5A (October 2017)

| | |
|---|---|
| **Personal Information** | First Name: Gregory MI: ____ Last Name: Langadinos<br>Address: 524 North Labrea Avenue Unit 16 Apt.: 16<br>City: Inglewood County: Los Angeles State: CA Zip Code: 90302<br>Phone: 949-844-0250 Home ☐ Work ☐ Cell ☑ Email: glangadinos@yahoo.com |
| **Who do you think discriminated against you?**<br>4 Respondents discriminated | Employer ☑ Union ☐ Employment Agency ☐ Other Organization ☐<br>Organization Name: JAMES E. NEYMAN AND ASSOCIATES, P.C.<br>Address: 76 CANAL STREET FL 3 Suite: 3rd Floor<br>City: BOSTON State: MA Zip Code: 02114 Phone: 617723-2627 |
| **Why you think you were discriminated against?** | Race ☐ Color ☐ Religion ☒ Sex ☒ National Origin ☒ Age ☒<br>Disability ☒ Genetic Information ☐ Retaliation ☒ Other ☒ (specify) Denial of Accomodarions under the ADA |
| **What happened to you that you think was discriminatory?** | **Date of most recent job action you think was discriminatory:** ~~[illegible]~~ 10/25/25<br>**Also describe briefly each job action you think was discriminatory and when it happened (estimate).**<br>See attached Addendum on what happened and the Four (4) separate Respondents<br>See Letter to Warren Chen dated Febr 18, 2026. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br>**I declare under penalty of perjury that the above is true and correct.**<br>Signature: Gregory Langadinos Date: 2/18/26 |

**April 1, 2025**

**Gregory Langadinos**
**630 The Village Unit 302**
**Redondo Beach, CA 90277**
**glangadinos@yahoo.com**
**(949) 844-0250**

**JAMES E. NEYMAN AND ASSOCIATES, P.C.**
**Rocky Grossack Personal Injury Attorney**
**76 Canal Street, 3rd Floor Boston, MA 02114**

Subject: (1). Demand for payment of 10 months of Time Sheets of billable Hours record and (2) Formal request for reasonable accommodations under Title III of Americans with Disabilities Act of 1990, and amendments of 1998: and (3) Formal demand under Federal Wagner Act (National Labor Relations Act of 1935) is 49 Stat. 449 (Public Law 74-198), currently codified at 29 U.S.C. §§ 151–169 (4). Massachusetts General Law Chapter 93A, section 2, and 9(3): (5). California Cancer Patients' Bill of Rights, demanding that you file federal lawsuit, and pay me my wages exceeding over $ 120,000, and Clarification on Purchasing an NCLC subscription.

Jim,

This document serves as a Formal Request for Reasonable Accommodations under Title III of the Americans with Disabilities Act of 1990, and amendments of 1998, as well as under Massachusetts General Law Chapter 93A, section 2, and 9(3): demanding that you waive your law firms unlawful rules in which you seek to force me to await until you settle lawsuits to split legal fees to pay me my wages you owe me.

You have thirty days (30), to respond to the demand under Massachusetts General Law Chapter 93A, section 2, and 9(3): and you are required to immediately engage in the ADA's interactive process with me to accommodate my ADA's requests related to your interference with my medical treatment and wellbeing by due to your deprivation of my wages, and failure to perform legal work, which you were hired to perform.

Attached below, I enclose my Billable Hours record, for ten months of year 2024, 1. June, 2. July, 3. August, 4. September, 5. October, 6. November, 7. December 2024, and 8. January, 9. February, and 10. March, 2025.

In reliance on your representation of USC Nurse Munoz, Juan Delasantos, and Shabott case (uncertain of spelling), and our business agreement, for which you hired me at the rate of $ 100 an hour, I told you and you agreed that I was purchasing and did purchase the specialized legal books and book prescription to work these cases. I also worked overtime in the month of July 2024, which you never compensated me for in violation of the NLRA, and constitutes Unfair Labor Practices (ULPs): The NLRA prohibits employers from interfering with, restraining, or coercing employees, dominating, or interfering with unions, or discriminating against employees.

The federal citation for the Wagner Act (National Labor Relations Act of 1935) is 49 Stat. 449 (Public Law 74-198). It is currently codified at 29 U.S.C. §§ 151–169. The Act was signed into law on July 5, 1935.

You keep telling me to split fees with you in lieu of paying me wages.

The costs of publications alone exceed over $ 2,000.

Offering me $ 1,500 for the Juan Delasantos case, which you said you will still mail as one final payment for this case, is unacceptable and frankly unlawful.

The $ 500 was a down payment, with the understanding that more payments at $100, would come every week.

As a an individual that is under treatment for Prostate Cancer and other medical ailments, I formally request pursuant to Title III of the Americans with Disabilities Act of 1990, and amendments of 1998, as well as the California Cancer Bill of Rights that you waive your illegal internal operating Rules in which you seek to pressure me to.be paid by splitting legal fees and pay me my wages which exceed $ 128,000.

I reject the offer to work at $100 while you promised to pay me with settlement proceeds from these cases after you settle them. You should know from employing Attorney Grossack who you claim represents attorneys who face law license suspension and disbarment, before the Massachusetts Board of Bar Overseers that splitting legal fees with non-licensed attorney is unethical.

Formal demand pursuant to California Cancer Patients' Bill of Rights. On August 19, 2021, the California State Assembly unanimously passed Senate Concurrent Resolution No. 11, the Cancer Patients' Bill of Rights. The resolution is a first-of-its-kind measure that lays out six key rights that every patient with cancer in California should have including a right to medical treatments for pain management and other services that support their overall health.

As a cancer patient, which are well aware of from reviewing medical and discussing with me my medical recoeds, when you deprive me of my wages, you cause the disruption of my right to medical treatments for pain management and other services that support their overall health, and violate the California Cancer Patients' Bill of Rights.

You are interfering with my healthcare and mental and physical well-being when you neglect to pay me wages over the last eight months.

When I asked if my work product is not used which I am asking you again, you sarcastically stated, " why is your work product protected by copyright ©. "

Yes, my work product is protected by copyright, and you promised not to neglect to pay me my wages, and a friend does not speak that way to someone he considers friends and family.

I have worked on numerous cases including the following; 1. Delasantos, 2. EEOC-Munoz, 3. NLRB-Munoz; 4. Your own case for unpaid taxes to Massachusetts Department of Revenue; (DOR).

I enclose the completed NLRA Administrative claim to file now against USC, now that your client Nurse Munoz was fired back on November 25, 2024.

Pursuant to 1. Title III of the Americans with Disabilities Act of 1990, and amendments of 1998, as well as under 2. Massachusetts General Law Chapter 93A, section 2, and 9(3), and 3. Wagner Act (National Labor Relations

In addition, pursuant to California Cancer Patients' Bill of Rights, I formally demand that you immediately arrange for us to participate in the ADA's interactive process to find a proper accommodation and a resolution to my employee rights and rights as a client and unpaid wages.

Sincerely,

Gregory Langadinos

# EXHIBIT "B"

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

CHARGE OF DISCRIMINATION
TWO

EEOC Form 5A (October 2017)

For Official Use Only – Charge Number:

| | |
|---|---|
| **Personal Information** | First Name: Gregory MI: ____ Last Name: Langadinos<br>Address: 524 North Labrea Avenue Unit 16 Apt.: 16<br>City: Inglewood County: Los Angeles State: CA Zip Code: 90302<br>Phone: 949-844-0250 Home ☐ Work ☐ Cell ☑ Email: glangadinos@yahoo.com |
| **Who do you think discriminated against you?** | Employer ☒ Union ☐ Employment Agency ☐ Other Organization ☐<br>Organization Name: LAW OFFICES OF RICHARD GROSSACK<br>Address: 76 Canal Street Floor and Associates, P.C. Suite: ____<br>City: Boston State: MA Zip Code: 02114 Phone: 617-723-2627 |
| **Why you think you were discriminated against?** | Race ☐ Color ☐ Religion ☒ Sex ☑ National Origin ☒ Age ☐<br>Disability ☒ Genetic Information ☐ Retaliation ☒ Other ☒ (specify) Denial of wages owed |
| **What happened to you that you think was discriminatory?** | **Date of most recent job action you think was discriminatory:** ~~2/18/26~~ 10/25/25<br>**Also describe briefly each job action you think was discriminatory and when it happened (estimate).**<br><br>See attached Addendum on what happened and the Four (4) separate Respondents<br>See letter to Warren Chen dated Feb 18, 2026 |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>**Signature:** Gregory Langadinos **Date:** 2/18/26 |

# EXHIBIT "1"

11:16 5GUC

Texts of

Attorney Richard Rocky Grossack Text Messages Crim...

Saturday, Oct 25 • 8:17 PM

Way Smarter , nicer ,courteous , respected , friendly , appreciative , open minded , helpful, caring .And I'm into nice people , and I never have my hand out .I have blinders on to race , religion , nationality , and sexual orientation .If you know anything about world history, you know throughout history Jews have been referred to as the Chosen People , and the common response is Why Can't God Choose Someone Else ! You might have heard about the Holocaust.There's no seriousness in that .I went out of my way to try to help you find successor counsel , you obviously have no appreciation .There is no involuntary servitude , I can't force someone to represent you for free .Being Of counsel to Jim gives you no privity with me .Of counsel is a broad term with no legal

RCS message

Have any questions? +617-542-7744 Fax 617-542-0526 rocky.grossack@yahoo.com

ROCKY GROSSACK

HOME ABOUT SERVICES TESTIMONIALS CONTACT

"The leading rule for the lawyer, as for the man of every other calling, is diligence. Leave nothing for tomorrow which can be done today."

-Abraham Lincoln



## About Attorney Rocky Grossack

Richard "Rocky" Grossack, Esq, has been a personal injury attorney in Boston for over 32 years.



The Law Offices of Richard Grossack is a family owned law practice servicing the Greater Boston community since 1985. We specialize in personal injury, workman's compensation and criminal defense law. We strive to ensure everyone who walks through the door gets fair, affordable and speedy representation they can count on.

At the Law Offices of Richard Grossack you're not just another claim number. Every person we work for is treated as if they're our only client and it will continue that way throughout the conclusion of your case! Please feel free to send us a message or give us a call at anytime. We're happy to answer any questions you may have or schedule a free consultation.

MORE

Need Legal Advice?

RECEIVE A FREE CONSULTATION

CONTACT US TODAY

617-542-7744

Rocky Grossack
Personal Injury Attorney
76 Canal Street, 4th Floor
Boston, MA 02114

EMAIL: rocky.grossack@yahoo.com

## Testimonials

"I initially went to Richard Grossack, or Rocky for short, through the suggestion of a family friend. My entire experience with him was above and beyond what I could have expected! Not only did he explain all of my options clearly and concisely, but he also communicated with me throughout the entire process and followed up with me afterwards. I highly recommend his services to anyone in need of legal counsel and am confident that Rocky will treat you with the same respect and professionalism that he did with me. Thanks again for everything, Rocky!"

SEE MORE

## Areas of Practice

- Plaintiff's Personal Injury
- Worker's Compensation
- Criminal Defense
- Employment Law
- General Liability
- Real Estate Law

11:16 34:02 5Guc 90

Attorney Richard Rocky Grossack Text Messages Crim...

Texts of Complainant Gregory Langadinos →

as a failed Of Counsel for the Neyman firm

Now, I here is my promise to you and Jim

I am coming after, (1) Jim, (2). You and (3) a Leo Leydon who texted me 3 times to fuck Off when I wasted my time helping Jim not lose his driver's license license and get Lien on his house in the Cape

So thanks for increasing the value of my malpractice claims

And you call yourself smarter than Me?

Saturday, Oct 25 • 8:17 PM

Way Smarter , nicer ,courteous , respected , friendly , appreciative , ope minded , helpful, caring .And I'm into

RCS message

# EXHIBIT "C"

11:16 34:38 5Guc 90

← A Attorney Richard Rocky Grossack Text Messages Crim...

needs people .I have severe Parkinson's and advanced diabetes and very poor vision , don't drive ,and coordinate care for my mother who's 100 percent disabled in a wheelchair with 24/7 helpcoached little league for 18 years , active member of the Newton and Hull communities , active in my Temple , * many groups ,have given tirelessly to many .I was president of my class in high school, very active alumnus of Clark , Miami , and New England , and have more friends than anyone I know. It would be much smarter of you to befriend me than argue with me .Use * common sense.I have Archie Comics and Mad Magazines and baseball cards from the 60s and a vintage Playboy collection . Im a huge baseball fan, Sox season tickets with some pals , have breakfast every morning with a group and do the best I can with what I have

RCS message

11:16 5GUC

Attorney Richard Rocky Grossack Text Messages Crim...

appreciation .There is no involuntary servitude , I can't force someone to represent you for free .Being Of counsel to Jim gives you no privity with me .Of counsel is a broad term with no legal definition .You can make any claim against me you want,I've done nothing to you but try to help you .You've incurred no damages from me of any kind whatsoever .You know nothing about me .Im married for 37 years , 3 children , lawyer for 41.Helped literally thousands of clients and 100s of lawyer's s .And many , many , citizens , including the homeless and special needs people .I have severe Parkinson's and advanced diabetes and very poor vision , don't drive ,and coordinate care for my mother who's 100 percent disabled in a wheelchair with 24/7 helpcoached little league for 18 years , active member of the Newton and Hull

RCS message

11:17 35:30 5GUC 90

Attorney Richard Rocky Grossack Text Messages Crim...

Rocky, the bottom line is you've admitted you have Parkinsons which means I can't expect you to know how to handle Jim's absence due to his own mental psychiatric medical ailments

**disease can affect the mind**, causing cognitive changes like memory loss, slower thinking, and problems with attention and executive function, as well as psychiatric symptoms such as depression, anxiety, and hallucinations. These issues can range from mild cognitive impairment to more severe conditions like dementia in later stages.



## Cognitive changes

- **Executive function:** Difficulties with planning, organizing, and multitasking are common.

RCS message

# EXHIBIT "D"

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.calcivilrights.ca.gov | contact.center@dfeh.ca.gov

EEOC Number: 550-2026-00983

Case Name: Gregory Langadinos v. Law Offices of Richard Grossack

Filing Date: February 18, 2026

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Civil Rights Department (CRD) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint. Please contact EEOC directly for any discussion of this complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court**. According to Government Code section 12965, subdivision (c), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (c), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, CRD does not retain case records beyond three years after a complaint is filed.

# EXHIBIT "E"

GREGORY LANGADINOS
16150 SAND CANYON AVE UNIT 327 949-844-0250
IRVINE, CA 92618-3715

126

January 19, 2026

Date

Pay to the Order of A F Kim and Associates $ 2,500

Two thousand and Five Hundred Dollars

ORANGE COUNTY'S CREDIT UNION

For $2,500 Payment to cover Agreement to file 2 Federal Complaints against Ruiz & others

Gregory Langadinos

⑆322281989⑆0012298704 5⑈ 0126

GREGORY LANGADINOS
16150 SAND CANYON AVE UNIT 327 949-844-0250
IRVINE, CA 92618-3715

128

January 19, 2025

Date

Pay to the Order of Clerk U.S. District Court $ 405.00

Four Hundred and Five Dollars Dollars

ORANGE COUNTY'S CREDIT UNION

For payment to Federal Court for Notice of Removal

Gregory Langadinos

⑆322281989⑆0012298704 5⑈ 0128

GREGORY LANGADINOS
16150 SAND CANYON AVE UNIT 327 949-844-0250
IRVINE, CA 92618-3715

129

January 19, 2023

Date

Pay to the Order of Clerk US District Court $ 405.00

Four Hundred and Five Dollars Dollars

ORANGE COUNTY'S CREDIT UNION

For payment Original Civil Action Complaint

Gregory Langadinos

⑆322281989⑆0012298704 5⑈ 0129

# EXHIBIT "F"






## James Neyman, Esq.

James Edward Neyman grew up in Lexington, Massachusetts, where he attended Belmont Hill and later Buckingham Browne & Nichols High School. Attorney Neyman then attended Bowdoin College in Brunswick, Maine, graduating Cum Laude and a member of the varsity hockey team. After graduating from college, Attorney Neyman worked in sales for several years, later becoming the District Manager for Russel Stover Candies. His passion for the law, higher learning, and helping people were all factors in choosing to pursue a legal career at Suffolk University Law School, where he graduated in 1989. Attorney Neyman began working for Amabile & Burkly, P.C. during his law school career, where he was later hired as an associate. While an associate, he received extensive training and experience over the course of nearly sixteen years. Attorney Neyman honed his skills as an avid negotiator through litigating hundreds of cases during his tenure, ultimately achieving the title of partner. With this experience, Attorney Neyman opened his own law firm, James E. Neyman & Associates, P.C., where he has maintained the same determined principles, along with the respect and care for his clientele. Mr. Neyman has run his practice successfully for nearly 10 years, where he continues to perform all aspects of civil litigation, including personal injury, contracts, real estate, and employment law. Attorney Neyman has personally and successfully handled and litigated hundreds of cases and has an aggressive and loyal support staff who share the same values as he does in their work in representing their clients. Outside of the office, Attorney Neyman enjoys spending time with his family and has coached youth soccer and hockey teams for many years in the Winchester Youth Travel programs. He was the recipient of the coach of the year award for his work in the programs. Attorney Neyman also appeared in Life Magazine in the late 60's for his co-production of a short film titled "Bad Guys".

Bar Certifications: Massachusetts State Bar, 1989

## Richard "Rocky" Grossack, Esq. of Counsel

Attorney Grossack is of counsel with James E. Neyman and Associates, P.C. and aggressively represents a wide range of clients, on issues such as wrongful death claims, motor vehicle accidents, and slip and falls. No matter the size of your personal injury claim, he will work diligently on your behalf to help you resolve your issue and ensure you obtain the compensation you are legally entitled to.

## Ema Barbosa

Ema Barbosa is a devoted long time employee of James E. Neyman & Associates, P.C. having worked for Attorney Neyman for roughly 25 years. During that time she has accumulated a wealth of experience primarily in the area of civil litigation and personal injury matters involving a wide range of knowledge involving motor vehicle accidents, PIP, slip and fall accidents, Medicare and numerous other ancillary matters. Ms. Barbosa is

## Daniel Rechel

Daniel Rechel, has twelve years of experience in the legal field, and has been with James E. Neyman & Associates, P.C. since its inception as its office manager. Daniel is an ambitious visionary, focused on finding innovative and effective methods of business, with a track record of motivating high-achieving teams who are dedicated to client satisfaction. Daniel brings a unique style of management to the firm typified with an ever pleasant affect yet dedicated to his role at the firm. Outside of the legal arena, Daniel is a passionate youth and homeless advocate fully engaged in the City of Boston. Daniel received a Bachelor's Degree in Criminology & Law from Suffolk University and holds a dual specialization Graduate Certificate in Conflict Resolution: Mediation and Organizational Conflict from the McCormack Graduate School of Policy and Global Studies at University of Massachusetts Boston. He has also developed his own clothing line with a focus on humans caring for one another: The Definition of Nyce. Daniels' passion instills others and he remains an integral component of the Firm.

Have any questions for us?

SEND A REQUEST

### Contact Us

James E. Neyman and Associates, P.C.
76 Canal Street, 3rd Floor
Boston, MA 02114
Phone: (617) 723-2627
Fax: (617) 723-2608

© 2023 Neyman and Associates. All rights reserved.

# EXHIBIT "G"

Buy Sell Rent Agents Explore News Homes.com Sign In Advertise



NOT LISTED FOR SALE

**146 Springer Ln**
West Yarmouth, MA 02673
West Yarmouth Neighborhood
Estimated Value: **$1,032,373 - $1,122,000**

**4** Beds **3** Baths **2,031** Sq Ft **$533/Sq Ft** Est. Valu

**$1,032,373 - $1,122,000**
146 Springer Ln
West Yarmouth, MA 02673

See Similar Homes for Sale

## About This Home

This home is located at 146 Springer Ln, West Yarmouth, MA 02673 and is currently estimated at $1,082,343, approximately $532 per square foot. 146 Springer Ln is a home located in Barnstable County with nearby schools including Dennis-Yarmouth Regional High School, Sturgis Charter Public School, and Kiddie Kollege Early Learning Center.

## Ownership History

| Date | Name | Owned For | Owner Type |
|---|---|---|---|
| Nov 2005 - Present | Neyman James E and Neyman Lisa | 20 Years and 3 Months | Private Individual |

Source: Public Records

## Estimated Property Value

Range of Values: **$1,032,373 - $1,122,000**

| $309,343 | 40% | $186,224 | 1 Year | 5 Year | 10 Year |
|---|---|---|---|---|---|
| Value Increase | Percent Increase | Adjusted for Inflation | | | |

| | |
|---|---|
| Collateral Analytics | $1,121,000 |
| ICE | $1,122,000 |
| First American | $1,054,000 |
| Quantarium | $1,032,373 |
| **Average Value** | **$1,082,343** |

### Create a Home Valuation Report for This Property

The Home Valuation Report is an in-depth analysis detailing your home's value as well as a comparison with similar homes in the area

Create the Home Valuation Report for This Property

### Home Values in the Area

Values | Values Per Sq Ft



Source: Public Records

### Average Home Value in this Area



# EXHIBIT "H"

PMA COMPANIES

307 N. Michigan Avenue, Suite 2300 | T: 312.493.6294

October 29, 2025

Mr. Gregory Langadinos

Sent via email: glangadinos@yahoo.com

Re: Claim(s) by Gregory Langadinos Claim against James E. Neyman & Associates, PC
PMA file # L004990115

Dear Mr. Langadinos:

I am writing on behalf of the claims department of Pennsylvania Manufacturers' Association Insurance Company ("PMA"),[1] the professional liability carrier for James E. Neyman & Associates, PC. This is in response to your email of October 29, 2025 requesting a letter confirming we have opened a claim file for the claim or claims you are asserting against our James E. Neyman & Associates, PC. We confirm we have opened such a file, which is being handled by Claims Specialist Nona Bonanno under file number L004990115.

Best regards,

*Frank English*

Frank English
Vice President, Lawyers Claims

cc: Nona Bonanno, via email at Nona_Bonanno@pmagroup.com
James Neyman, Esq., via email at james@neymanandassociates.com

[1] Pennsylvania Manufacturers' Association Insurance Company is managed by Old Republic Lawyers Specialty Insurance, Inc.

# EXHIBIT "I"

PMA COMPANIES

IF YOU HAVE ANY QUESTIONS PLEASE CALL:
PMA CALL CENTER
(888) 476-2669

CHECK NO..: 7202383B
CHECK DATE: 11/07/25
CHECK AMT.: $2,905.00
PAY PERIOD:
PD TO DATE:
RATE......:
VOUCHER NO: C110108503
BILL NO...:

ACCIDENT DT: 09/15/25
PAYMNT TYPE:
INSURED....: JAMES E NEYMAN & ASSOCIA
CLAIM NO...: L004990115
POLICY NO..: 6925001645381
INVOICE NO.:
INVOICE DT.:
INVOICE AMT:
IRS NUMBER.:
PATIENT ID.:
INJURED....: GREGORY LANGADINOS

GREGORY LANGADINOS
P.O. BOX 833
REDONDO BEACH CA 90277

Page 1 of 1

| FROM - THRU | BILLING CODE | DESCRIPTION | QTY | BILLED AMT | PAYMENT AMT | REASON |
|---|---|---|---|---|---|---|

EXPLANATION OF BENEFITS

Payment Type : UNSPECIFIED COST CATEGORY

UNSPECIFIED LOSS COST ..................................................2905.00

NET AMOUNT 2905.00

Memo: CLAIM L004990115

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material therto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

WARNING: THIS CHECK IS PRINTED ON CHEMICAL REACTIVE PAPER WHICH CONTAINS AN ARTIFICIAL WATERMARK ON REVERSE SIDE - HOLD AT ANGLE TO VIEW

NOT VALID 6 MONTHS AFTER DATE OF ISSUE

62-22
311

PMA MANAGEMENT CORP.
ON BEHALF OF
JAMES E NEYMAN & ASSOCIA

| CHECK NUMBER | DATE | AMOUNT |
|---|---|---|
| 7202383B | 11/07/25 | ********2,905.00 |

WELLS FARGO BANK N.A.

PAY Two Thousand Nine Hundred And Five And 00/100 US Dollars

TO THE ORDER OF
GREGORY LANGADINOS
P.O. BOX 833
REDONDO BEACH CA 90277

AUTHORIZED SIGNATURES

WARNING: THIS CHECK CONTAINS A MICROPRINTED BORDER - VOID IF UNREADABLE UNDER MAGNIFICATION

⑈07202383⑈ ⑆031100225⑆ 2079950030214⑈

# EXHIBIT "J"

OLD REPUBLIC INTERNATIONAL CORPORATION

## CODE OF BUSINESS CONDUCT AND ETHICS

### Introduction

This Code of Business Conduct and Ethics ("Code") applies to the associates, officers, and directors of Old Republic International Corporation and each of its subsidiaries (jointly, the "Corporation"). This Code addresses a wide range of business practice issues and does not attempt to address every issue that might arise, and only states certain basic principles. The Corporation's Board of Directors, in its oversight capacity, has high standards and clear expectations for ethical behavior to ensure trust, reputation and alignment with our culture.

The Corporation expects all associates, officers, and directors, as well as vendors, representatives, and other business partners with whom the Corporation does business, to conduct themselves according to the basic principles in this Code. To ensure full understanding of this Code, the Corporation requires all new and existing associates to participate in ethics training focused around these principles and overall legal expectations. Violations of the standards in this Code will be subject to appropriate disciplinary action, up to and including termination.

### Complying with Laws

All associates, officers and directors should respect and comply with all applicable laws, rules and regulations of the U.S. and the states, counties, cities, provinces and other jurisdictions and countries in which the Corporation conducts business. The Corporation does not expect everyone to know all the details of these laws, rules, and regulations, but it is important to know enough to determine when to seek advice from supervisors, managers, or other appropriate personnel.

Certain laws or legal principles are particularly important. The Corporation is committed to complying with anti-corruption laws that prohibit bribes, kickbacks, or other corrupt actions to obtain or retain business or obtain improper advantage. Importantly, prohibitions against "insider trading" apply to the Corporation and its associates, officers, and directors. Generally, associates, officers and directors who have access to or knowledge of material confidential or non-public information from or about the Corporation (or any other company) are not permitted to buy, sell or otherwise trade in the Corporation's (or any other company's) securities, whether or not they are using or relying upon that information. This restriction extends to sharing or tipping others about such information, especially since the individuals receiving such information might utilize such information to trade in the Corporation's securities. In addition, the Corporation has implemented trading restrictions to reduce the risk, or appearance, of insider trading.

Particularly important too are the federal, state and local laws concerning labor and employment and the Corporation's commitment to assuring equal employment opportunities for all in connection with the recruitment, hiring, training, compensation, development, promotion, demotion and termination of its associates, including officers, and providing a safe workplace that is free of sexual or any other inappropriate form of harassment.

**Treatment of Others**

This Code protects human rights at all levels of our Corporation and the vendor, representatives, and other business partners with whom it does business. The Corporation will not knowingly conduct business with any vendor, representative or other business partner that participates in the exploitation of children, human trafficking, forced labor or physical punishment.

The Corporation prohibits discrimination, harassment and retaliation with regard to race, color, creed, religion, national origin, ancestry, citizenship status, age, sex or gender, gender identification or gender expression (including transgender status) sexual orientation, marital status, military service and veteran status, physical or mental disability or other protected classifications.

**Conflicts of Interest**

The Corporation expects its associates to adhere to the highest standards of ethics and professionalism and to conduct themselves in a manner that will merit and inspire public trust and confidence. Associates must avoid situations that might lead to a conflict of interest or even the appearance of a conflict between the associate's self-interest and his or her duties to the Corporation and its customers.

All associates, officers and directors should be scrupulous in avoiding a conflict of interest with regard to the Corporation's interests. A "conflict of interest" exists whenever an individual's private interests interfere or conflict in any way (or even appear to interfere or conflict) with the interests of the Corporation. A conflict situation can arise when an associate, officer or director takes actions or has interests that may make it difficult to perform his or her Corporation work objectively and effectively. Conflicts of interest may also arise when an associate, officer or director, or members of his or her family, receives improper personal benefits as a result of his or her position in the Corporation, whether received from the Corporation or a third party. This includes bribes in any fashion. Anything of value can be considered a bribe if it is intended or could be perceived to influence a business or governmental decision or action. Loans to, or guarantees of obligations of, associates, officers and directors and their respective family members may create conflicts of interest. Federal law prohibits loans by the Corporation to directors and executive officers.

Conflicts of interest are prohibited as a matter of Corporation policy, except under guidelines approved by the Board of Directors or committees of the Board. Any associate, officer or director who becomes aware of a conflict or potential conflict should bring it to the attention of a supervisor, manager, or the Corporation's General Counsel.

**Corporate Opportunity**

Associates, officers, and directors are prohibited from (a) taking for themselves personally opportunities that properly belong to the Corporation or are discovered through the use of corporate property, information, or position; (b) using corporate property, information or position for personal gain; and (c) competing with the Corporation. Associates, officers, and directors owe a duty to the Corporation to advance its legitimate business interests

when the opportunity to do so arises.

### Confidentiality

Associates, officers, and directors of the Corporation must maintain the confidentiality of confidential information entrusted to them by the Corporation or those with whom the Corporation does business, except when disclosure is authorized by the Law Department as it deems required by laws, regulations, or legal proceedings. Whenever feasible, associates, officers and directors should consult the Law Department if they believe they have a legal obligation to disclose confidential information. Confidential information includes, but is not limited to, all non- public information that might be considered material by the securities markets or investors, or that might be of use to competitors of the Corporation, or harmful to the Corporation or its customers if disclosed.

### Fair Dealing

Each associate, officer and director should endeavor to deal fairly with the Corporation's customers, competitors, officers, and associates. None should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair dealing practice.

### Protection and Proper Use of Corporation Assets

All associates, officers and directors should protect the Corporation's assets and ensure their efficient use. Theft, carelessness, and waste have a direct impact on the Corporation's profitability and its insurance subsidiaries' obligations to their insureds and beneficiaries. All Corporation assets should be used for legitimate business purposes.

### Accounting Complaints

The Corporation's policy is to comply with all applicable financial reporting and accounting regulations. Concerns or complaints regarding questionable accounting standards, accounting controls, auditing matters or any other activities believed to be unlawful, contrary to Corporate Policy or otherwise improper should promptly be reported to the Audit Committee of the Corporation's Board of Directors.

The hotline is available 24 hours a day, 7 days a week, including holidays, through the completion of an online report. You may submit a report with your name or anonymously, with or without a request for confidentiality. All submissions are reported promptly to the Corporation's Audit Committee for its further review and handling as appropriate by submitting an online form at:

https://irdirect.net/ORI/whistleblower_iframe

The form is also available through the Old Republic website at www.oldrepublic.com. Click on the ***Governance*** tab and then click on the ***Corporate Responsibility Hotline*** link.

### Reporting Any Illegal or Unethical Behavior

Associates are encouraged to talk to supervisors, managers, or other appropriate

supervisory personnel about observed illegal or unethical behavior and, when in doubt, about the best course of action in a particular situation. Associates, officers, and directors who are concerned that violations of this Code or that other illegal or unethical conduct by associates, officers or directors of the Corporation have occurred or may occur should contact their supervisors. If they do not believe it appropriate or are not comfortable approaching their supervisors about their concerns or complaints, or if they are not satisfied with the resolution of the issue, they may contact either the Audit Committee of the Board of Directors of the Corporation or the Law Department of the Corporation. If their concerns or complaints require confidentiality, including keeping their identity anonymous, they may submit a report to the above referenced hotline, and their confidentiality will be protected, subject to applicable law, regulation, or legal proceedings.

**No Retaliation**

The Corporation will not permit retaliation of any kind by or on behalf of the Corporation and its associates, officers and directors against good faith reports or complaints of violations of this Code or other illegal or unethical conduct.

**Financial Reporting**

It is of critical importance that the filings made by Old Republic International Corporation with the Securities and Exchange Commission ("SEC") be fairly stated, accurate in all material respects and timely. Old Republic International Corporation depends upon its subsidiaries for much of the reported information, and each subsidiary's responsible officers and associates must take with the utmost seriousness their responsibility to provide prompt and accurate answers to inquiries related to the Corporation's needs in meeting its public disclosure requirements.

**Auditing**

The Corporation's Internal Audit Department and/or Law Department will conduct periodic audits and compliance reviews to help ensure continued compliance with the Foreign Corrupt Practices Act, other anti-corruption laws and the policies included in this Code.

**Amendment, Modification and Waiver**

This Code may be amended, modified, or waived only by Old Republic International Corporation's Board of Directors. Any waiver for a director or an executive officer shall be disclosed as required by SEC and New York Stock Exchange rules.

# EXHIBIT "K"

**From:** Leo Leydon <leo@stocksandtaxes.com>
**Sent:** Wednesday, May 14, 2025 12:27 PM
**To:** Cummings, Claudina (DOR) <cummingscl@dor.state.ma.us>
**Subject:** Re: Confidential - Follow Up **EXTERNAL EMAIL**

I'm sorry, **I pulled back on the hardship as it sounded like he wouldn't qualify as it is a long-term depression, diabetes,** and he has equity in a house. Filing the 2024 tax return, we are going ASAP. He got the data yesterday, I haven't

ZjQcmQRYFpfptBannerStart

**This Message Is From an External Sender**

This message came from outside your organization.

**ZjQcmQRYFpfptBannerEnd**

**I'm sorry, I pulled back on the hardship as it sounded like he wouldn't qualify as it is a long-term depression, diabetes, and he has equity in a house.**

Filing the 2024 tax return, we are going ASAP.

He got the data yesterday,

I haven't heard what his bookkeepers schedule is and can follow up.

Thanks,

Leo

Leo@StocksAndTaxes.com

Leo Leydon, CPA RIA
Financial Focus Advisory Services LLC
59 Samoset St
Plymouth MA 02360
781-829-8626

Satellite Office
303 Wyman St
Suite 300
Waltham MA

---------- Forwarded message ---------
From: **Cummings, Claudina (DOR)** <cummingscl@dor.state.ma.us>
Date: Wed, May 14, 2025 at 12:42 PM
Subject: Confidential - Follow Up
To: Leo Leydon <leo@stocksandtaxes.com>

Hi Mr. Leydon,

As per our email correspondence on May 7th, you inquired as to whether the equity in his property preclude him from hardship and I advised that barring a clear reason substantiating why he is unable to resolve his liability at this time, Mr. Neyman needs to file and pay his 2024 return and make an estimated tax payment towards tax year 2025, to grant him a payment agreement.

This has not been submitted to date.

If he is not moving forward with hardship, he needs to make a significant payment, of at minimum, 80% towards his 2024 return, as well as a payment towards tax year 2025.

I will grant him (7) days to complete these items, and thereafter I will grant him (30) days to complete the filing of his 2024 return as well as submit payment agreement requirement paperwork.

Please be sure to email confirmation of both payments by 5 pm on Wednesday, May 21st, to avoid his driver's license being marked on May 22nd.

Here are the instructions to make the payments via Mass Tax Connect:

**Make 80% payment ($10,366.20) towards tax year 2024:**

**Making a Payment Online:**

1. Log into Mass Tax Connect account via our website: https://mtc.dor.state.ma.us/mtc/_/.
2. Click on tab titled "**SUMMARY**".
3. In the box titled "**Account**" click "**Make a Payment**".
4. Choose "**EFT debit payment**" (utilizing routing and account #) or "**Credit card payment**".
5. Enter your payment information and thereafter for "**Payment Type**" choose "**Return Payment**" and choose tax year 2024.
6. Enter amount you would like to pay and thereafter hit submit.

**Make first of four quarterly estimated tax payments ($2591.55) towards tax year 2025:**

**Making a Payment Online:**

1. Log into Mass Tax Connect account via our website: https://mtc.dor.state.ma.us/mtc/_/.
2. Click on tab titled "**SUMMARY**".
3. In the box titled "**Account**" click "**Make a Payment**".

4. Choose "**EFT debit payment**" (utilizing routing and account #) or "**Credit card payment**".

5. Enter your payment information and thereafter for "**Payment Type**" choose "**Estimated Payment**" and choose tax year 2025.

6. Enter amount you would like to pay and thereafter hit submit.

Thank you,

Examiner Cummings

7. Capital stock of each class and series:

| Class of Stock | Par value per share (Enter 0 if no Par) | Total authorized number of shares | Total authorized par value | Total issued and outstanding number of shares |
|---|---|---|---|---|
| CNP | 0 | 275,000 | 0 | 0 |

8. Check here if the stock of the corporation is publicly traded:

☐

9. Report is filed for fiscal year ending: 12/31/2022

10. The names and residential addresses of all shareholders, whether individuals, partners, or Business Entities are:

| Name | Address |
|---|---|
| JAMES E. NEYMAN | 57 LAWSON ROAD WINCHESTER, MA 01890 USA |

Signed by LEO LEYDON , its OTHER OFFICER

the undersigned, hereby certify, pursuant to Massachusetts General Laws, Chapter 156A, Section 18, that the above-listed shareholders, and all the partners of a general partnership which is a shareholder of the business entity, are duly licensed to render one or more professional services for which the business entity was organized, or are professional business entities authorized to render such professional services, and that a copy of this report is being sent to the appropriate regulatory board. I hereto sign my name on this 14 Day of June, 2024.

## LEO F. LEYDON

CRD# 4121614

This broker is not currently registered.

FINRA

## Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

### Broker Qualifications

**This broker is not currently registered.**

**This broker has passed:**

- 2 Principal/Supervisory Exams
- 2 General Industry/Product Exams
- 2 State Securities Law Exams

### Registration History

**This broker was previously registered with the following securities firm(s):**

**HORWITZ & ASSOCIATES, INC.**
CRD# 5611
HIGHLAND PARK, IL
11/2003 - 05/2004

**ASSIST INVESTMENT MANAGEMENT COMPANY, INC.**
CRD# 34902
LEAWOOD, KS
02/2001 - 09/2002

**SUMMIT TRADING, INC.**
CRD# 43160
HOUSTON, TX
07/2000 - 02/2001

### Disclosure Events

This broker has been involved in one or more disclosure events involving certain final criminal matters, regulatory actions, civil judicial proceedings, or arbitrations or civil litigations.

Are there events disclosed about this broker? **Yes**

**The following types of disclosures have been reported:**

| Type | Count |
| --- | --- |
| Regulatory Event | 1 |

### Investment Adviser Representative Information

The information below represents the individual's record as a broker. For details on this individual's record as an investment adviser representative, visit the SEC's Investment Adviser Public Disclosure website at

https://www.adviserinfo.sec.gov

©2024 FINRA. All rights reserved. Report about LEO F. LEYDON.

# EXHIBIT "L"

**Christian Ergueta**
**2255 West Ball Rd, # 2790**
**Anaheim, CA 92804**
**(714) 713-4872**
**christianergueta@yahoo.com**

## AFFIDAVIT OF CHRISTIAN ERGUETA

**I, Christian Ergueta, hereby depose and state the following under oath pursuant to the laws of Massachusetts and Federal law;**

1. I am an adult over the age of 18 and have a sound mind.
2. I am the owner and sole proprietor of California Notary Services, with offices nationwide for over 15 years.
3. On August 29, 2025, Mr, Langadinos was in my presence and filling out paper work as part of a work project.
4. Mr. Langadinos was speaking to his Attorney James Neyman, on speaker phone, about Mr. Neyman's plan to withdraw off the Boston Housing Court case because of his medical conditions.
5. I recall that Mr. Langadinos, reminded Mr. Neyman that he suffers from numerous medical ailments, including treatment for Prostate Cancer, and that Langadinos requested, reasonable accommodations under the Americans with Disabilities Act, by requesting that Mr. Neyman remain on the Boston Housing Court case, until Langadinos locates and hires new counsel.

6. I recall that Mr. Neyman and Mr. Langadinos agreed that Attorney Neyman will remain on the eviction case, until Mr. Langadinos files the appropriate claims and causes of action to preserve Langadinos' rights, including State and Federal claims.
7. Mr. Neyman was discussing his own eviction case he was facing with a pending case in the Northeast Housing Court, and other financial problems and issues with taxes owed to the Massachusetts Department of Revenue and Internal Revenue Service, which are the reasons he seeks to withdraw from representing Langadinos.
8. I recall Mr. Langadinos requesting that another attorney in the Office appear, if he cannot appear because of all of these issues.
9. Mr. Neyman agreed to remain as counsel for Mr. Langadinos, to allow him to file appropriate documents.
10. I have personal knowledge about the facts within this Affidavit from hearing them.

Sworn under the pains as penalties of perjury, on this 16th day of January, 2026.

____________________________

Christian Ergueta

# EXHIBIT "M"

12:53 5Guc 83

Me
3:00 PM, Jun 8

Mr Leydon, I am Whistleblower at this point? You need to call me today based on Attorney Neyman's predicament (your client that relied on you to be a Licensed Broker) and a competent Accountant, when you are not active according FINRA order else a letter to to DOR and your emails will be necessitated on how you have mishandled this matter according




Jim,

The response from your unlicensed Financial Planner's Leo Leydon's own personal cell phone (617) 968-8495, that I wrote to in good faith to assist you as a fact witness that is willing to testify to the DOR in support of your need for your drivers license, and $97,000 in student loans,.and severe hardships as a Whistleblower under the ADA and Exemptions is the following written message to me and you as the Taxpayer:

"FUCK YOU"

"IM NOT A BROKER"

"FUCK OFF."

SWORN UNDER PAINS AND PENALTIES OF PERJURY

________________________//

# EXHIBIT "N"

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

MASSACHUSETTS: BOSTON, FALL RIVER, SPRINGFIELD, WORCESTER
CONNECTICUT: BRIDGEPORT, HARTFORD
ENGLAND: LONDON
NEW HAMPSHIRE: MANCHESTER
NEW JERSEY: PARSIPPANY
NEW YORK: NEW YORK
RHODE ISLAND: PROVIDENCE

Scott Douglas Burke
Phone: 617-439-7578
Fax: 617-342-4937
sburke@morrisonmahoney.com

October 31, 2025

Via Email (glangadinos@yahoo.com) and First Class

Mr. Gregory Langadinos
P.O. Box 883
Redondo Beach, CA 90277

Re: Langadinos v. James E. Neyman and James E. Neyman and Associates, P.C.

Dear Mr. Langadinos:

On behalf of Attorney James Neyman and James E. Neyman and Associates, P.C. (collectively "Attorney Neyman"), we write regarding the claim made by you against Attorney Neyman. Specifically, on or about September 5, 2025, you alleged that Attorney Neyman committed malpractice by not filing a civil action within the applicable statutes of limitations against parties responsible for the alleged theft of comics which you claim are worth approximately $900,000 (hereinafter "comics matter").

The purpose of this letter is not to detail the myriad of defenses that Attorney Neyman has to such a claim. Instead, the purpose of this letter is to inform you that we have advised Attorney Neyman that he can no longer represent you in <u>any</u> current, ongoing or prospective matters and to notify you of that fact. Further, we inform you that the statute of limitations has not yet run regarding the comics matter, and that you should act accordingly and swiftly.

Massachusetts Rules of Professional Conduct Rule 1.7(a) states:

> Except as provided in paragraph (b)[1], a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or

---

[1] The exceptions are not applicable here.

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or **by a personal interest of the lawyer** [emphasis added].

As a result of the malpractice claim you have levied against Attorney Neyman, it is my position that you are now adverse to the personal interests of Attorney Neyman and, therefore, have created a concurrent and nonwaivable conflict of interest. Therefore, pursuant to Massachusetts Rules of Professional Conduct Rule 1.7(a)(2), Attorney Neyman can no longer represent you in any legal matters. Consistent with his ethical obligations, Attorney Neyman will be filing a motion to withdraw from the housing court matter currently pending at the Eastern Division of the Massachusetts Housing Court, *61 Park, LLC v. Gregory Langadinos*, docket no. 22H84SP004606. Further, to the extent you believe that Attorney Neyman is representing you in any other matter, including the comics matter, you are hereby on notice that such representation is terminated immediately. Attorney Neyman informs us that he does not believe that he possess any documents that you do not also possess. If there are any files or documents that you believe are required by you, please notify us.

As to your claim against Attorney Neyman that he allowed the applicable statutes of limitations to lapse on the comics matter, importantly, under the Massachusetts discovery rule[2] applicable to the commencement of the running of a statute of limitations, the statutes of limitations in the comics matter have likely not lapsed and did not start to run until December 23, 2022.[3] We understand from the police report that you reported to police that it was on December 23, 2022, that you discovered that the comics were allegedly stolen after having been absent from Massachusetts for some eleven months. Under the discovery rule, that is the date when the statutes of limitations commenced. Further, there are several statutes of limitations that could apply to your claim ranging from three years for tort claims (**such a complaint would be timely until December 23, 2025**), four years for claims under c. 93A and six years for claims for breach of contract/lease.

---

[2] Under the discovery rule, a plaintiff's cause of action accrues, and the limitations period begins to run, "when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm." Lanier v. President & Fellows of Harvard Coll., 490 Mass. 37, 55 (2022).

[3] **We do not provide this information as legal advice; we are not your attorney.** We inform you of this information so that you do not lose any rights based on your faulty belief that your claims are time-barred.

Should you decide to pursue claims in the comics matter, or any other matter, and need assistance finding an attorney to represent you, we suggest that you call the Massachusetts Bar Lawyer Referral Service at (617) 654-0400 or (866) 627-7577.[4] Even if you cannot find an attorney to represent you in the comics matter, or regarding other matters, we suggest that you file a complaint pro se. You are educated as a lawyer, experienced in the practice of law, have worked in law firms, and have handled a number of litigation matters pro se, both at the trial court level and on appeal, and are currently representing yourself in at least one tort action in California. You have also drafted several demand letters pursuant to c. 93A. Should you allow the statute of limitations to lapse, any damages related to the comics matter or any other matter cannot be attributable to any act or omission of Attorney Neyman.[5]

Lastly, we are aware that you paid Attorney Neyman a retainer of $2,500 for legal services in January 2024. While it is our position that Attorney Neyman has performed legal services far in excess of this amount in the Housing Court and related Federal Court matter, Eastern Division of the Housing Court docket no. 22H84SP004606, *61 Park, LLC v. Gregory Langadinos* and United States District Court for the District of Massachusetts docket no. 1:2024cv10199, *61 Park LLC v. Langadinos*, and as Attorney Neyman has offered in the past, a check to refund these monies will be mailed to you at the following address:

P.O. Box 883
Redondo Beach, CA 90277

This refund is given without prejudice to you or Attorney Neyman, and without either party waiving any rights. We simply refund this money so that you have it available, if necessary, for purposes of retaining a lawyer to pursue the comics matter or any other matter for which you believe Attorney Neyman represented you. If you believe the return of other funds is due, please let us know.

---

4 We remind you of your obligation to comply with Judge Fahey's Order of September 5, 2014, in Langadinos v. Southern New England School of Law, Suffolk Superior Court Civil Action No. 2008-2064 and Judge O'Toole's Order of September 30, 2013, in Langadinos v. Board of Trustees of the University of Massachusetts, Civil Action No. 12-11159-GAO, copies of which are attached, to the extent that such orders are still in effect.

5 The enclosed decision of Magistrate Judge Boal refers to you as "somewhat different from the typical pro se litigant because [you] graduated from law school . . ." Judge Boals also wrote in her decision that the federal court for the Eastern District of New York found you "to be 'a vexatious litigant.'"

Attorney Neyman has been directed to have no communication with you. Please direct any future communications regarding Attorney Neyman to me. Thank you for your attention to this matter.

Very truly yours,

Scott Douglas Burke

SDB/MH
Enclosures

# EXHIBIT "O"

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT DEPARTMENT
OF THE TRIAL COURT

SUFFOLK, ss. CIVIL ACTION NO.: 22H84SP004606

61 PARK LLC; (Brookline Housing Authority)
Plaintiff,

v.

GREGORY LANGADINOS,
Defendant.

**AFFIDAVIT OF ATTORNEY SCOTT DOUGLAS BURKE**

I, Scott Douglas Burke, first being duly sworn, do depose and say as follows:

1. I am an attorney licensed by and in good standing with the Commonwealth of Massachusetts. I am counsel for non-party, Attorney James E. Neyman ("Neyman") with regard to claims that have been made against him by the defendant, Gregory Langadinos "Langadinos").

2. I make this affidavit in support of the Opposition of Non-Parties Neyman and Burke to Langadinos' Motion for Sanctions filed against me and Neyman.

3. On or about October 20, 2025, I was retained to represent Neyman regarding claims of legal malpractice lodged against him by Langadinos.

4. Upon information and belief, Neyman was retained by Langadinos in January of 2024 to remove the instant action to the United States District Court for the District of Massachusetts.

5. Langadinos issued Neyman three checks, one payable to Neyman for $2,500 to cover legal fees and two checks, $405 each, payable to the United States District Court for the District of Massachusetts to cover filing fees, one for the removal of the instant action and one for a potential future action.

6. One of the two checks payable to the federal court was paid to the District Court for the removal of this action on January 26, 2024. (Docket, **Exhibit 1**.)

7. On or about November 7, 2025, Neyman's insurer issued a check payable to Langadinos in the amount of $2,905, to cover the refund of legal fees Langadinos paid Neyman, despite the extensive legal work Neyman performed, and appearances he made in this matter on

behalf of Langadinos, and the second unused check that Langadinos wrote to the federal court for filing fees.

8. On October 31, 2025, I delivered a letter to Langadinos advising him that due to the claims he raised against Neyman for legal malpractice, Neyman was ethically prohibited from representing him in legal matters and would seek to withdraw from the instant action due to the conflict of interest and Neyman's obligation to withdraw under Massachusetts Rules of Professional Conduct, Rules 1.7 and 1.16. A true and accurate copy of the letter is attached hereto as **Exhibit 2.**

9. On November 6, 2025, Langadinos sent an email requesting his client file in this matter. In response, I sent an email explaining that Neyman was hospitalized and that I would work to gather the file. A true and accurate copy of this email exchange is attached as **Exhibit 3.** Upon information and belief, Langadinos possessed most, if not all, of his file.

10. On November 18, 2025, I provided a secured and encrypted link that contained Langadinos' client file. Langadinos quickly accessed the file. See **Exhibit 4**, email notification of Langadinos accessing the 987-page file. As of November 18, Neyman was still hospitalized and I advised Langadinos that I would continue to work with Neyman to gather any additional file contents upon his release from the hospital.

11. I did not, at any point during my interactions with Langadinos, give him legal advice, act as his counsel, encourage him to make fraudulent claims, or communicate with him on matter in which he is represented by counsel. In fact, in my very first communication to him (the letter of October 31, 2025), I specifically wrote in bolded text, "We do not provide this information as legal advice; we are not your attorney."

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 17th DAY OF DECEMBER, 2025.

*/s/ Scott Douglas Burke*
Scott Douglas Burke



104777831

# EXHIBIT "P"

Driscoll & Driscoll, P.C.
ATTORNEYS AT LAW

Jonathan L. Driscoll, Esq.*
Jeffrey L. Driscoll, Esq.**
J. Elliott Koch, Esq.
Patrick Gillespie, Esq.
Cassidy Wiltshire, Esq.
Christopher McKenna, Esq.

Post Office Box 301457
Boston, Mass. 02130
T: 508-674-0020
E: Info@Drilaw.com

*Licensed in MA & RI*
***Of Counsel*

January 16, 2025

Gregory Langadinos
61 Park Street, #8J
Brookline, Massachusetts 02446

Re: Reasonable Accommodation Response

Dear Mr. Langadinos:

As you're aware, this firm represents your landlord, 61 Park, LLC and their Managing Agent, the Brookline Housing Authority.

This correspondence serves as a formal response to your request for a reasonable accommodation which you emailed to my attention (Jonathan@Drilaw.com) on January 15, 2025, at 12:21AM EST.

As you intimate in your email, the BHA intends to take possession of 61 Park Street, #8J, Brookline, Massachusetts 02446 at 9:30AM on Friday, January 16, 2026. Although your email largely made unfounded and misguided legal arguments, you also requested that the BHA, "…halt the Execution this Friday as a reasonable accommodation." This request is interpreted as a request for the BHA to stop the scheduled move out set for Friday, January 16, 2026.

Your request to stop the BHA from taking possession of 61 Park Street, #8J Brookline, Massachusetts 02446 is denied.

Your request is denied on numerous grounds. First, your landlord is in possession of a lawful court order to evict you from the leased premises located at 61 Park Street, #8J, Brookline, Massachusetts 02446. A reasonable accommodation is meant to provide disabled individuals with an equal opportunity (or right) to use and enjoy the property. By Judgment and Order of the Eastern Housing Court, subject to lawful service of process, you no longer have the right to use, enjoy, or possess the leased premises. Therefore, your attempt to restore possession *vis-à-vis* a reasonable accommodation is misplaced. To grant your request to halt the eviction would actually provide you with an unequal, disability-related advantage that other similarly situated, non-disabled individuals would never be afforded. Consequently, under these circumstances, the BHA has no obligation to provide you with the accommodation you seek.

There is legal precedent for this position. Courts have consistently held that accommodation requests made only after adverse action is imminent are untimely and unreasonable. For example, in *Reed v. LePage Bakeries, Inc.*, the First Circuit noted that a request for accommodation made

only after an adverse employment action is "too little, too late" (244 F.3d at 262 n.9). Similarly, in *Rose v. Laskey*, the court found a therapist's letter requesting leave of absence after a threat of violence to be both untimely and unreasonable (110 Fed.Appx. 136, 138 (1st Cir. 2004)). Other cases, such as *Hill v. Kansas City Area Transportation Authority* (181 F.3d 891, 894 (8th Cir. 1999)), *Soileau v. Guilford of Me., Inc.* (105 F.3d 12, 17 n.4 (1st Cir. 1997)), *Halpern v. Wake Forest Univ. Health Sciences* (669 F.3d 454, 465 (4th Cir. 2012)), and *Wynne v. Tufts Univ. Sch. of Med.* (976 F.2d 791, 796 & n.3 (1st Cir. 1992)), reinforce the principle that belated claims of disability or accommodation, made only after disciplinary or adverse action is imminent, are not reasonable under the law. Further to the point, in your case, an adverse action - the entry of Judgment against you and issuance of the Writ of Execution for Possession - is actually not imminent but has already taken place. The BHA need not accommodate you on this basis.

Additionally, you have already made a substantially similar reasonable accommodation request in the past seeking for the BHA, in one form or another, to halt the eviction process against you. In a letter dated July 19, 2023, the BHA substantively denied this request for the reasons stated therein. You may review that letter should you have further questions about the BHA's position.

Furthermore, although the BHA need not consider the reasonableness of your requested accommodation for the reasons stated above, that notwithstanding, your request to stop the eviction is indeed unreasonable as it constitutes an undue financial burden and/or fundamental alteration. Also, the medical documentation you submitted has no nexus to the basis for the court's decision to enter Judgment against you and issue the Writ of Execution for Possession.

Lastly, the summary denial of your appeal with the Appeals Court provides further proof that your request is either unreasonable or indefensible and that the eviction may lawfully proceed forward.

Where you are, effectively, a former resident without right of possession to 61 Park Street, #8J, Brookline, Massachusetts 02446 and not entitled to a reasonable accommodation, you are not entitled to appeal this determination.

Signed,

On Behalf of
61 Park, LLC and the
Brookline Housing Authority,

[signature]

Jonathan L. Driscoll, Esq.

cc: Ben Stone
Lisa Brown
Ana De La Puente

*Sent via email transmission to glangadinos@yahoo.com on January 16, 2026.

# EXHIBIT "Q"

**Hassan, Mahmoud**

**From:** Burke, Scott
**Sent:** Sunday, November 9, 2025 2:03 PM
**To:** Greg Langadinos
**Cc:** Nona Bonanno; Frank English; Hassan, Mahmoud
**Subject:** RE: Formal demand & Revised.AMENDED REQUEST FOR ALL NOTICES OF REMOVAL, COMPLAINTS, ANSWERS, ETC Re: Gregory Langadinos Formal request.for my Files, specifically all Attorney Prepared Pleadings The fact that the client, not the attorney, prepared the plea

Mr. Langadinos, I responding to your email of 11/6.

-With regard to the documents you seek, as you know, Attorney Neyman is currently hospitalized. We will work with him on complying with your request as soon as he is able.

-You have requested "a reasonable offer" by Monday, November 10. We will not be making an offer because we lack substantive information regarding your claims. My understanding from you, Mr. English and Ms. Bonanno is that you have promised PMA information to substantiate your claims. (In your email of November 3 you wrote, "Mr. English and I have a written understanding and agreement that my counsel will articulate and will be be [sic] submitting all of my allegations and claims to the insurance company." In your email to me of November 4, you wrote, "I will send you the Description of all claims and dates of losses in the next few weeks." Neither you nor your counsel have provided the promised substantiation.)

-You reference Attorney Grossack. We have not been engaged to represent him.

-Finally, you pasted into your email AI generated research regarding a Massachusetts attorney named Lynne M. Dastou. We have found no source material regarding this AI result. I found no court decision suspending an attorney with this name, and no BBO listing in Massachusetts for this attorney. We are certainly willing to consider legitimate case law (and factual evidence) as we analyze your allegations. Kindly provide the source material regarding the suspension of Lynne Dastou. If you do not, we will assume that you provided fake legal support for your claims.

**Scott Douglas Burke**
Partner

MORRISON MAHONEY LLP
250 Summer Street, Boston, MA 02210
T (617) 439-7578 | F (617) 342-4937
SBurke@morrisonmahoney.com | www.morrisonmahoney.com

Connecticut | Massachusetts | New Hampshire | New Jersey | New York | Rhode Island | United Kingdom

**From:** Greg Langadinos <glangadinos@yahoo.com>
**Sent:** Thursday, November 6, 2025 5:25 AM
**To:** Burke, Scott <SBurke@morrisonmahoney.com>; Frank English <frank_english@pmagroup.com>

# EXHIBIT "R"

NECESSITY FUNDING

January 30, 2014

| ATTENTION: | James E. Neyman, Esq. | Tel. | (617) 723-2627 |
|---|---|---|---|
| | James E. Neyman & Associates, P.C. | Fax. | (617) 723-2608 |

# ATTORNEY INSTRUCTIONS

**Re: Gregory Langadinos vs. Goret Johnson**

Dear James E. Neyman, Esq.,

We are pleased to advise that your client, **Gregory Langadinos**, has been approved for a Lawsuit Cash Advance with Necessity Funding Partners, LLC.

Enclosed please find the following for review and execution:

- ✓ **Attorney Acknowledgement** - requires attorney acknowledgement
- ✓ **Irrevocable Letter of Instructions**- requires Gregory Langadinos acknowledgement
- ✓ **Legal Funding Agreement** - requires Gregory Langadinos acknowledgement

We request that you please fax back to our office at **1-855-456-8088 at your earliest convenience.**

Thank you for your assistance. If you have any questions, please feel free and the telephone number noted directly below.

**Funding Department**
**Necessity Funding Partners, LLC**
**1-888-798-4386 extension 2**

---

**Fax To: Necessity Funding Partners, LLC**

**1-855-456-8088**

_____ # of Faxed Pages

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone and return the original message to us at the below noted address at our cost.

## Attorney Acknowledgement

I/We, **James E. Neyman, Esq.**, the undersigned attorney for **Gregory Langadinos** ("the Client") acknowledge receipts of the Irrevocable Letter of Instructions and the foregoing Necessity Funding Partners, LLC's Legal Funding Agreement (the "Legal Funding Agreement"). I/We will honor Client's sale of the agreed upon portion of the Proceeds of the Lawsuit (the "Proceeds") or recovery in the Lawsuit in accordance with the terms of the Legal Funding Agreement. I/We agree to distribute any Proceeds, **after deduction of any attorney's fees and costs,** in accordance with the terms of the Legal Funding Agreement. I/We further acknowledge that I/We will follow all of Client's irrevocable instructions to me as outlined in the Irrevocable Letter of Instructions and will honor the terms of the Legal Funding Agreement.

I/We know of no other sale of Proceeds or lien in this case as a result of the sale and/or funding similar in nature to Necessity Funding Partners, LLC's and acknowledge that the Legal Funding Agreement prohibits the Client from selling additional Proceeds and/or for creating any other liens resulting from funding similar in nature to Necessity Funding Partners, LLC.

Prior to making any distribution to the Client, I/We will contact Necessity Funding Partners, LLC to ascertain the amount due and will not pay any portion of the Client's Proceeds or on Client's behalf until Legal Funding Agreement is satisfied in full.

By execution hereof, I/We promise to furnish requested information to Necessity Funding Partners, LLC as authorized by Client, retain any and all recovered Proceeds, and disburse the said Proceeds in accordance with the Legal Funding Agreement, the attached Irrevocable Letter of Instruction from Client, and this Acknowledgement. Necessity Funding Partners, LLC will not direct the Litigation or interfere with the attorney-client relationship or other influence the Attorney's independent professional judgment.

I/We represent that this case is still pending in active status and that there presently are no motions for final disposition, including but not limited to summary judgment. However, I/We further represent that this case is being vigorously defended as to both liability and injury and proffer that there is no guarantee that the Client will be successful or will recover sufficiently to satisfy the Legal Funding Agreement.

I/We confirm that I have received a copy of and reviewed the Legal Funding Agreement, and explained the terms to the Client.

I/WE ACKNOWLEDGE AND AGREE THAT NO PAYMENTS WILL BE MADE TO **GREGORY LANGADINOS** FROM ANY SETTLEMENT, COLLECTION, JUDGEMENT, COMPROMISE OR ANY OTHER COLLECTION RESULTING FROM THIS CASE UNTIL THE FULL AMOUNT DUE AND OWING TO NECESSITY FUNDING PARTNERS, LLC IS PAID IN FULL.

______________________________ ______________

**James E. Neyman, Esq.** **Date**
**James E. Neyman & Associates, P.C.**

January 30, 2014

**James E. Neyman, Esq.**
**James E. Neyman & Associates, P.C.**
76 Canal Street, Suite 402
Boston, Massachusetts, 02114

Re: **Irrevocable Letter of Instruction**
**The cause of action arising from the injuries sustained in the accident which occurred on or about 03/11/2010, or any other related actions, involving Gregory Langadinos**

Dear James E. Neyman, Esq.:

I, **Gregory Langadinos** have unconditionally and irrevocably agreed to sell a portion of my Proceeds of the Lawsuit to Necessity Funding Partners, LLC. I request that you sign and acknowledge the Attorney Assignment and fax back to Necessity Funding Partners, LLC as soon as possible.

Please be advised that this letter, along with copy of the Legal Funding Agreement will confirm that I am irrevocably assigning an interest in the Proceeds from any settlement of my pending case (as described above) to Necessity Funding Partners, LLC.

**I hereby instruct you, as my attorney, to honor and follow my irrevocable instructions to you listed below:**

Before disbursements of any settlement or judgment proceeds from my claim, have your office contact Necessity Funding Partners, LLC at **1-888-798-4386** to confirm the amount due under the terms of my Legal Funding Agreement. PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY FUNDS FROM MY PORTION OF THE SETTLEMENT, COLLECTION, JUDGEMENT, COMPROMISE, OR ANY OTHER COLLECTION RESULTING FROM THIS CASE WITHOUT FIRST SATISFYING NECESSITY FUNDING PARTNERS, LLC's LIEN.

Upon disbursement of any settlement or judgment proceeds from my claim, deduct and forward all amounts payable to the Necessity Funding Partners, LLC before any proceeds are distributed to me, via mail to:

**Necessity Funding Partners, LLC**
**999 Walt Whitman Road, Suite 103**
**Melville, NY 11747**

In addition, promptly notify Necessity Funding Partners, LLC if there are any other assignments or liens on this claim now and in the future. If in the future you are no longer representing me in this claim, promptly notify Necessity Funding Partners, LLC within 48 hours. Cooperate with Necessity Funding Partners, LLC by providing, upon request, any information regarding my claim and the defendant(s) to the Necessity Funding Partners, LLC that does not violate the attorney/client privilege. Upon request from Necessity Funding Partners, LLC, disclose the gross settlement amount from my claim for internal purpose only.

Very truly yours,

______________________________

**Gregory Langadinos**

# LEGAL FUNDING AGREEMENT



THIS LEGAL FUNDING AGREEMENT (the "Agreement") made on this day of **January 30, 2014**, is made by and between NECESSITY FUNDING PARNTERS, LLC, a New York Limited Liability Corporation (NECESSITY FUNDING), and **Gregory Langadinos**, ("CLIENT"), whose address is 61 Park St, Brookline, Massachusetts, 02446. The NECESSITY FUNDING and CLIENT are collectively referred to as the "Parties".

## RECITALS

WHEREAS, CLIENT is the Plaintiff, or otherwise has a claim, in an action or suit now pending against **Goret Johnson** (the "Defendant") (whether a claim or an action or suit, the "Litigation") whose insurance company is defending such Litigation, arising out of an act of negligence, accident or other incident occurring on or about, in which the Defendant caused CLIENT to suffer serious damages.

WHEREAS, an undetermined amount of time will be required for CLIENT to seek compensation from Defendant(s) through continued legal action and/or negotiation to otherwise persuade or prevail upon Defendant(s) to pay CLIENT an amount appropriate and necessary to compensate CLIENT for the injuries incurred and/or damages suffered;

WHEREAS, in order to afford CLIENT sufficient funds to adequately pay for the pursuit of the Litigation and/or other necessities to assure the pursuance of the Litigation, NECESSITY FUNDING has agreed to purchase certain proceeds arising from and/or related to any settlement, award, and/or verdict resulting from and/or related to the Litigation; and

WHEREAS, NECESSITY FUNDING has made its own determination to purchase certain Proceeds (as defined below) arising from and/or related to the Litigation and it has not relied on the advice of CLIENT's counsel.

NOW THEREFORE, for and in consideration of **$6,500.00**, the receipt and sufficiency of which is hereby acknowledged, NECESSITY FUNDING and CLIENT do hereby agree as follows:

1. CLIENT accepts the sum of $6,500.00 from NECESSITY FUNDING, which will use be used for immediate economic necessities. CLIENT hereby directs said amount to be distributed by NECESSITY FUNDING as follows: $6,000.00 payable to CLIENT, $500.00 payable to NECESSITY FUNDING for application and processing .

2. CLIENT unconditionally and irrevocably grants, assigns, transfers and conveys an interest in the Proceeds, which is equal to the Total Funded Amount, together with the accrued use fee, compounded monthly, and other fees or costs. The monthly use fee shall be a charge in an amount equal to **3.25%** monthly on the Total Funded Amount. The monthly use fee is charged from this date until the payment Proceeds are made to Necessity Funding. In the event that any funding is repaid with Proceeds within the first six (6) months, the pay-off amount will be computed as if it were repaid at the end of that period. In the case of multiple fundings, then these fees shall accrue on each Total Funded Amount from the date of each individual funding. For purposes of this Agreement, "Proceeds" shall be and is defined as the gross amount of the recovery, whether by settlement, award, verdict or otherwise, from and/or related to the Litigation less attorney's fees incurred by CLIENT in the amount of **33.3%**, the actual costs of the Litigation advanced by CLIENT's attorney on CLIENT's behalf, and any other prior superior assignments, liens, encumbrances or security interests of or in the Proceeds as provided for in Schedule A hereto, if any. Any payment that is not made to NECESSITY FUNDING immediately after eligible proceeds are received by the attorney shall bear interest at the highest rate permitted by law, until payment in full is rendered to NECESSITY FUNDING. If NECESSITY FUNDING must engage the services of an attorney to collect any sums due, then CLIENT shall also be responsible for reimbursing NECESSITY FUNDING's reasonable attorney fees and costs in pursuing collection of Proceeds.

3. **FULL DISCLOSURE BOX:**

| | |
|---|---|
| **Total to be advanced to CLIENT under this Agreement:** | **$6,500.00** |
| **Less: Necessity Funding Application & Processing Fee** | **($500.00)** |
| **Referral Fee (if applicable)** | **($0.00)** |
| **Other Disbursements** | **($0.00)** |
| **NET CASH AMOUNT TO CLIENT** | **$6,000.00** |

| DATE OF REPAYMENT TO NECESSITY FUNDING | Pay-Off Amount* |
|---|---|
| By August 2, 2014 | $ 7,862.65 |
| By October 29, 2014 | $ 8,661.27 |
| By February 2, 2015 | $ 9,541.00 |
| By August 2, 2015 | $ 11,541.16 |
| By February 2, 2016 | $ 14,004.73 |
| By August 2, 2016 | $ 16,958.48 |
| By February 2, 2017* | $ 20,578.43 |

**CLIENT's Initials:** [ ]

* After this date, monthly fees continue to accrue until NECESSITY FUNDING is repaid in full.

This chart includes example dates only. Dates in-between and after those shown many reflect other Pay-Off Amounts.
Always contact NECESSITY FUNDING for your exact pay-off amount

**CLIENT's Initials:** [ ]

# EXHIBIT "S"

NECESSITY FUNDING

May 7, 2014

| ATTENTION: | James E. Neyman, Esq. | Tel. | (617) 723-2627 |
|---|---|---|---|
| | James E. Neyman & Associates, P.C. | Fax. | (617) 723-2608 |

# ATTORNEY INSTRUCTIONS

**Re: Greg Langadinos vs. Staples**

Dear James E. Neyman, Esq.,

We are pleased to advise that your client, **Greg Langadinos**, has been approved for a Lawsuit Cash Advance with Necessity Funding Partners, LLC.

Enclosed please find the following for review and execution:

- ✓ **Attorney Acknowledgement** - requires attorney acknowledgement
- ✓ **Irrevocable Letter of Instructions**- requires Greg Langadinos acknowledgement
- ✓ **Legal Funding Agreement** - requires Greg Langadinos acknowledgement

We request that you please fax back to our office at **1-855-456-8088 at your earliest convenience.**

Thank you for your assistance. If you have any questions, please feel free and the telephone number noted directly below.

**Funding Department**
**Necessity Funding Partners, LLC**
**1-888-798-4386 extension 2**

---

## Fax To: Necessity Funding Partners, LLC

## 1-855-456-8088

____ # of Faxed Pages

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone and return the original message to us at the below noted address at our cost.

# Attorney Acknowledgement

I/We, **James E. Neyman, Esq.**, the undersigned attorney for **Greg Langadinos** ("the Client") acknowledge receipts of the Irrevocable Letter of Instructions and the foregoing Necessity Funding Partners, LLC's Legal Funding Agreement (the "Legal Funding Agreement"). I/We will honor Client's sale of the agreed upon portion of the Proceeds of the Lawsuit (the "Proceeds") or recovery in the Lawsuit in accordance with the terms of the Legal Funding Agreement. I/We agree to distribute any Proceeds, **after deduction of any attorney's fees and costs,** in accordance with the terms of the Legal Funding Agreement. I/We further acknowledge that I/We will follow all of Client's irrevocable instructions to me as outlined in the Irrevocable Letter of Instructions and will honor the terms of the Legal Funding Agreement.

I/We know of no other sale of Proceeds or lien in this case as a result of the sale and/or funding similar in nature to Necessity Funding Partners, LLC's and acknowledge that the Legal Funding Agreement prohibits the Client from selling additional Proceeds and/or for creating any other liens resulting from funding similar in nature to Necessity Funding Partners, LLC.

Prior to making any distribution to the Client, I/We will contact Necessity Funding Partners, LLC to ascertain the amount due and will not pay any portion of the Client's Proceeds or on Client's behalf until Legal Funding Agreement is satisfied in full.

By execution hereof, I/We promise to furnish requested information to Necessity Funding Partners, LLC as authorized by Client, retain any and all recovered Proceeds, and disburse the said Proceeds in accordance with the Legal Funding Agreement, the attached Irrevocable Letter of Instruction from Client, and this Acknowledgement. Necessity Funding Partners, LLC will not direct the Litigation or interfere with the attorney-client relationship or other influence the Attorney's independent professional judgment.

I/We represent that this case is still pending in active status and that there presently are no motions for final disposition, including but not limited to summary judgment. However, I/We further represent that this case is being vigorously defended as to both liability and injury and proffer that there is no guarantee that the Client will be successful or will recover sufficiently to satisfy the Legal Funding Agreement.

I/We confirm that I have received a copy of and reviewed the Legal Funding Agreement, and explained the terms to the Client.

I/WE ACKNOWLEDGE AND AGREE THAT NO PAYMENTS WILL BE MADE TO **GREG LANGADINOS** FROM ANY SETTLEMENT, COLLECTION, JUDGEMENT, COMPROMISE OR ANY OTHER COLLECTION RESULTING FROM THIS CASE UNTIL THE FULL AMOUNT DUE AND OWING TO NECESSITY FUNDING PARTNERS, LLC IS PAID IN FULL.

____________________________ ______________

**James E. Neyman, Esq.**
**James E. Neyman & Associates, P.C.**

**Date**

May 7, 2014

**James E. Neyman, Esq.**
**James E. Neyman & Associates, P.C.**
76 Canal Street, Suite 402
Boston, Massachusetts, 02114

Re: **Irrevocable Letter of Instruction**
**The cause of action arising from the injuries sustained in the accident which occurred on or about 01/09/2014, or any other related actions, involving Greg Langadinos**

Dear James E. Neyman, Esq.:

I, **Greg Langadinos** have unconditionally and irrevocably agreed to sell a portion of my Proceeds of the Lawsuit to Necessity Funding Partners, LLC. I request that you sign and acknowledge the Attorney Assignment and fax back to Necessity Funding Partners, LLC as soon as possible.

Please be advised that this letter, along with copy of the Legal Funding Agreement will confirm that I am irrevocably assigning an interest in the Proceeds from any settlement of my pending case (as described above) to Necessity Funding Partners, LLC.

**I hereby instruct you, as my attorney, to honor and follow my irrevocable instructions to you listed below:**

Before disbursements of any settlement or judgment proceeds from my claim, have your office contact Necessity Funding Partners, LLC at **1-888-798-4386** to confirm the amount due under the terms of my Legal Funding Agreement. PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY FUNDS FROM MY PORTION OF THE SETTLEMENT, COLLECTION, JUDGEMENT, COMPROMISE, OR ANY OTHER COLLECTION RESULTING FROM THIS CASE WITHOUT FIRST SATISFYING NECESSITY FUNDING PARTNERS, LLC's LIEN.

Upon disbursement of any settlement or judgment proceeds from my claim, deduct and forward all amounts payable to the Necessity Funding Partners, LLC before any proceeds are distributed to me, via mail to:

**Necessity Funding Partners, LLC**
**999 Walt Whitman Road, Suite 103**
**Melville, NY 11747**

In addition, promptly notify Necessity Funding Partners, LLC if there are any other assignments or liens on this claim now and in the future. If in the future you are no longer representing me in this claim, promptly notify Necessity Funding Partners, LLC within 48 hours. Cooperate with Necessity Funding Partners, LLC by providing, upon request, any information regarding my claim and the defendant(s) to the Necessity Funding Partners, LLC that does not violate the attorney/client privilege. Upon request from Necessity Funding Partners, LLC, disclose the gross settlement amount from my claim for internal purpose only.

Very truly yours,

Greg Langadinos

2598Langadinos5535

# LEGAL FUNDING AGREEMENT



THIS LEGAL FUNDING AGREEMENT (the "Agreement") made on this day of **May 7, 2014**, is made by and between NECESSITY FUNDING PARNTERS, LLC, a New York Limited Liability Corporation (NECESSITY FUNDING), and **Greg Langadinos**, ("CLIENT"), whose address is 61 Park St, Brookline, Massachusetts, 0246. The NECESSITY FUNDING and CLIENT are collectively referred to as the "Parties".

## RECITALS

WHEREAS, CLIENT is the Plaintiff, or otherwise has a claim, in an action or suit now pending against **Staples** (the "Defendant") (whether a claim or an action or suit, the "Litigation") whose insurance company is defending such Litigation, arising out of an act of negligence, accident or other incident occurring on or about, in which the Defendant caused CLIENT to suffer serious damages.

WHEREAS, an undetermined amount of time will be required for CLIENT to seek compensation from Defendant(s) through continued legal action and/or negotiation to otherwise persuade or prevail upon Defendant(s) to pay CLIENT an amount appropriate and necessary to compensate CLIENT for the injuries incurred and/or damages suffered;

WHEREAS, in order to afford CLIENT sufficient funds to adequately pay for the pursuit of the Litigation and/or other necessities to assure the pursuance of the Litigation, NECESSITY FUNDING has agreed to purchase certain proceeds arising from and/or related to any settlement, award, and/or verdict resulting from and/or related to the Litigation; and

WHEREAS, NECESSITY FUNDING has made its own determination to purchase certain Proceeds (as defined below) arising from and/or related to the Litigation and it has not relied on the advice of CLIENT's counsel.

NOW THEREFORE, for and in consideration of **$5,535.00**, the receipt and sufficiency of which is hereby acknowledged, NECESSITY FUNDING and CLIENT do hereby agree as follows:

1. CLIENT accepts the sum of $5,535.00 from NECESSITY FUNDING, which will use be used for immediate economic necessities. CLIENT hereby directs said amount to be distributed by NECESSITY FUNDING as follows: $5,000.00 payable to CLIENT, $500.00 payable to NECESSITY FUNDING for application and processing fee, $35.00 payable to Necessity Funding for Bank Wire Fee.

2. CLIENT unconditionally and irrevocably grants, assigns, transfers and conveys an interest in the Proceeds, which is equal to the Total Funded Amount, together with the accrued use fee, compounded monthly, and other fees or costs. The monthly use fee shall be a charge in an amount equal to **3.25%** monthly on the Total Funded Amount. The monthly use fee is charged from this date until the payment Proceeds are made to Necessity Funding. In the event that any funding is repaid with Proceeds within the first six (6) months, the pay-off amount will be computed as if it were repaid at the end of that period. In the case of multiple fundings, then these fees shall accrue on each Total Funded Amount from the date of each individual funding. For purposes of this Agreement, "Proceeds" shall be and is defined as the gross amount of the recovery, whether by settlement, award, verdict or otherwise, from and/or related to the Litigation less attorney's fees incurred by CLIENT in the amount of **33.3%**, the actual costs of the Litigation advanced by CLIENT's attorney on CLIENT's behalf, and any other prior superior assignments, liens, encumbrances or security interests of or in the Proceeds as provided for in Schedule A hereto, if any. Any payment that is not made to NECESSITY FUNDING immediately after eligible proceeds are received by the attorney shall bear interest at the highest rate permitted by law, until payment in full is rendered to NECESSITY FUNDING. If NECESSITY FUNDING must engage the services of an attorney to collect any sums due, then CLIENT shall also be responsible for reimbursing NECESSITY FUNDING's reasonable attorney fees and costs in pursuing collection of Proceeds.

**3. FULL DISCLOSURE BOX:**

| | |
|---|---|
| **Total to be advanced to CLIENT under this Agreement:** | **$5,535.00** |
| **Less: Necessity Funding Application & Processing Fee** | **($500.00)** |
| **Referral Fee (if applicable)** | **($0.00)** |
| **Other Disbursements** | **($35.00)** |
| **NET CASH AMOUNT TO CLIENT** | **$5,000.00** |

| DATE OF REPAYMENT TO NECESSITY FUNDING | Pay-Off Amount* |
|---|---|
| By November 6, 2014 | $ 6,716.50 |
| BY February 6, 2014 | $7,398.70 |
| By May 6, 2015 | $ 8,124.53 |
| By November 6, 2015 | $ 9,858.79 |
| By May 6, 2016 | $ 11,938.11 |
| By November 6, 2016 | $ 14,486.42 |
| By May 6, 2017* | $ 17,523.32 |

CLIENT's Initials: GL

* After this date, monthly fees continue to accrue until NECESSITY FUNDING is repaid in full.
This chart includes example dates only. Dates in-between and after those shown many reflect other Pay-Off Amounts.
Always contact NECESSITY FUNDING for your exact pay-off amount

CLIENT's Initials: GL

2598Langadinos5535

4. The Parties acknowledge that (a) NECESSITY FUNDING is in no way acquiring CLIENT's right to sue; (b) CLIENT has commenced the Litigation prior to receiving funding from NECESSITY FUNDING; (c) the Litigation belongs solely to CLIENT; (d) Agreement is expressly stated to be a sale by CLIENT to NECESSITY FUNDING only of the specified Proceeds that CLIENT recovers as a result of, or related to the Litigation; (e) the sale under this Agreement is not the sale or assignment of the CLIENT's cause of action against any responsible party, respondent or Defendant; and (f) NECESSITY FUNDING shall not have any influence over the manner in which the Litigation is pursued and/or handled by CLIENT and/or his/her/its attorneys.

5. The Parties intend, acknowledge, and agree that any sale of the Proceeds contemplated in this Agreement is made in and for a contemporaneous exchange for new and reasonably equivalent value given by NECESSITY FUNDING to the CLIENT by payment of the purchase price to buy the amount of the Proceeds and by the funding given to the CLIENT to enable, continue and maintain effective prosecution of the Litigation. The Parties also acknowledge and agree that this Agreement is not a fraudulent or preferential transfer and not subject to avoidance under any provisions under federal bankruptcy or state insolvency laws or statutes. The CLIENT represents and warrants that CLIENT is not entering into this Agreement to hinder, delay, or defraud CLIENT's creditors or to pay any debt owing to NECESSITY FUNDING that existed before this Agreement. NECESSITY FUNDING expressly states that it enters into this Agreement in good faith and without knowledge of any void ability of any transfers effectuated as a result of this Agreement.

6. This Agreement involves a substantial economic risk and a bona fide risk of loss to NECESSITY FUNDING and the Proceeds sold by CLIENT to NECESSITY FUNDING and SCHEDULE A have been negotiated and settled upon by the Parties to account for such risk. The sale of Proceeds herein is an absolute, irrevocable sale, not a loan, as it is secured by collateral that is contingent on the recovery of Proceeds sufficient to satisfy NECESSITY FUNDING's purchase and significant risk of capital assets. This Agreement and the obligation to pay Proceeds specified herein, are totally contingent, speculative and without recourse except for NECESSITY FUNDING's investment interest in this Litigation (and any successor claim(s) and or Litigation arising out of the same or similar facts or occurrences or arising out of any litigation over how the pursuit of the Litigation was pursued or conducted).

7. NECESSITY FUNDING'S ownership interest shall be paid to NECESSITY FUNDING in full on the date the Proceeds are recovered. In the event the Proceeds are received in multiple payments, whether pursuant to a structured settlement, annuity, or other form of installation payment or incremental recovery, NECESSITY FUNDING'S right to receive full payment of its interest thereon shall be prior and senior to the CLIENT'S right to receive any portion of the Proceeds. Accordingly and for the avoidance of doubt, in such event NECESSITY FUNDING shall be paid all amounts owing to NECESSITY FUNDING before any amounts are paid to or held by CLIENT.

8. This is a non-recourse obligation. If the Proceeds are insufficient to pay NECESSITY FUNDING'S share of the recovery, then NECESSITY FUNDING'S share of the recovery shall be limited to the amount of Proceeds. If there is no recovery of Proceeds by CLIENT as specified herein, then NECESSITY FUNDING SHALL RECEIVE NOTHING.

9. CLIENT shall, and does hereby authorize, require and direct his/her/its attorney(s) to execute the Acknowledgement of this Agreement. By execution of said Acknowledgement, CLIENT's attorney(s) acknowledges receipt of and actual notice of this Agreement and agrees to disburse the Proceeds to NECESSITY FUNDING as set forth herein.

10. CLIENT authorizes and directs CLIENT's attorney to cooperate with and inform NECESSITY FUNDING of the status of the Litigation while it is pending, to notify NECESSITY FUNDING if and when there is an agreement with any Defendant to settle the Litigation or any portion thereof, and to notify NECESSITY FUNDING if and when CLIENT's attorney receives any Proceeds with respect to the Litigation.

11. If CLIENT changes and/or retains additional attorney(s) subsequent to the date of this Agreement, CLIENT and CLIENT's attorney(s) shall provide notice within 48 hours of the identity, address and telephone numbers of CLIENT's new attorney(s) by (a) telephone to 1-888-798-4386; and (b) writing, sent certified mail, return receipt requested, to NECESSITY FUNDING at its office address of **999 Walt Whitman Road, Suite 103, Melville, New York 11747.** CLIENT further agrees to authorize, require and direct any new attorney(s) to immediately execute and acknowledge this Agreement.

12. CLIENT represents and warrants to NECESSITY FUNDING that as of the date of this Agreement (a) CLIENT believes the Litigation to be meritorious and filed in good faith; and (b) CLIENT has complete right, title and interest in and to the Litigation and full power and authority to make and execute this Agreement.

13. CLIENT represents and warrants to NECESSITY FUNDING that CLIENT has not and will not assign or encumber the Proceeds from the Litigation, except as specifically in this Agreement; and there is no other assignment, lien, encumbrance or security interest of any kind or nature in or relating to the Proceeds other than specified in Schedule B.

14. CLIENT hereby authorizes and instructs CLIENT'S attorney to disclose to NECESSITY FUNDING all assignments, conveyances and transfers of an interest and/or liens upon the Proceeds.

**CLIENT's Initials:** GL

15. CLIENT hereby agrees that CLIENT shall not knowingly create any additional liens against the Proceeds without the prior consent of NECESSITY FUNDING except those as may be necessary to the prosecution of the case and any medical expenses, treatments and related equipment that CLIENT may require. CLIENT specifically promises not to create any liens against the Proceeds of the case as a result of any funding or advances that CLIENT may receive after the date of this Agreement.

16. Prior to receiving funding from NECESSITY FUNDING, CLIENT acknowledges that CLIENT has not received any funds of any kind of a similar nature. CLIENT is aware that CLIENT shall not solicit or accept funds or advances against the Proceeds from any other funding company and/or individual, unless the CLIENT first repays the NECESSITY FUNDING in full. CLIENT acknowledges that CLIENT is waiving their rights to further funding of this kind and further acknowledges that, if CLIENT accepts any such funding, CLIENT will be violating this Agreement with NECESSITY FUNDING.

17. CLIENT intends, acknowledges and agrees that this Agreement is valid and binding as to and upon all of his/her/its heirs, trustees, executors, or any successor-in-interest who may obtain or assert control over the Litigation by reason of CLIENT's death, disability, or decline in health such that someone other than CLIENT is, or becomes entitled to make decisions concerning the disposition of the Litigation and/or any of the proceeds resulting from and/or related to the Litigation. By executing this Agreement, CLIENT intends to, and does exercise any Power of Appointment with which CLIENT is empowered, to the extent necessary to complete the sale that is the subject of this Agreement.

18. CLIENT has been advised to have CLIENT's own counsel, as well as outside counsel, review this Agreement prior to signing. CLIENT understands, acknowledges, and agrees that NECESSITY FUNDING has not provided CLIENT with any legal advice regarding this Agreement or otherwise.

19. CLIENT has been advised that NECESSITY FUNDING is a NECESSITY FUNDING of last resort and that other sources may have more favorable purchase prices or there may be additional and/or alternative methods of obtaining needed capital.

20. CLIENT acknowledges that if, and only if CLIENT should make a recovery arising from and/or related to the Litigation, NECESSITY FUNDING may make a substantial profit from its purchase of the specified Proceeds.

21. CLIENT affirmatively states that the CLIENT understands the terms of this Agreement, and that CLIENT consulted with and obtained the advice of counsel and signs this Agreement voluntarily. The Parties further state that this Agreement has been negotiated, drafted and reviewed by counsel of their choosing and that the principle of construing an agreement against its drafter shall not, and does not apply.

22. If CLIENT is involved in a bankruptcy proceeding prior to the payoff of any or all funds owed to satisfy this Agreement and the lien created thereby, CLIENT agrees, absolutely, irrevocably and without condition to notify the applicable bankruptcy court that NECESSITY FUNDING owns a specified portion of the Proceeds of any recovery from the Litigation in accordance with 3. of this Agreement. NECESSITY FUNDING's financial interest in the Litigation shall not be included in the bankruptcy estate of the CLIENT and cannot and will not be voided, discharged, reduced, adjudicated, or bifurcated as the result of any bankruptcy proceeding.

23. CLIENT agrees that if the Litigation is to be settled or otherwise satisfied under a Structured Settlement, "Proceeds", as defined in this Agreement, must be equal to or greater than the amount owed to NECESSITY FUNDING by CLIENT and that the initial disbursement of Proceeds due under the Structured Settlement and payable by Defendant, Defendant's insurance carrier, or representative shall be in an amount sufficient to pay all monies due NECESSITY FUNDING, as provided in 3. of this Agreement.

24. CLIENT agrees that NECESSITY FUNDING is entitled to assign all or part of the Proceeds and/or this Agreement to Bridgehampton National Bank, without the CLIENT'S prior consent.

25. The laws of the State of New York, without regard to its conflict of laws and rules, shall control the validity, interpretation and enforceability of this Agreement. The CLIENT and NECESSITY FUNDING hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Courts of the State of New York, in the County of New York for any lawsuits, claims or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, claim or other proceeding except in such Courts. The CLIENT and NECESSITY FUNDING hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, claim or other proceeding out of or relating to this Agreement in the Courts of the State of New York, in the County of New York, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court, that any such lawsuit, claim or other proceeding brought in any such court has been brought in an inconvenient forum.

26. If any provision of this Agreement shall be deemed invalid or unenforceable, it shall not affect the validity or enforceability of any other provision hereof.

**CLIENT's Initials:** GL

27. DISPUTE RESOLUTION: Any controversy or claim arising out of or relating to this Agreement, including without limitation, the interpretation, validity, enforceability or breach thereof, shall be settled by final, binding arbitration, administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall be a practicing attorney or retired judge licensed to practice in the State of New York. The place of arbitration shall be New York, New York. The arbitrator shall award to the prevailing party, if any, as determined by the arbitrator, all of its costs and fees. "Costs and fees" means all pre-award expenses of arbitrator, including arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorneys' fees and disbursements. The award shall be in writing, shall be signed by the arbitrator, and shall include a statement regarding the reasons for the disposition of any claim.

28. CLIENT understands CLIENT may rescind this Agreement within five (5) business days following the CLIENT's receipt of funds from NECESSITY FUNDING, provided, however, that CLIENT returns the funds to NECESSITY FUNDING simultaneously with the rescission. CLIENT may do this by mailing a notice of cancellation and include in the mailing a return of the funding (in the form of a registered, certified or bank check or money order) in an amount equal to the funding.

29. This Agreement constitutes the entire agreement between the Parties and there are no representations, warranties, covenants or obligations of any kind except as expressly set forth herein. This Agreement is intended to be a fully integrated agreement that supersedes all contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the Parties, relating to any transaction contemplated by or related to this Agreement. This Agreement shall be binding on, and inure to the benefit of, the Parties hand their respective successors and assigns. In the event that any one or more of the covenants, terms and/or conditions of this Agreement, shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the validity, liability or enforceability of any other covenant, term and/or condition in this Agreement.

**CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE FUNDING.**

**DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT COMPLETELY OR IF IT CONTAINS ANY BLANK SPACES. BEFORE YOU SIGN THIS AGREEMENT, YOU SHOULD OBTAIN THE ADVICE OF YOUR ATTORNEY. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT.**

**IF YOU REQUIRE FURTHER EXPLANATION, PLEASE CONTACT NECESSITY FUNDING PRIOR TO SIGNING AND FUNDING.**

**IF YOU REQUIRE A COPY OF THIS AGREEMENT, PLEASE CONTACT NECESSITY FUNDING AT 1-888-798-4386**

Gregory Langadinos [signature]

**Greg Langadinos** **May 7, 2014**

**NECCESSITY FUNDING PARTNERS, LLC**

By:

[signature]

**Thomas G. Brown** **May 7, 2014**

# SCHEDULE A

## LIEN

NECESSITY FUNDING PARTNERS, LLC
Telephone: 1-888-798-4386

I HEREBY AUTHORIZE AND DIRECT YOU TO PAY DIRECTLY TO NECESSITY FUNDING, PURSUANT TO THE ATTACHED LEGAL FUNDING AGREEMENT. NECESSITY FUNDING'S SPECIFIED PURCHASED SHARE OF CERTAIN, SPECIFIED LITIGATION PROCEEDS MUST BE WITHHELD AND PAID, PRIOR TO MAKING ANY DISTRIBUTION TO ME, BY MY ATTORNEY OR THE ATTORNEY OR CLAIMS REPRESENTATIVE OF THE DEFENDANT OR INSURANCE COMPANY OR OTHER REPRESENTATIVE OF THE DEFENDANT FROM ANY SETTLEMENT, JUDGMENT OR AWARD OR OTHER RECOVERY I RECEIVE AS A RESULT OF THE FILING OF MY LAWSUIT AGAINST **STAPLES** ("THE DEFENDANT, WHICH I HAVE IRREVOCABLY PLEDGED TO NECESSITY FUNDING IN CONSIDERATION OF THE ABOVE MENTIONED LEGAL FUNDING AGREEMENT.

I INSTRUCT YOU TO HAVE ALL PROCEEDS (AS DEFINED IN THE AGREEMENT) RECOVERED PLACED IN AN APPROPRIATE TRUST OR OTHERWISE SEGREGATED ACCOUNT AND PAID FORTHWITH TO NECESSITY FUNDING. I ABSOLUTELY UNDERSTAND THAT IT IS MY OBLIGATION TO PAY NECESSITY FUNDING THE PURCHASED PROCEEDS RENDERED BY THE SETTLEMENT, JUDGMENT, VERDICT, OR OTHER RECOVERY WHICH I RECEIVE AS A RESULT OF THE ABOVE CAPTIONED CASE GIVING RISE TO THE AGREEMENT AND FOR WHICH I AM REPRESENTED BY, MY ATTORNEY. I ACKNOWLEDGE THIS LIEN BY SIGNING BELOW. I INSTRUCT MY ATTORNEY **JAMES E. NEYMAN,** of **JAMES E. NEYMAN & ASSOCIATES, P.C.** TO ADHERE TO THE TERMS DELINEATED SPECIFICALLY IN THE LEGAL FUNDING AGREEMENT DATED **MAY 7, 2014**.

**AGREED:** [signature] **May 7, 2014**
**Greg Langadinos**

# SCHEDULE B

## ASSIGNMENTS ON PROCEEDS

**Name of CLIENT's Attorney and Law Firm Information:**

**James E. Neyman, Esq.**
**James E. Neyman & Associates, P.C.**
76 Canal Street, Suite 402
Boston, Massachusetts, 02114

**Amount of Attorney's Fee:** 33.3%

**Current Medical Liens:** None

**Other Prior Superior Liens or Encumbrances as of the Date of Agreement:** None

**ACKNOWLEDGED:** [signature] **May 7, 2014**
**Greg Langadinos**

# EXHIBIT "T"

NOTIFY

217

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
No. 2008-2064

9/5/14
all supersedes filed at 9:30 a.m. (js)

GREGORY LANGADINOS

vs.

SOUTHERN NEW ENGLAND SCHOOL OF LAW, INC. & another[1]

NOTICE SENT
09-05-14
G.L.
J.E.N.
K.V.K.

(LAD)

## AMENDED ORDER ON DEFENDANTS' REQUEST FOR PERMANENT INJUNCTION

It is hereby ordered that the plaintiff, Gregory Langadinos,[2] is enjoined from filing any action at law or equity in any Massachusetts state court of original jurisdiction against any party without first complying with the procedure outlined herein. All complaints that Mr. Langadinos submits must be signed under the pains and penalties of perjury and accompanied by a copy of this Order. Before requiring any defendant(s) to file an answer, the clerk will bring the complaint to the Regional Administrative Judge, or his or her designee, of the Superior Court Department for the county where the court in which Mr. Langadinos seeks to file the complaint is located. The Regional Administrative Judge, or his or her designee, shall review the complaint and conduct a brief hearing on the record to determine whether the claims are frivolous. At any such hearing, the Regional Administrative Judge, or his or her designee, shall hear from, at least, Mr. Langadinos regarding his claims and any defenses.

---

[1]Robert Victor Ward, Jr., in his capacity as Dean of Southern New England School of Law.

[2]Given the duress he has already caused other attorneys, this Order applies to Langadinos with or without counsel.

35806 T LITTLE CLAIM EXPIRES 11-07-26 WEEK PAID 02-07-26 $1297.00

BENEFITS ARE REDUCED BY $66.00 ACCORDING TO YOUR REQUEST TO WITHHOLD FEDERAL INCOME TAX.
THIS AMOUNT WAS FORWARDED ON YOUR BEHALF TO THE INTERNAL REVENUE SERVICE.
YOUR CLAIM BALANCE AFTER THIS PAYMENT IS $3590.00
UNEMPLOYMENT COMPENSATION IS TAXABLE. A QUESTION ON THE CLAIM FORM ALLOWS YOU TO REQUEST FEDERAL INCOME TAX WITHHOLDING AT 10% OF YOUR PAYABLE AMOUNT. YOU MAKE A NEW WITHHOLDING CHOICE ON EACH CLAIM FORM YOU SUBMIT.

ALLOW 10 DAYS FOR DELIVERY OF CHECK. DETACH THIS STUB FOR YOUR RECORD

## CONTINUED CLAIM

628735285919725110926022100000226030l A A

11-09-25

T LITTLE

ANSWER ALL QUESTIONS. SEE SECTION A. ON BACK FOR EXAMPLES OF HOW TO COMPLETE YOUR ANSWERS. Each question is explained in your booklet, A Guide to Benefits and Employment Services.

COMPLETE AND MAIL THIS FORM ON 03-01-26

| | 1ST WEEK YES | 1ST WEEK NO | 2ND WEEK YES | 2ND WEEK NO |
|---|---|---|---|---|
| Begins / Ends | 02-15-26 / 02-21-26 | | 02-22-26 / 02-28-26 | |
| 1. Were you too sick or injured to work? | ▯ | ▯ | ▯ | ▯ |
| If yes, enter the number of days (1 through 7) you were unable to work. | ▯ | (1 - 7) | ▯ | (1 - 7) |
| 2. Was there any reason (other than sickness or injury) that you could not have accepted full-time work each workday? | ▯ | ▯ | ▯ | ▯ |
| 3. Did you look for work? | ▯ | ▯ | ▯ | ▯ |
| 4. Did you refuse any work? | ▯ | ▯ | ▯ | ▯ |
| 5. Did you begin attending any kind of school or training? | ▯ | ▯ | ▯ | ▯ |
| 6. Did you work or earn any money, WHETHER YOU WERE PAID OR NOT? | ▯ | ▯ | ▯ | ▯ |

▯ <— IF MARKED 'X', YOU MUST COMPLETE SEC. B., WORK-SEARCH RECORD, ON REVERSE.

(If yes, you MUST COMPLETE items a. and b. below.)

a. Enter earnings before deductions here. > $ ▯▯ . ▯ $ ▯▯ . ▯

b. Report employment or 'source' of earnings information below:

| | DATE LAST WORKED | TOTAL HOURS WORKED | EMPLOYER NAME AND MAILING ADDRESS - INCLUDE ZIP CODE | REASON NO LONGER WORKING (OR WRITE "STILL WORKING") |
|---|---|---|---|---|
| 1ST WEEK | | | | |
| 2ND WEEK | | | | |

7. If you want federal income tax withheld for the week(s) shown above, mark this block. > ▯

8. If you had a change of mailing address or phone number, **mark this block and complete Sec. D on reverse.** > ▯

2917593-021726-J0003905-184-001-0354

UIC TRADE CENTER
PO BOX 989057
WEST SACRAMENTO CA 95798-9057

I understand the questions on this form. I know the law provides penalties if I make false statements or withhold facts to receive benefits; my answers are true and correct. I declare under penalty of perjury that I am a U.S. citizen or national; or an alien in satisfactory immigration status and permitted to work b USCIS. I signed this form after the latest date for which I am claiming benefit

X
(your signature is required)

DE 4581CTO Rev. 6 (5-04) CU/PA866

**DETACH AND DISCARD**

J0003905 184-001-0354 021726

UI CENTER CARNEGIE
PO BOX 19010
SAN BERNARDINO CA 92423-9010

EDD Serving the People of California

T J LITTLE
6525 S NORMANDIE AVE APT 101
LOS ANGELES CA 90044-2663

P0359

Plaintiff, Gregory Langadinos, is ordered to attach a copy of this Amended Order with any complaints he seeks to file in any Massachusetts state court of original jurisdiction.[3]

Elizabeth M. Fahey
Justice of the Superior Court

Date: September 5 , 2014

[3]The Suffolk Superior Clerk's Office is to provide notice of this Amended Order to every other clerk's office even by email.

# EXHIBIT "U"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11159-GAO

GREGORY LANGADINOS,
Plaintiff,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS, et al.,
Defendants.

ORDER ON PERMANENT INJUNCTION AND ADOPTING REPORT AND RECOMMENDATION
September 30, 2013

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and Recommendation ("R&R") (dkt. no. 43) with respect to the defendants' motion for a permanent injunction (dkt. no. 26) and the plaintiff's motion to strike (dkt. no. 36). After carefully reviewing the pleadings, the parties' submissions, the R&R, and the plaintiff's objections, I agree with the magistrate judge's analysis and conclusions.

Accordingly, I approve and ADOPT the magistrate judge's recommendation in its entirety. The plaintiff's Motion to Strike (dkt. no. 36) is DENIED. The defendants' Motion for Permanent Injunction (dkt. no. 26) is GRANTED.

The plaintiff is enjoined from filing any further pleadings in this action and from filing any additional or new claims, cases, complaints, or other documents in the U.S. District Court for the District of Massachusetts, except to effect an appeal of the Court's orders in this case, without first obtaining written approval of a judge of this Court by filing a written petition seeking leave of Court to do so. The petition must be accompanied by a copy of this Court's Memorandum and Order, together with the papers sought to be filed, and a certification under

oath that there is a good faith basis for their filing. The Clerk of Court shall accept the documents, mark them as received, and forward them for action on the petition to a judge of this Court authorized to act on matters on the Miscellaneous Business Docket of the Court. Any documents which are submitted for filing by the plaintiff in violation of this Order shall not be filed or docketed by the Clerk's Office, but shall be returned by the Clerk's Office to the plaintiff.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

# EXHIBIT "V"

EXHIBIT "1"

Elizabeth M Fahey

From: Linda E. Giles <linda.giles@jud.state.ma.us>
Reply-To: Linda E. Giles <linda.giles@jud.state.ma.us>
Date: Wed, 2/22/2012 5:25pm
To: Elizabeth M Fahey <elizabeth.fahey@jud.state.ma.us>
Subject: Langadinos order
Attachment(s): Langadinos.order.wpd

Dear Ellie,

Thank you again for agreeing to assume the defendants' renewed motion to dismiss (and related motions) in the *Langadinos* case. I've attached the order I just issued in this regard.

By the way, I just happened to come across the following cite relative to fraud on the court, in case you didn't already have it: 447 Mass. 200, 209-10 (2006).

Good luck!

---Linda

# EXHIBIT "W"

OOKLINE POLICE DEPARTMENT INCIDENT REPORT CONTINUATION PAGE

| se No. | c2. Supp No. | | c10. Reported Date | c11. Time |
|---|---|---|---|---|
| 3-0000050A | 000 | | 01/03/2023 | 03:36 |

## VEHICLES / PROPERTY

| operty Type | p2. Property Category | p3. Quantity | p4. Qty. Type | p5. EVD Locker No.. |
|---|---|---|---|---|
| LEN | PROPERTY OTHER | | | |

| and | p7. Model | p8. Color | p9. Caliber | p10. Serial No. or OAN | p11. Disposition |
|---|---|---|---|---|---|
| | COMICS | | | | |

| alue | p13. Value Recovered | p14. Owner Name (Last | (First) | (Middle) |
|---|---|---|---|---|
| $180,000.00 | $0.00 | LANGADINOS | GREGORY | |

escription
owcase Flash VOL 1

| operty Type | p2. Property Category | p3. Quantity | p4. Qty. Type | p5. EVD Locker No.. |
|---|---|---|---|---|
| LEN | PROPERTY OTHER | | | |

| and | p7. Model | p8. Color | p9. Caliber | p10. Serial No. or OAN | p11. Disposition |
|---|---|---|---|---|---|
| RVEL | COMIC | | | | |

| alue | p13. Value Recovered | p14. Owner Name (Last | (First) | (Middle) |
|---|---|---|---|---|
| $200,000.00 | $0.00 | LANGADINOS | GREGORY | |

escription
credible Hulk VOL 1

| operty Type | p2. Property Category | p3. Quantity | p4. Qty. Type | p5. EVD Locker No.. |
|---|---|---|---|---|
| LEN | PROPERTY OTHER | | | |

| and | p7. Model | p8. Color | p9. Caliber | p10. Serial No. or OAN | p11. Disposition |
|---|---|---|---|---|---|
| RVEL | COMIC | | | | |

| alue | p13. Value Recovered | p14. Owner Name (Last | (First) | (Middle) |
|---|---|---|---|---|
| $100,000.00 | $0.00 | LANGADINOS | GREGORY | |

escription
azing Spider-man VOL 1

## NARRATIVE

3 JAN 2023 at approximately 0400hrs while assigned to the 544 unit I, Officer Walker 0, was dispatched to the lobby of the Brookline Public Safety building for a report of a rceny.

on arrival I met with Gregory Langadinos.

ngadinos stated that 4 comic books, valued at a combined $670,000, were stolen from his artment at 61 Park St.

ngadinos derived the values of the comics based on a comic book grading guide. ngadinos described the comics as Amazing Fantasy Spider-man Vol 1, valued at proximately $180,000; Showcase Flash Vol 1, valued at approximately $180,000; Incredible lk Vol 1, valued at approximately $200,000; and Amazing Spider-man Vol 1, valued at proximately $100,000. Langadinos stated that each of the comics had been professionally aded and scored. Langadinos provided an Affidavit of Andrew Gioia, a neighbor at 61 Park , to attest to the existence and validity of the value of the comic books. The Affidavit Andrew Gioia is attached to this report.

ngadinos stated that the last time he saw the comics was on 5 JAN 2022 in his apartment. ngadinos stated that the cartoons were kept in a large white drawer secured by a lock. ngadinos stated that the lock that secured the comics was of low quality and had been sily defeated in the past by a butter knife. Langadinos stated that nothing else in his artment had been disturbed. Langadinos stated that the door to his apartment does not pear damaged. Langadinos indicated that he believes the apartment was entered with a key ring his absence from 5 Jan 2022 to 23 DEC 2022.

| bmitted By Officer, I.D. | | f2. Approving Officer's Name, I.D. | | Page |
|---|---|---|---|---|
| LKER, WILLIAM H | 992238 | RICHARDS, RAYMOND WILLIAM | 991771 | 2 |

OOKLINE POLICE DEPARTMENT INCIDENT REPORT CONTINUATION PAGE

| se No. | c2. Supp No. | | c10. Reported Date | c11. Time |
|---|---|---|---|---|
| 3-0000050A | 000 | | 01/03/2023 | 03:36 |

## NARRATIVE

ngadinos stated that he had been out of his apartment for a year, getting cancer eatment in California. Langadinos noted that the Brookline Housing Authority is rgeting him due to his prolonged absence. Langadinos stated that Brookline Housing thority is trying to evict him from housing unjustly. Additionally, Langadinos said that ookline Housing Authority maintenance worker Jose Palames should be the primary suspect the larceny because Palames has keys to everyone's apartment. Langadinos has spoken th Officer Stephenson regarding his issues with Brookline Housing Authority.

spectfully submitted,

ficer Walker 160

| omitted By Officer, I.D. | | f2. Approving Officer's Name, I.D. | | Page |
|---|---|---|---|---|
| LKER, WILLIAM H | 992238 | RICHARDS, RAYMOND WILLIAM | 991771 | 3 END |

# EXHIBIT "X"



AMAZING
FANTASY
12¢
APPROVED BY THE COMICS CODE AUTHORITY
MC
15 AUG.
9.0
INTRODUCING
SPIDER MAN
THOUGH THE WORLD MAY MOCK PETER PARKER, THE TIMID TEEN-AGER...
...IT WILL SOON MARVEL AT THE AWESOME MIGHT OF... SPIDER-MAN!
ALSO IN THIS ISSUE:
AN IMPORTANT MESSAGE TO YOU, FROM THE EDITOR--ABOUT THE NEW AMAZING!


BOYS, GIRLS, MEN, WOMEN
IF YOU KNOW JUST 20 PEOPLE...
YOU CAN MAKE AT LEAST $50.00
-MORE LIKELY $100.00 to $200.00
IN YOUR SPARE TIME!
Everyone You Know Needs Christmas Cards and Everyone Loves Wallace Brown Cards
Do you know 20 people? Of course you do! Add up a half-dozen relatives, perhaps 5 neighbors, the butcher, the baker, the milkman, the grocer, your dentist, several friends and other tradespeople—and you've probably got a lot more than 20. So what are you waiting for? These folks alone can bring you in at least $50.00, probably $100.00 to $200.00 extra money in just a few hours spare time. And this is just a start! Almost everyone you know needs Christmas Cards, and when you show them the spectacular nationally famous 1962 Wallace Brown Line of Cards and Gift Items—it's love at first sight. They'll snap up 2, 3, 6 or more Christmas Card Boxes right on the spot. Keep up to 50¢ of every dollar you take in! This is the fun way of making money because it's so easy. We send you samples that do the selling for you. And, besides making money you'll save money on your own personal Christmas Cards, Gifts, Wrappings, etc. See for yourself without risking a penny. Mail coupon, you'll be glad you did!
Get These 2 Assortments ON APPROVAL
GET FREE CATALOG, TOO! -Send Coupon Below
Be first in your neighborhood to cash in on this easy way to extra money with the 1962 Wallace Brown Line of Christmas Cards and Gift Items. Mail coupon this minute! You'll get 2 Christmas Card Assortments on approval. And FREE Samples of Name-Imprinted Personal Christmas Cards. Plus FREE full-color catalog showing lots more money-makers, including many Christmas Assortments, Everyday Greeting Card Assortments, Decorated Stationery, Gift Wrappings, Novelty Gifts, etc. Everything you need to start making money at once—and we show you how.
FREE Samples of Popular-Priced, Name-Imprinted PERSONAL CHRISTMAS CARDS
Thrill your friends and neighbors and make even MORE MONEY for yourself with exquisite, custom-designed NAME-IMPRINTED Christmas Cards at amazingly low prices. A large variety of exclusive, original designs for folks who want the finest quality in Personalized Christmas Cards at prices everybody can afford. They sell just by being shown. It's easy, too, because . . . we ship direct to your customers and we pay the postage. You have no bother, no trouble and no wasted time making deliveries. Send the coupon right away for your FREE Samples of the 4 Great New Lines of these fast-selling Personalized Christmas Cards!
ORGANIZATIONS: Churches, clubs, veterans' auxiliaries, etc. can now add hundreds of dollars to their treasuries with these fast sellers. Give organization name on coupon for Fund-Raising Plan. Mail coupon NOW!
Wallace Brown, Inc. 11 East 26th St., Dept. D-134 New York 10, New York
SEND NO MONEY
WALLACE BROWN, INC., 11 East 26th St., Dept. D-134 New York 10, N.Y.
Send 2 Christmas Card Assortments on approval, plus FREE Samples of Name-Imprinted Personal Christmas Cards, FREE full-color Catalog, and details of simple money-making plan.
Name
Address
City & Zone
State
If writing for an organization, give its name


12¢
the
AMAZING
SPIDER-MAN
APPROVED BY THE COMICS CODE
9.5
1 MAR.
2 GREAT FEATURE-LENGTH SPIDER-MAN THRILLERS!
THE FANTASTIC FOUR THINK I'M TRAPPED! BUT THEY DON'T SUSPECT MY REAL POWER!
EXTRA ADDED ATTRACTION: SPIDER-MAN MEETS THE FANTASTIC FOUR, AS
"the CHAMELEON STRIKES!"



Make $5.00 to $20.00 a Week EXTRA operating this
"SATURDAY MORNING Shoe STORE"
We Furnish Everything FREE!
Make extra money next week end! Just visit with friends, relatives and neighbors on Saturday mornings and show them how they'll "walk on air" in Mason comfort shoes! Many a man sells 2, 3, 4 or 6 pairs of Mason shoes on Saturday mornings alone—without "knocking himself out"—and makes as much as $5 to $20 or more extra for 2 or 3 hours of his time. You keep all of your profits! We furnish you a FREE selling outfit containing everything you need to start making money right away. We carry the stock for you and ship the shoes for you—your profit is clear. You never invest a cent. And think what you'll save on your own shoes, too!
Here's Why You'll Make Money!
You'll take orders for over 230 different shoe styles for dress, sport or work, for men and women—a far greater selection than any neighborhood store can possibly stock. And you can fit almost anyone! You'll draw from our 300,000 pair stock with sizes ranging from 2½ to 15, widths AAAA to EEEE! You'll feature exclusive Velvet-eez shoes with foamy-soft air-cushion innersoles that let you "walk on air." You show many other exclusive features . . . Ripple Sole Shoes, Oil-Resistant Work Shoes, Magic Closure Shoes, colorful styles for women—a line that's far beyond the reach of any store. That's why EVERYBODY is your prospect. And because Mason Shoes are never sold through stores, folks must buy from you!
Don't Invest a Cent! We Give You FREE SELLING OUTFIT!
Fill out and mail coupon below. We'll rush you your FREE Selling Outfit. Kit features 230 fast-selling shoe styles, plus foolproof measuring equipment—and "How To Make Extra Money" booklet. Send no money now or later. Just rush the coupon for your FREE Selling Outfit . . . enjoy some extra money next Saturday!
RUSH STARTING OUTFIT
MR. VICTOR MASON
Mason Shoe Mfg. Company, Dept. H-655, Chippewa Falls, Wis.
Dear Victor: Please rush FREE and postpaid my Starting Shoe Business Outfit with EVERYTHING I need to start making extra cash Saturday mornings.
Name
(PLEASE PRINT)
Address
Town State
MASON SHOE MFG. CO., Dept. H-655 Chippewa Falls, Wisconsin

# EXHIBIT "Y"


SUPERMAN
DC
NATIONAL COMICS
OCT.
10¢
NO. 4
In this issue:
DETAILS and ENTRY BLANK for
Giant 5000 PRIZE CONTEST!
SHOWCASE
APPROVED BY THE COMICS CODE
9.5
Presenting
THE FLASH!
WHIRLWIND ADVENTURES OF THE FASTEST MAN ALIVE!


A NEW SCIENTIFIC TOY!
NUTTY PUTTY
ONLY $1.00
NUTTY PUTTY ... real crazy!!! A liquid solid! Amazing and fun! Roll into a ball, it bounces! Hit with hammer—it shatters! Pull it slowly—it stretches! Press it on a comic book and it steals a perfect impression in color. Leave it alone and it sinks into a tired little puddle. Comes in a leakproof plastic egg. You'll relax with this one—and really have a ball. It is made of the wonder material your parents have read about in Life, Time, and other magazines. Truly a great new toy. This is the real THING.
BOUNCE IT...
HIT IT...
IT'S GREAT FUN!
MOLD IT...
STRETCH IT...
MONEY BACK GUARANTEE
LUCKY PRODUCTS DEPT.


12¢
THE INCREDIBLE
HULK
APPROVED BY THE COMICS CODE AUTHORITY
1 MAY
THE STRANGEST MAN OF ALL TIME!!
IS HE MAN OR MONSTER OR...
IS HE BOTH
FANTASY AS YOU LIKE IT!



**Albert Dorne** — probably the greatest money-maker in the history of commercial art. At the height of his career, he began a full-time search for people who like to draw.

# He's Looking for People Who Like to Draw

Today thousands of men and women who never thought they could be artists are working happily at easels and drawing boards, making pictures, and getting well paid for it. They all can thank Albert Dorne, a famous artist who devotes almost his full time to helping other people become artists.

**Some of the people Dorne has helped**

Herb Smith was a payroll clerk. Soon after he started studying with us, he landed an art job with a large printing firm. This was four years ago; today he's head artist for the same firm.

John Busketta is another. He was a pipefitter's helper in a big gas company. Today he still works for the same company, but as an artist in the advertising department, with a big increase in pay.

Harriet Kuzniewski was bored with an "ordinary" job before she heard of Albert Dorne. Today she does high-style fashion illustration in New York.

With the right training, Wanda Pichulski gave up her typing job to become fashion artist for a local department store.

John Whitaker of Memphis was an airline clerk two years ago. Recently he won a national cartooning contest and was signed to do a newspaper comic strip.

Long before Albert Dorne started looking for people who like to draw, they came to him for advice and help. Since he alone could only help a few of these people he called together America's most successful artists — men like Norman Rockwell, Jon Whitcomb, Stevan Dohanos and Al Parker.

**A Plan to Help Others**

He said: "All over America there are people who like to draw, who could be trained into good artists. Why can't we give these people the training they need — including all the trade secrets and know-how we've learned over the years? I'm suggesting a new kind of school — a home-study art school that would give talented people the best professional art training, no matter where they live."

The famous artists agreed. Taking time from their busy careers, they spent several years creating a remarkable series of art lessons covering every aspect of drawing and painting. They illustrated these lessons with over 5,000 "how-to-do" illustrations. The lessons start from scratch and cover every skill a top artist needs. Finally, the famous artists developed a wonderful way to give each student personal criticism and advice all through his training.

Albert Dorne is not surprised by the success of his students. "The art field is growing. We keep getting calls from all over the country, asking us for practical, well-trained students who can step into full-time or part-time art jobs."

**Famous Artists Talent Test**

To find others with art talent worth developing, the famous artists created a 12-page talent test. Thousands paid $1 for this test, but now the School offers it free and will grade it free. If you show talent on the test, you will be eligible for training by the School. No obligation. Simply mail coupon. It might be your first step to an exciting, well-paid career in art.

---

**America's 12 Most Famous Artists**

| | |
|---|---|
| Norman Rockwell | Fred Ludekens |
| Jon Whitcomb | Ben Stahl |
| Al Parker | Robert Fawcett |
| Stevan Dohanos | Austin Briggs |
| George Giusti | Harold Von Schmidt |
| Peter Helck | Albert Dorne |

**Famous Artists Schools**
**Studio [illegible], Westport, Conn.**

I would like to find out whether I have art talent worth developing. Please send me, without obligation, your Famous Artists Talent Test.

Mr.
Mrs. ____________________ Age ________
Miss (please print)

Address ____________________

City ____________________ Zone ________

County ____________________ State ________

Accredited by the Accrediting Commission of the National Home Study Council, Washington, D.C.