O

# United States District Court
# Central District of California

GREGORY LANGADINOS,

Plaintiff,

v.

CITY OF CORONA et al.,

Defendants.

Case № 5:25-cv-01064-ODW (ACCVx)

**ORDER GRANTING MOTION TO DISMISS [56]; AND GRANTING MOTION TO DEEM PLAINTIFF A VEXATIOUS LITIGANT [58]**

## I. INTRODUCTION

Plaintiff Gregory Langadinos, proceeding pro se, brings this action against multiple defendants, including Defendants James E. Neyman; James E. Neyman and Associates, PC; Richard G. Grossack; and Law Office of Richard G. Grossack (collectively, "Law Firm Defendants"). (Second Am. Compl. ¶¶ 56–216, Dkt. No. 32.) Law Firm Defendants now move to dismiss for lack of personal jurisdiction and for an order deeming Langadinos a vexatious litigant. (Mot. Dismiss, Dkt. No. 56; Mot. Vexatious, Dkt. No. 58.) On September 8, 2026, the Court held an evidentiary hearing on the Motion to Dismiss. (Mins., Dkt. No. 107.) For the following reasons, the Court **GRANTS** both Motions.[1]

[1] Having carefully considered the papers filed in connection with the Motion to Deem Plaintiff a Vexatious Litigant, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

### A. Gregory Langadinos

Langadinos is, to put it mildly, a frequent litigant. Indeed, he has, on at least one occasion, signed an email with "Gregory Litigious Langadinos."[2] His litigiousness likely stems from his stints at three law schools: Southern New England School of Law (now University of Massachusetts School of Law), Touro Law Center, and Appalachian School of Law, all three of which later found themselves sued by Langadinos. (Req. Judicial Notice ISO Mot. Vexatious ("RJN") Ex. 4 ("D. Mass. Vexatious Order"), Dkt. No. 58-5.) All the lawsuits were deemed meritless. (*Id.*)

In 2012, on a motion of Southern New England School of Law, Judge Elizabeth Fahey of the Massachusetts Superior Court became the first of three judges to deem Langadinos a vexatious litigant.[3] (RJN Ex. 3 ("Mass. Vexatious Order"), Dkt. No. 58-4.) Judge Fahey had previously found Langadinos "systematically abused the judicial process," including by "alter[ing] documents before filing them in order to hinder" opposing counsel, "commit[ing] perjury in open court," and "fil[ing] two materially false affidavits." (*Id.* at 2.) Judge Fahey noted that Langadinos brought at least eight other lawsuits in Massachusetts Superior Court, most of which were disposed of by settlement but some of which were "harassing, vexatious, and repetitive." (*Id.* at 3.) Based on the above, and because Langadinos "repeatedly refuse[d] to follow court directions," Judge Fahey declared Langadinos a vexatious litigant and entered a pre-filing order against him.[4] (*Id.* at 1, 4.)

---

[2] Decl. Patrick McCormick ISO Mot. Vexatious Ex. A, *Langadinos v. Los Angeles Superior Court*, No. 2:25-cv-04746-MEMF (DTBx) (C.D. Cal. Nov. 17, 2025), Dkt. No. 35-1.

[3] The case before Judge Fahey is *Langadinos v. Southern New England School of Law*, No. 2008-2064 (Mass. Super. Ct.).

[4] Judge Fahey listed the following actions that Langadinos brought in Massachusetts Superior Court: (1) *Langadinos v. Rainville*, No. 1998-8643 (Mass. Super. Ct.); (2) *Langadinos v. Johnson*, No. 1986-4625 (Mass. Super. Ct.); (3) *Langadinos v. Langadinos*, No. 1996-3806 (Mass. Super. Ct.); (4) *Langadinos v. Patel*, No. 2010-4502 (Mass. Super. Ct.); (5) *Langadinos v. Kurnos*, No. 2011-2356 (Mass. Super. Ct.); (6) *Langadinos v. Southern New England School of Law*, No. 2011-2357 (Mass. Super. Ct.); (7) *Langadinos v. Pezza*, No. 2012-0911 (Mass. Super. Ct.); (8) *Langadinos v. Sears Holding Management Corp.*, No. 2012-0703 (Mass. Super. Ct.); and

Instead of deterring Langadinos, the Massachusetts Superior Court's pre-filing order only spurred Langadinos to take his claims to federal court. Soon afterwards, in 2013, Judge Jennifer Boal of the District of Massachusetts also declared Langadinos a vexatious litigant, having found that Langadinos, with few technical exceptions, "lost every one of his lawsuits in both the trial courts and on appeal," some of which "appear to have been frivolous."[5] (D. Mass. Vexatious Order 11.)

Beginning around 2017, Langadinos brought his litigiousness to California, filing at least nine cases in the Superior Court of California.[6] After Langadinos spent seven years clogging up the Superior Court's dockets, in 2024, Judge Tony Richardson of the Los Angeles Superior Court declared Langadinos vexatious. (RJN Ex. 1 ("Cal. Vexatious Order"), Dkt. No. 58-2.) In so declaring, Judge Richardson

---

(9) *Langadinos v. Colucciello Construction Company*, No. 1991-8087 (Mass. Super. Ct.). Law Firm Defendants have also submitted, and the Court has independently found, several other cases filed in Massachusetts state courts or tribunals: (1) *Langadinos v. One Stop Business Center*, No. 11352-95 (Dep't of Industrial Accidents); (2) *Langadinos v. Charland*, No. 2003-1664 (Mass. Super. Ct.); (3) *Langadinos v. Massachusetts Board of Bar Examiners*, No. 2004-0207 (Mass. Super. Ct.); and (4) *Langadinos v. Hosokawa Micron Int'l, Inc.*, No. 2007-1894 (Mass. Super. Ct.). The Court is without the filing dates for these actions.

[5] Langadinos filed the following cases in the United States District Court, District of Massachusetts: (1) *Langadinos v. New England School of Law*, No. 1:00-cv-10025-PBS (D. Mass. filed Jan. 5, 2000); (2) *Langadinos v. Southern New England School of Law*, No. 1:99-cv-11817-RWZ (D. Mass. filed Sept. 7, 2000); (3) *Langadinos v. HosoKawa Micron International Inc.*, No. 1:08-cv11237-DPW (D. Mass. filed July 18, 2008); (4) *Langadinos v. W.R. Berkley Corporation*, No. 1:12-cv-11159-GAO (D. Mass. filed June 28, 2012); (5) *Langadinos v. Board of Trustees of the University of Massachusetts*, No. 1:13-cv-91252-RGS (D. Mass. filed Oct. 29, 2013); and (6) *Langadinos v. American Airlines*, No. 1:98-cv-11127-NG (D. Mass. filed June 9, 1998).

[6] The cases Langadinos filed in California courts are (1) *Langadinos v. Insite Property Group, LLC*, No. 24TRC01064 (Cal. Super. Ct. filed Mar. 28, 2024); (2) *Langadinos v. MacDonald*, No. 19STCV45414 (Cal. Super. Ct. filed Dec. 16, 2019); (3) *Langadinos v. Workers' Compensation Appeals Board (Terminix)*, No. B288996 (Cal. Ct. App.) (appealing from a decision of the California Worker's Compensation Appeals Board); (4) *Langadinos v. Oliver*, No. 19STCV32656 (Cal. Super. Ct. filed Sept. 13, 2019); (5) *Langadinos v. Hamideh*, No. 20LBCV00156 (Cal. Super. Ct. filed Mar. 13, 2020); (6) *Langadinos v. The RMR Group Inc.*, No. 30-2002-01251700-CU-PO-NJC (Cal. Super. Ct. filed Mar. 25, 2022); (7) *Langadinos v. Choice Hotels International*, No. 23STCV31558 (Cal. Super. Ct. filed Dec. 27, 2023); (8) *Langadinos v. Ken Garff Automotive Group*, No. SC127141 (Cal. Super. Ct. filed Feb. 27, 2017); and (9) *Langadinos v. Servicemaster Terminix*, No. SC129102 (Cal. Super. Ct. filed Apr. 5, 2018).

noted that Langadinos "is a vexatious litigant not just because of the sheer volume of filings, but also because the vast majority of the cases involved multiple filings against the same defendants and appear to lack merit." (*Id.* at 3.) Indeed, in that very case, Langadinos sued Choice Hotels International Inc. for false imprisonment and being "locked out of his hotel room." (*Id.* at 2.) Choice Hotels is also a defendant in this action, in which Langadinos alleges it wrongfully evicted him from its premises. (SAC ¶¶ 189–200.)

Having been declared vexatious in at least three jurisdictions, Langadinos now brings his litigation efforts to the Central District of California.[7] This action represents the ninth Langadinos has brought to this District: two appeals from the bankruptcy court[8], three attempted removals of unlawful detainer cases[9], and four original complaints[10]. In at least one case, Langadinos is the subject of another pending motion to deem him a vexatious litigant. Mot. Vexatious Litigant, *Inglewood* Action, Dkt. No. 35.

---

[7] The Court has also independently found the following cases filed outside of California and Massachusetts: (1) *Langadinos v. Trustees of Touro*, No. 9:99-cv-04211-TCP-MLO (E.D.N.Y. filed July 26, 1999); (2) *Langadinos v. Appalachian School of Law*, No. 1:05-cv-00039-JPJ (W.D. Va. filed May 17, 2005); and (3) *Langadinos v. Washington State Bar Association et al.*, No. 2:23-cv-00250-JNW (W.D. Wash. filed Feb. 23, 2023).

[8] The bankruptcy appeals are (1) *In re Gregory Langadinos*, No. 2:25-cv-08471-SSS (C.D. Cal. filed Sept. 7, 2025); and (2) *In re Debtor Langadinos Chapter 13*, No. 2:25-cv-11452-PA (C.D. Cal. filed Dec. 1, 2025).

[9] The removed cases are (1) *Young Men's Christian Association of Glendale v. Langadinos*, No. 2:15-cv-09120-RGK (MRWx) (C.D. Cal. filed Nov. 24, 2015); (2) *Adrienne J. Slaughter Trustee of the Adrienne J. Slaughter Trust UTA Dated February 7, 2019 v. Langadinos*, No. 2:25-cv-01810-MWC (ADSx) (C.D. Cal. filed Mar. 3, 2025); and (3) *Sonesta International Hotels Corporation v. Langadinos*, No. 8:21-cv-01366-DOC (ADSx) (C.D. Cal. filed Aug. 18, 2021). Each case was sua sponte remanded by the district judge.

[10] Other than this case, the original complaint actions are: (1) *Langadinos v. Torrance Memorial Medical Center*, No. 2:24-cv-06603-SRM (CTSx) (C.D. Cal. filed Aug. 5, 2024); (2) *Langadinos v. Inglewood Superior Court*, No. 2:25-cv-04746-MEMF (DTBx) (C.D. Cal. filed May 27, 2025); and (3) *Langadinos v. Life Time Inc.*, No. 5:23-cv-00940-SVW (MRWx) (C.D. Cal. filed May 24, 2023). All but one (the *Life Time* case) are ongoing.

**B. Factual Background**

Neyman is an attorney licensed to practice in the Commonwealth of Massachusetts. (Decl. James E. Neyman ISO Mot. Dismiss ("Neyman Decl.") ¶ 1, Dkt. No. 56-1.) Neyman lives and works in Boston, Massachusetts. (*Id.* ¶ 6.) He does not own a home, assets, or bank accounts in California. (*Id.*) He is not licensed to practice law in California. (*Id.*)

Twenty years ago, Neyman founded the law firm James E. Neyman & Associates, PC ("Neyman Firm"). (*Id.* ¶ 2.) Neyman Firm is a licensed professional corporation in the Commonwealth of Massachusetts with a principal place of business in Boston, Massachusetts. (*Id.*) Neyman Firm does no business in California. (*Id.* ¶ 3.)

Grossack is an attorney licensed to practice in the Commonwealth of Massachusetts. (Decl. Richard G. Grossack ISO Mot. Dismiss ("Grossack Decl.") ¶ 1, Dkt. No. 56-2.) Grossack lives and works in Boston, Massachusetts. (*Id.* ¶ 5.) He does not own a home, assets, or bank accounts in California. (*Id.*) Grossack owns his own firm, Law Offices of Richard G. Grossack ("Grossack Firm"). (*Id.* ¶ 3.) Grossack Firm is located in Boston, Massachusetts, and has no office or presence in California. (*Id.* ¶ 3.) Grossack also serves as of counsel to Neyman Firm. (*Id.* ¶ 2.)

Neyman Firm has represented Langadinos in several matters in Massachusetts. (Neyman Decl. ¶ 8.) While Langadinos claims that Neyman Firm hired him as a paralegal, (SAC ¶ 1), Neyman denies ever having hired Langadinos, (Neyman Decl. ¶ 4). This litigation appears to arise out of these representations and alleged employment, though the Court can barely discern Langadinos's specific allegations. As best the Court can tell, Langadinos alleges that Law Firm Defendants committed malpractice when they represented him and discriminated against him during his alleged employment. (*See generally* SAC.)

Based on these allegations, Langadinos brings nineteen causes of action against Defendants. (*Id.* ¶¶ 56–216.) Against Law Firm Defendants specifically, Langadinos

brings claims for (1) employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (count one); (2) violation of 42 U.S.C. § 1981 (count two); (3) violation of the Fair Housing Act (count three); (4) violation of and conspiracy to violate the Racketeer Influenced and Corrupt Organizations ("RICO") Act (counts four and eighteen); (5) violations of the Fair Labor Standards Act and National Labor Relations Act (count seven); (6) discrimination in violation of the Fair Employment and Practices Act and California Fair Housing and Employment Act (count eight); (7) various violations of the California Labor Code (count nine); (8) violation of the California Consumer Protection Act (count ten); (9) breach of fiduciary duty (count eleven); (10) legal malpractice (count twelve); (11) negligence (count thirteen); (12) intentional and negligent infliction of emotional distress (count fourteen); and (13) fraud (count nineteen). (*Id.* ¶¶ 56–188, 206–16.)

## III. MOTION TO DISMISS

Law Firm Defendants move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). (Mot. Dismiss 1.)

### A. Legal Standard

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due process requirements." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10. When this is the case, the court inquires whether the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Menken v. Emm*,

503 F.3d 1050, 1056 (9th Cir. 2007). Where a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). However, where the written materials "raise issues of credibility or disputed questions of fact with regard to jurisdiction," courts have "the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If a court holds such a hearing, the "plaintiff must establish the jurisdictional facts by a preponderance of the evidence." *Id.*

**B. Discussion**

A non-resident defendant may be subject to either general or specific personal jurisdiction. *FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Langadinos does not seriously dispute that the Court lacks general personal jurisdiction over Law Firm Defendants. (*See generally* Mot. Dismiss Opp'n, Dkt. No. 83 (discussing only specific jurisdiction).) Indeed, general personal jurisdiction would be improper against Law Firm Defendants because none are California citizens. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). Thus, the Court focuses only on whether it may exercise specific personal jurisdiction over Law Firm Defendants.

To determine whether a defendant's contacts with the forum state are sufficient to render the exercise of specific jurisdiction reasonable, the Ninth Circuit applies a three-prong test: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum-state, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *Schwarzenegger*, 374 F.3d at 802. The party asserting jurisdiction,

Langadinos here, bears the burden of satisfying the first two prongs of this test. *Id.* Once they have done so, the burden shifts to the party contesting jurisdiction, Law Firm Defendants here, to establish that the third prong—reasonableness—has not been satisfied. *Id.*

In assessing the first prong of the specific jurisdiction test, courts distinguish between contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). Here, Langadinos alleges only tort claims against Law Firm Defendants. (*Id.* ¶¶ 56–188, 206–16.) For claims sounding in tort, courts apply a "purposeful direction" test and look to "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (quoting *Schwarzenegger*, 374 F.3d at 802–03). Thus, the first prong of specific personal jurisdiction, purposeful direction, is satisfied when the plaintiff demonstrates the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Langadinos alleges two intentional acts: (1) Law Firm Defendants represented him in several actions in California; and (2) Law Firm Defendants employed him, a California citizen. (Mot. Dismiss Opp'n 6–7.) Langadinos fails to support the former fact with any evidence except for unauthenticated letters attached to his own State Bar complaint. (*See* Opp'n Mot. Vexatious Ex. 1, Dkt. No. 85.) The Court declines to consider them. *See Lee v. Kim Yonja*, No. 2:23-cv-10677-MCS (Ex), 2025 WL 4942061, at *2 (C.D. Cal. Oct. 10, 2025) (declining to consider "unauthenticated exhibits" and allegations "unsupported by a declaration"). In any event, three letters sent over the course of five years are far too random, fortuitous, or attenuated to support purposeful direction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

This leaves Langadinos's allegation that Law Firm Defendants employed him. In support of this allegation, Langadinos offers the declaration of Yalitza Munoz, who states that she overheard Langadinos and Neyman discussing the terms of Langadinos's employment. (Decl. Yalitza Munoz ISO Mot. Dismiss Opp'n, Dkt. No. 86.) Law Firm Defendants vigorously deny employing Langadinos. (*See generally* Reply.) To resolve this factual issue, the Court heard testimony from Munoz, Langadinos, Neyman, and Christian Ergueta.[11] (Mins.)

After hearing the testimony and considering the evidence, the Court finds that Langadinos did not demonstrate, by a preponderance of the evidence, that Law Firm Defendants ever employed him. First, Langadinos's exhibits, consisting mostly of his own timesheets, invoices, and one-way communications, are self-serving and do not demonstrate an employment relationship between him and Law Firm Defendants. Most are hearsay without exception, and even if the Court were to consider them, all they tend to demonstrate is that Langadinos *thought* an employment agreement existed between him and Law Firm Defendants. They do not demonstrate that an actual employment agreement existed.

Second, Munoz was completely without credibility. Munoz appeared to recite her declaration in response to the Court's and counsel's questions, and offered nothing beyond what was in that document. Her story was also nonsensical: the Court does not credit her testimony that she attended a conference call with Langadinos and Neyman, ostensibly to discuss the terms of Neyman's representation of her, only for Langadinos and Neyman to conveniently begin discussing the terms of Langadinos's employment. Langadinos's frequent interjections during Munoz's cross-examination further hurt her credibility, making it appear as if Langadinos was coaching her. In sum, the Court completely discounts Munoz's testimony.

Without any admissible documentary evidence, and without Munoz's testimony, the Court was left with only Neyman's and Langadinos's conflicting testimony. The

[11] Ergueta's testimony was not relevant to the issue of Langadinos's employment.

Court found Neyman's testimony strong and unequivocal regarding whether Neyman ever employed Langadinos. Conversely, Langadinos was evasive, especially as he was trying to convince the Court he worked on Munoz's case while avoiding admitting to practicing law without a bar license. Thus, the Court discounts Langadinos's testimony and finds that Langadinos does not prove by a preponderance of the evidence that an employment relationship existed between him and Law Firm Defendants. Without this fact, Langadinos cannot demonstrate that Law Firm Defendants "committed an intentional act" necessary to satisfy the purposeful availment test. *Dole Food*, 303 F.3d at 1111. As Langadinos fails to establish this first prong of the personal jurisdiction analysis, the Court need not inquire further. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

Accordingly, the Court finds it lacks personal jurisdiction over Law Firm Defendants and **DISMISSES** Law Firm Defendants. Furthermore, because Langadinos does not ask for jurisdictional discovery, and because his papers lack any indication that could suggest Law Firm Defendants may be subject to this Court's personal jurisdiction, dismissal is **WITHOUT LEAVE TO AMEND**. *See Gordon v. APM Terminals N. Am., Inc.*, No. 17-cv-03970-MEJ, 2017 WL 3838092, at *7 (N.D. Cal. Sept. 1, 2017) (dismissing without leave to amend where plaintiff "does not request an opportunity to conduct jurisdictional discovery" and "nothing in the record indicates [p]laintiff might be able to allege or prove additional facts establishing personal jurisdiction").

## IV. VEXATIOUS LITIGANT

Law Firm Defendants also move for an order deeming Langadinos a vexatious litigant and for a prefiling order. (Mot. Vexatious 1.)

### A. Legal Standard

"Federal courts can regulate the activities of abusive litigants by imposing carefully tailored restrictions under . . . appropriate circumstances."

*Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) (citation modified). Pursuant to the All Writs Act, "enjoining litigants with abusive and lengthy [litigation] histories is one such . . . restriction" that courts may impose. *Id.* However, "[r]estricting access to the courts is . . . a serious matter . . . [as] the right of access to the courts is a fundamental right protected by the Constitution." *Id.* (citation modified).

Accordingly, "[o]ut of regard for the constitutional underpinnings of the right to court access, pre-filing orders should rarely be filed, and only if courts comply with certain procedural and substantive requirements." *Id.* at 1062 (citing *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (citation modified)). Thus, before imposing pre-filing restrictions, courts must (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including a "listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Id.* (citing *De Long*, 912 F.2d at 1147–48).

**B. Discussion**

For the following reasons, the Court finds that Langadinos is a vexatious litigant and enters a pre-filing order against him.

*1. Notice and Opportunity to be Heard*

First, the Ninth Circuit requires that courts provide potential vexatious litigants with notice and an opportunity to be heard. *Id.* Here, Law Firm Defendants filed and served a motion to deem Langadinos a vexatious litigant on Langadinos. (Mot. Vexatious.) Langadinos also had opportunity to respond and indeed did respond. (Opp'n Mot. Vexatious, Dkt. No. 84.) As Langadinos received notice of the motion to deem him a vexatious litigant and responded to the motion, the first *De Long* factor

has been met. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1058–59 (9th Cir. 2007).

2. *Adequate Record for Review*

Second, the Ninth Circuit requires that courts "list[] all the cases and motions that led the district court to conclude that a vexatious order was needed." *De Long*, 912 F.2d at 1147. In the above background section, the Court lists Langadinos's many cases that have led the Court to conclude a vexatious order is warranted here. The Court further discusses them in the below section detailing the Court's substantive findings of frivolousness or harassment. The second *De Long* factor has been met. *See Molski*, 500 F.3d at 1059 (holding the district court compiled a record adequate for review when it outlined and discussed "many," but not all, of the vexatious litigant's actions).

3. *Substantive Findings of Frivolousness or Harassment*

Third, the Ninth Circuit requires courts make "substantive findings as to the frivolous or harassing nature of the litigant's actions." *De Long*, 912 F.2d at 1148. "To determine whether the litigation is frivolous, district courts must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims." *Ringgold-Lockhart*, 761 F.3d at 1064 (citation modified). Specifically, courts must not only find that "the number of complaints was inordinate," but also find that the complaints were "patently without merit." *Id.*

As an initial matter, the Court finds that Langadinos has filed an inordinate number of complaints. The record indicates that Langadinos has filed at least thirty-six original complaints—not including frivolous appeals or notices of removal—across Massachusetts, California, West Virginia, New York, and Washington. Other courts have indicated that Langadinos may have filed cases in other jurisdictions. (Mass. Vexatious Order 3 ("[T]he record in this case revealed plaintiff has filed at least one . . . case in Tennessee.").) Filing at least thirty-six actions across at least five jurisdictions is certainly inordinate. *See Wood v. Santa*

*Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983) (affirming vexatious order where the litigant filed thirty-five actions across thirty jurisdictions).

Having found that Langadinos's has filed an inordinate number of cases, the Court turns to the content of Langadinos's filings. The Court starts here, with this action. Langadinos's pleading is barely coherent. Rather than confining his pleadings to "short and plain statement[s]" showing his entitlement to relief, Fed. R. Civ. P. 8, Langadinos unloads hyperbolic and confusing allegations at unrelated parties. Significantly, while the bulk of the Second Amended Complaint is ostensibly aimed at Law Firm Defendants and their alleged malpractice, Langadinos also sneaks in allegations that several hotels illegally evicted him—similar to allegations in an action the California Superior Court dismissed. (*See* Cal. Vexatious Order 3 ("[Langadinos's claims against Choice Hotels] are internally contradictory and incoherent . . . [he] alleges both that he was falsely imprisoned in his hotel room and locked out of his hotel room within one cause of action.").)

This is Langadinos's *modus operandi*: forum-shopping to avoid the consequences of his own actions. (*See id.* ("Defendants have demonstrated [Langadinos] is a vexatious litigant . . . because the vast majority of [Langadinos's] cases involved multiple filings against the same defendants . . . .").) For example, Langadinos filed suit against Southern New England School of Law or its dean at least three times in the span of three years, the latter two suits likely filed to escape Judge Fahey's imminent adverse rulings.[12] Similarly, Langadinos shifts jurisdictions when faced with a pre-filing order. After the Massachusetts Superior Court entered a pre-filing order against him, Langadinos began litigating in the District of Massachusetts. Once the District of Massachusetts entered a pre-filing order against him, Langadinos moved to the Superior Court of California. And now that the

[12] *Langadinos v. Southern New England School of Law*, No. 2008-2064, *Langadinos v. Kurnos*, No. 2011-2356; and *Langadinos v. Southern New England School of Law*, No. 2011-2357; (*see also* Mass. Vexatious Order ("It is [the latter] two cases which best exemplify [Langadinos] filing cases which are harassing, vexatious, and repetitive.")).

Superior Court of California has entered a pre-filing order against him, Langadinos has come to the Central District of California.

More importantly though, for the purposes of the Court's frivolousness finding, the Second Amended Complaint is without merit. The Second Amended Complaint is almost completely predicated on Langadinos's allegation that Law Firm Defendants employed him: the majority of Langadinos's causes of action are some variation of employment discrimination. But as the Court found above, Law Firm Defendants almost certainly never employed Langadinos. Thus, setting aside the legal dubiousness of Langadinos's claims,[13] the fact of Langadinos's non-employment renders his employment discrimination claims meritless. In so finding, the Court joins the many other courts that have found Langadinos's claims to be completely without merit. (*See, e.g.*, Cal. Vexatious Order 3 ("Langadinos fails to allege any cognizable claims against Defendants."); D. Mass. Vexatious Order 11 ("Except for a few technical successes, Langadinos appears to have lost every one of his lawsuits in both the trial courts and on appeal.").)

The Court also joins the many other courts that have discredited Langadinos's submitted affidavits and evidence, the decisions of which the Court now addresses. This is not the first time that Langadinos has submitted perjured affidavits or lied to a tribunal. An administrative law judge with the Massachusetts Department of Industrial Accidents completely discredited Langadinos's testimony. (RJN Ex. 6 ("One Stop Order"), Dkt. No. 58-6 ("In all aspects where the testimony of Mr. Howe is in conflict with that of Mr. Langadinos, I expressly adopt the version provided by Mr. Howe.").) Similarly, a California Workers Compensation Judge "found that Langadinos was not a credible witness." (RJN Ex. 10 ("Terminix Order"), Dkt.

---

[13] In just one example of the legal dubiousness of Langadinos's claims, Langadinos alleged Fair Housing Act violations against Law Firm Defendants. (SAC ¶¶ 80–88.) However, Langadinos does not allege that Law Firm Defendants are property owners or landlords for purposes of liability under the Fair Housing Act. (*See generally id.*) Thus, the Court cannot even begin to fathom how Langadinos could possibly state a claim for a Fair Housing Act violation against Law Firm Defendants.

No. 58-11.) Most damningly, in Massachusetts Superior Court, Judge Fahey found that Langadinos "altered documents before filing them" and "harassed and intimidated *two friends*, both lawyers and officers of this court, into signing false affidavits . . . so that they could assist him in perpetrating fraud." (Mass. Vexatious Order 2.)

These findings, along with the Court's own observations at the evidentiary hearing, lead the Court to conclude that Langadinos views the justice system as nothing but a vehicle to unleash lies and abuse at parties who have somehow wronged him. His claims, already legally dubious, become frivolous when predicated on lies and falsehoods. A pre-filing order must issue to deter his behavior. The third *De Long* factor has been met.

*4. Narrow Tailoring*

Finally, the Ninth Circuit requires any pre-filing restriction order "be narrowly tailored to closely fit the specific vice encountered." *De Long*, 912 F.2d at 1148. Law Firm Defendants seek to enjoin Langadinos "from initiating further proceedings in the District without first obtaining leave to file after a showing of merit." (Proposed Order ISO Mot. Vexatious, Dkt. No. 58-17.) Notably, this proposed order substantially mirrors the pre-filing orders entered against Langadinos in Massachusetts and California Superior Court. (*See* Mass. Vexatious Order 3–4; D. Mass. Vexatious Order 12; Cal. Vexatious Order 3–4.)

The Court is loath to enter what otherwise seems like such a broad pre-filing order. However, the Court sees no other choice when Langadinos's frivolous and abusive claims run the gamut, from product liability to discrimination to workers compensation. What binds these cases are not their facts or their legal claims, but their frivolousness and abusiveness, both attributes the Court finds it must deter with this pre-filing order.[14] Thus, the Court will enter the pre-filing order as requested by

[14] As an example of the abusiveness the Court seeks to curb, Langadinos placed salacious allegations in his Second Amended Complaint, including describing Judge Fahey as "corrupt," (SAC ¶ 92); alleging Defendants are "racist," (*see, e.g.*, *id.* ¶ 35); and ascribing various mental and physical disabilities to various Defendants, (*see, e.g.*, *id.* ¶¶ 60, 93). The Court will not accept pleadings that

Law Firm Defendants, which it finds as narrowly tailored as possible to deter Langadinos's frivolous and abusive litigation, while permitting any meritorious claims that Langadinos may have. *See Lawless v. United States*, 797 F. Supp. 3d 1132, 1143 (C.D. Cal. 2025) (barring any filings from a litigant that are duplicative or frivolous, subject to the court's review); *see also Langadinos v. Trustees of Touro College*, 71 F. App'x 95, 96 (2d Cir. 2003) (affirming district court's entry of a broad prefiling order against Langadinos).

Additionally, after considering the remaining claims in this action against Choice Hotels, the Court will require Langadinos post a security bond of $25,000 within fifteen days of entry of this order. C.D. Cal. L.R. 83-8.2; *see Mankaruse v. Raytheon Co.*, No. 8:19-cv-01904-DOC (ADSx), 2020 WL 2405258, at *3 (C.D. Cal. Jan. 23, 2020) (imposing $25,000 security bond). Should Langadinos fail to timely do so, the Court will dismiss the action.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

---

include such impertinent and scandalous allegations. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Law Firm Defendants' Motion to Dismiss and **DISMISSES** James Neyman, Law Offices of James Neyman, Richard Grossack, and Law Offices of Richard Grossack **WITHOUT LEAVE TO AMEND** and **WITHOUT PREJUDICE**. (Dkt. No. 56.)

Additionally, the Court **GRANTS** Law Firm Defendants' Motion to Declare Plaintiff a Vexatious Litigant. (Dkt. No. 58.) Having made the requisite findings under Local Rule 83-8.3, the Court **DECLARES** Gregory Langadinos a vexatious litigant. Langadinos must obtain leave of the Court, the Chief Judge, or the Chief Judge's designee before initiating any original action in the Central District of California. Any application for leave to file an original action must be supported by a declaration explaining why the action is not frivolous or abusive. If the Court, the Chief Judge, or the Chief Judge's designee determines that the action is either frivolous or abusive, the action will be dismissed.

The Court also **ORDERS** Langadinos to post a security bond of **$25,000** with the Clerk's office within **fifteen (15) days** of entry of this Order. Otherwise, the Court will dismiss the action against Defendant Choice Hotels with prejudice.

**IT IS SO ORDERED.**

September 28, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**